Gary H. Glaser, Esq. (GG-9696)
James S. Yu, Esq. (JY-9734)
SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Plaintiff
 Robert Half International Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ROBERT HALF INTERNATIONAL INC., : 07-CV-

        Plaintiff, :

  - against - : **DECLARATION OF
DAWN S. FAY**

DAVID WOJDYL; and
THE EXECU/SEARCH GROUP, INC. :

        Defendants. :
------------------------------------------------------------------x

DAWN S. FAY, hereby declares under penalty of perjury:

1. I am employed by Robert Half International Inc. ("RHI") as Regional Vice President with responsibility over several branch offices in the United States, including RHI's New York City offices located at 245 Park Avenue, New York, New York, and 33 Whitehall Street, New York, New York (together, "RHI's NYC Offices"). I have been employed by RHI since September 30, 1996. I make this Declaration in support of RHI's motion for a temporary restraining order and a preliminary injunction against Defendants David Wojdyl ("Wojdyl") and The Execu/Search Group, Inc. ("Execu/Search") (collectively, the "Defendants"), enjoining Defendants from unfairly competing with RHI, and breaches and/or tortiously inducing breaches, of Wojdyl's written employment agreement with RHI, misappropriating and using RHI's

confidential and proprietary information and trade secrets to compete directly with RHI, and improperly trading upon RHI's name and reputation.

2. I make this Declaration upon my own personal knowledge and upon information provided to me by the records of RHI, or information available through other employees of RHI, except where it is expressly indicated otherwise.

## RHI'S BUSINESS

3. RHI conducts business as a personnel services and executive recruiting and placement firm, employment agency and temporary personnel service business. RHI has been in the executive recruitment and placement industry since 1948.

4. RHI, through its various divisions, including finance and accounting services, information technology, legal services, creative, and office and administrative professionals, specializes in placing personnel candidates with clients of RHI in permanent, project and consulting/temporary job positions in all industries. RHI offers such temporary, project and permanent personnel services under its RH Finance & Accounting, Accountemps, OfficeTeam, RHI Consulting, and other divisional trade names.

5. Since 1948, RHI has developed a reputation for high quality, professional and state-of-the-art recruitment and placement services. As a result of its reputation, training and marketing efforts, RHI has become broadly recognized as a source from which clients and qualified candidates may seek placement services in New York and throughout the United States, as well as Europe and Australia. RHI's relationships with its clients are based on confidence in the quality of the services offered and an increased recognition of, and familiarity with, RHI as a provider of such quality services.

6. Because RHI's business is a service business, the relationship that RHI has with its clients is wholly dependent on the attention and service which RHI gives, on an ongoing basis, to each of its clients and candidates, as well as its knowledge and strategic position in this competitive field.

7. As such, some of RHI's most important assets include the goodwill and business reputation which RHI enjoys, its clients (who purchase employment-related services supplied by RHI personnel), its pool of qualified candidates for employment, as well as the information compiled about such candidates, and its confidential information relating to its clients (including their contacts and their respective preferences, needs, and requirements).

8. RHI's goodwill is critical to its success and includes repeat business with its established clients and candidates. Its repeat business with clients results from its successful performance of placement services, its extensive advertising and well-deserved reputation for guarding the confidentiality of the information which it has gathered, analyzed and developed over the period of its many years of existence, as well as its clients' relationships with RHI and its recruiting staff, including Wojdyl.

9. Moreover, RHI's success is due, in large part, to its research and understanding of the executive recruitment and staffing market.

10. RHI's Branch Managers, Division Directors, Recruiting Managers and Staffing Managers are responsible for developing and effectively accessing a base of qualified candidates for placement with RHI's clients, for locating such placement opportunities with new and existing clients of RHI, and for developing, cultivating and maintaining both new and existing client relationships with the goal of growing RHI's business opportunities to make such placements.

11. All of RHI's Recruiting Managers are given training on and access to RHI's confidential information contained in its confidential files and computer databases. Because RHI's business is a service business, the relationship which RHI has with its clients is wholly dependent on the personal attention and service which RHI personnel give, on an ongoing basis, to each of RHI's clients and candidates.

12. As a result, each of RHI's Recruiting Managers – as well as each Staffing Manager -- is required by the company, as a condition of employment, to enter into an employment agreement containing certain restrictive covenants, including non-competition, non-solicitation and non-disclosure provisions.

13. Upon information and belief, agreements containing such provisions are common in the placement industry.

14. RHI's goodwill is critical to its success and includes repeat business with its established clients and candidates. Its repeat business with clients results from the performance of its recruiting managers, division directors, and staffing managers, and their relationships with those clients, many of which have been developed over many years.

15. RHI's goodwill is also the result of extensive advertising and well-deserved reputation for guarding the confidentiality of the information which it has gathered, analyzed and developed over the period of its many years of existence.

## RHI'S TRADE SECRETS AND CONFIDENTIAL INFORMATION

16. In addition to the identity of its many clients, RHI has extensive files on its clients' preferences, client contacts and their respective needs and particular requirements with respect to permanent, project and temporary placement services.

17. The client lists and information concerning client contacts and their respective preferences, etc., are integral to RHI's efforts at developing and maintaining its goodwill. RHI protects the confidentiality of such information and, therefore, such lists and information constitute trade secrets and/or proprietary, confidential information.

18. RHI also maintains extensive files pertaining to all of the applicants and candidates who have registered with RHI as well as those candidates for permanent placement and temporary employees/consultants that it has placed with its clients. (All such applicants, candidates and temporary employees/consultants will be referred to collectively herein as "candidates"). These files, and the information they contain, such as test results and client performance appraisals of how a candidate performed on temporary/consulting assignments, allow RHI to develop first-hand experience with the skill level of each candidate.

19. RHI solicits the submission of resumes and applications in confidence through extensive print, media and web-based advertising, referrals, word of mouth, as well as direct recruiting using its solid reputation. The information contained in RHI's client and candidate files is not available to the public and is considered a closely-guarded trade secret by RHI. Only RHI internal staffing professionals and administrative staff are given access to existing client account files and database including their respective contact persons, as well as to RHI's candidate files and database.

20. Through the use of its candidate records, and years of business effort, RHI has been able to develop the trade and the patronage of its clients. The goodwill developed with RHI clients depends, in part, on RHI's timely provision of qualified candidates for all types of job openings.

21. The candidate lists and information concerning job openings are integral to RHI's efforts at developing and maintaining its goodwill. RHI protects the confidentiality of such lists and information and, therefore, such lists and information constitute trade secrets and/or proprietary, confidential information.

22. The extensive files containing RHI's client and candidate lists and information are created, maintained and updated by RHI in a proprietary database which was created/customized expressly for, and to, RHI's particular specifications and requirements at great cost and expense to RHI.

23. RHI's Recruiting Managers give ongoing personal attention to RHI's clients and candidates. RHI expends substantial time and financial resources in identifying, recruiting, training and supervising these managers to maintain its high level of service to its clients and candidates. In addition, each such manager is supported in developing close, ongoing relationships with Robert Half clients and candidates. Consequently, RHI's clients and candidates identify RHI's overall service with its individual managers.

### WOJDYL'S EMPLOYMENT AGREEMENT WITH RHI

24. Wojdyl was hired by RHI on January 30, 2006 as a Recruiting Manager in the Finance and Accounting division of RHI's NYC Offices (at various times, he worked out of both the Midtown branch and the Wall Street branch). The Finance and Accounting division engages in the placement of personnel in the finance and accounting industry; Wojdyl was part of the division's Financial Services Group ("FSG"), which specializes in the placement of individuals in the financial services industry.

25. In order to protect RHI's trade secrets and confidential information, its reputation and good name, and its market position, Wojdyl was required by RHI as a condition of his

employment to enter into an employment agreement at the outset of his employment containing certain restrictive covenants, including non-competition, non-solicitation and non-disclosure provisions, as well as a provision prohibiting the use of RHI's name by Wojdyl except in the bona fide submission of resumes or filling out applications in the course of seeking employment. (A true and correct copy of Wojdyl's Employment Agreement is annexed hereto as Exhibit A.)

26. Specifically, the restrictive covenants in Wojdyl's Employment Agreement prohibit him from disclosing or misusing RHI's confidential information. Section 8 of the Employment Agreement provides:

> <u>Disclosure or Misuse of Confidential Information</u>. Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies, including, without limitation, information with respect to the name, address, contact persons or requirements of any customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract or permanent employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

27. Moreover, also to protect RHI's trade secrets and confidential and proprietary information, as well as its good will, the Employment Agreement restricts Wojdyl for a period of twelve months from becoming employed by any competing employment staffing services firm within a fifty-mile radius of any RHI office in which he worked or over which he exercised supervisory authority during the one-year period prior to the termination of his employment

(defined within the Employment Agreement as "Applicable Office"). Section 9 of the Employment Agreement provides:

> <u>Restrictive Covenant</u>. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

28. In order to prevent the unfair competition or access to confidential information which could be obtained by immediately recruiting other RHI employees to work for RHI competitors, Wojdyl further agreed in Section 11 of his Employment Agreement that

> for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor.

"Other Employee" is defined in Section 7 of the Employment Agreement to mean "any indivudal (other than Employee [i.e., Wojdyl]) who is employed or engaged by an Applicable Office [also defined in the Agreement] or who was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, termporary employee or independent contractor."

29. Moreover, to protect RHI's strong reputation and good will, the Employment Agreement prohibits the Wojdyl from trading on RHI's name for the benefit of himself or anyone else, while permitting him to use RHI's name for the limited purpose of seeking employment. Section 13 of the Employment Agreements provides in part:

> <u>Wrongful Use of Employer's Name</u>. After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment.

30. Wojdyl expressly agreed that these restrictions were "reasonable and necessary in order to protect and maintain [RHI's] proprietary and other legitimate business interests" and that such restrictions do not prevent Wojdyl from earning a livelihood. Wojdyl further agreed that temporary and permanent injunctive relief would be appropriate remedies against an actual or threatened breach of these restrictive covenants.

31. Upon information and belief, Wojdyl read and understood the terms of his Employment Agreement at the time that he signed the Agreement.

32. In a separate document, which Wojdyl certified that he read and understood at the commencement of his employment, Wojdyl, once again, acknowledged that he was going to be privy to RHI's confidential information and trade secrets, namely, customer and candidate lists and related information, and agreed to safeguard such trade secrets and not disclose, copy or remove them upon termination. The "Acknowledgment of Trade Secret Laws" provides in part:

> As a result of my employment, certain business records and information pertaining to the Company, the Company's affiliated companies, their employees, and clients may be made available to me, which I acknowledge constitute proprietary, confidential information and trade secrets ("Trade Secret" or "Trade Secrets"). . .

> I acknowledge and agree that I have a duty to safeguard such Trade Secrets, not to disclose them to others and not to remove or copy materials which include any Trade Secrets, or to use any Trade Secrets outside of my present employment. . . .
>
> I understand that after termination of my employment, my solicitation of any temporary or permanent employment applicant, recruited candidate, temporary employee, or client of the Company may constitute the illegal taking of a Trade Secret for which I could be enjoined and be liable for money damages.

A true and correct copy of Wojdyl's certification that he read and understood the Acknowledgment, together with the Acknowledgment, is attached hereto as Exhibit B.

## WODJYL'S RESIGNATION

33. As early as March 19, 2007, Wojdyl appears to have been communicating with Gary Grossman, partner in charge of accounting and finance recruiting at Execu/Search, about possible employment with Execu/Search.

34. Upon information and belief, on or about March 22, 2007, Wojdyl met with Mr. Grossman and Mitchell Peskin, partner in charge of Execu/Search's permanent placement divisions for financial services and human resources recruiting.

35. Wojdyl tendered his resignation from RHI on Monday, March 26, 2007, upon information and belief, after he accepted an offer of employment with Execu/Search.

36. On that same day, March 26, 2007, Keith Feinberg, Director of Permanent Services of RHI with immediate supervisory responsibility for Wojdyl, and whom Wojdyl tendered his resignation to, met with Wojdyl and, among other things, reminded him of his continuing obligations to RHI, including his obligations concerning its confidential information and trade secrets that were made available to him throughout his employment at RHI and with respect to the restrictive covenants in his Employment Agreement and provided him with a

written "Reminder of Post-Termination Obligations." (A true and correct copy of Wojdyl's "Reminder of Post-Termination Obligations" is annexed hereto as Exhibit C.)

V. **Wojdyl's Misappropriation of RHI Trade Secrets and Unlawful Conduct.**

37. Prior to tendering his resignation from RHI, Wojdyl embarked on a stealth campaign to surreptitiously steal RHI's confidential, proprietary, and trade secret information during non-business hours for his own use and for the benefit of Execu/Search.

38. Indeed, RHI's computer records indicate that Wojdyl was present in RHI's Midtown Office both during after-hours in the final days of his employment with RHI and during the weekend prior to his resignation, at a time when the office was likely to be either empty of other personnel, or sparsely populated by co-workers. RHI's computer records further indicate that during such time periods Wojdyl systematically printed various documents containing RHI's confidential, proprietary, and trade secret information. Upon information and belief, Wojdyl stole such documents and information for the express purpose of converting and misappropriating such documents and information to his own benefit and for that of Execu/Search, and to unfairly compete with RHI.

39. The foregoing documents printed and retained by Wojdyl for his personal use and benefit and for that of Execu/Search included, among other things, information relating to RHI's clients (including, but not limited to, RHI clients with whom Wojdyl himself had dealt on behalf of RHI), and including information such as such clients' contact names, email addresses, and telephone numbers; information relating to open and pending job orders with RHI's customers (including, once again, job orders which Wojdyl had himself worked on for RHI); candidate information, including resumes that they had submitted to RHI to assist in their placement; a document entitled "WALL STREET FSG PERM H-O-T" which was a list of RHI's Financial

Services Group's "hot" client prospects, candidates and job orders; an RHI document which is basically a "How-To" training guide on recruiting candidates, and a 28-page FSG "Training Guide". These documents are described by way of example only, as Wojdyl appears to have printed out approximately 45 documents just on the Sunday before his resignation, and the Monday of his resignation.

40.     Furthermore, in the days leading up to his resignation, Wojdyl also periodically forwarded to his personal email account other items containing RHI's confidential, proprietary, and trade secret information. One of these emails contained information regarding recruiting and placement strategies and attached a list of clients whom RHI had received job orders from in 2006.

41.     Immediately after his departure from RHI, Wojdyl joined Defendant Execu/Search, where, upon information and belief, his responsibilities continue to involve the recruiting of personnel for the finance and accounting industries, within a short distance from RHI's NYC Offices, in direct competition with RHI. Upon information and belief, Wojdyl is working at Defendant Execu/Search's Headquarters' Offices, located at 675 Third Avenue, NYC. These offices are located approximately 2 ½ blocks east, and a little over 2 blocks south of the Mid-Town RHI office where Wojdyl last worked – approximately .62 miles "driving" distance according to Mapquest on the Internet, let alone "as the crow flies", and plainly well within the 50-mile restricted area set out in Wojdyl's Employment Agreement.

42.     Since Wojdyl joined Execu/Search, RHI learned that Wojdyl immediately began soliciting RHI's customers and candidates in direct violation of his Employment Agreement.

43. Specifically, RHI was advised by at least one client with whom Wojdyl worked while with RHI, that it had been receiving telephone calls from Wojdyl regarding job orders that Wojdyl had knowledge of, and had worked on, while he was employed by RHI.

44. RHI also recently learned that Wojdyl had contacted at least one other client and a candidate whom he had been working with while at RHI.

45. In sum, since Wojdyl's departure from RHI, he has breached his Employment Agreement and his common law obligations to RHI, by directly competing with RHI in violation of his non-compete agreements, soliciting RHI's clients and candidates, and by misappropriating and using RHI's trade secrets and confidential information, for the benefit of himself and his current employer, Execu/Search, to the detriment of RHI.

46. Upon information and belief, Execu/Search knew of the restrictive covenants contained in Wojdyl's employment agreement, and nevertheless knowingly induced and caused him to breach that contract.

## IRREPARABLE HARM TO RHI

47. Defendants' actions have harmed RHI's business, especially its relationships with its clients and candidates, reputation and goodwill.

48. RHI's trade secrets and confidential client information that Wojdyl has thus far disclosed to Execu/Search and has used to unfairly compete with RHI can never be secret again.

49. The unique relationships with RHI's clients and candidates which Wojdyl was given the opportunity to forge by and on behalf of RHI, have been irreparably harmed.

50. Injunctive relief is necessary and appropriate because if the Defendants continue to compete unfairly, RHI will suffer further damage that cannot be compensated by money alone.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on May 14, 2007

						_____
						Dawn S. Fay