**EXHIBIT A**



## Employment Agreement

This agreement is made as of January 30, 2006, by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and David Wojdyl ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries and affiliates (Employer and its subsidiaries and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for permanent employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the sales techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

Revision 10/2005



1. <u>Employment</u>. Employer hereby employs Employee and Employee hereby accepts such employment upon the terms and conditions hereinafter set forth. Employee shall receive an initial monthly salary of $ 4,000____. Employee represents and warrants to Employer that Employee's execution and delivery of this Agreement and the performance of Employee's duties as an employee of Employer as contemplated by this Agreement does not and will not breach or conflict with any obligation of Employee to a previous employer or any obligation to keep confidential any information acquired by Employee prior to Employee's employment hereunder. Employee further represents and warrants that Employee will not bring to Employee's employment by Employer or make use of during such employment any proprietary information, ideas or materials of others.

2. <u>Termination</u>. THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON. Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

3. <u>Duties</u>. Employee shall have such duties as may be assigned from time to time by Employer. It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel. Employee shall have and use such title as Employer shall direct from time to time.

This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned. A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

4. <u>Performance of Duties</u>. During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent. Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time. Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies. This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office over which Employee has exercised any form of supervisory authority.

Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other



materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of printed matter, photographs, audio tape, video tape, computer disk, electronic transmission, or otherwise. Such consent applies to both the use and publication of such items during Employee's employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5. <u>Compensation</u>. As compensation for all of Employee's services to Employer or any of the other RHI Companies, Employee shall initially receive a monthly salary as set forth in Section 1. In Employer's sole discretion, such salary may be changed from time to time, without amendment to this Agreement.

In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time. Employee can have no expectations regarding such plans or their continuation. All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6. <u>Personnel Policies, Practices and Procedures; Employer's Rights</u>. Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason. In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise. It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment. Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7. <u>Definitions</u>. Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies in which Employee has worked, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.



"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8. <u>Disclosure or Misuse of Confidential Information</u>. Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies, including, without limitation, information with respect to the name, address, contact persons or requirements of any customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract or permanent employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9. <u>Restrictive Covenant</u>. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed





within a radius of fifty (50) miles from any Applicable Office. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason. Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10. <u>Non-solicitation of Customers</u>. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer. Such restriction on Soliciting or performing services for Customers shall apply regardless of whether or not any such Customer was previously a customer of Employee or whether or not such Customer was previously, or is at the time of Solicitation or the performance of services, a customer of any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11. <u>Non-solicitation of Other Employees</u>. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12.    <u>Intent</u>. The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13.    <u>Wrongful Use of Employer's Name</u>. After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.



14. <u>Injunction</u>. In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have. The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15. <u>Waiver</u>. Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

16. <u>Notice</u>. All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail. Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee. Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

17. <u>Severability</u>. The provisions of this Agreement are severable. If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions. Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid. Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any office being deemed a separate geographical area. The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

18. <u>Limitation on Claims</u>. Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.



19. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules. In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

20. <u>Entire Agreement</u>. This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof. No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought. No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment agreement between Employer and Employee or modify the terms of this Agreement in any way.

21. <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of Employer and its successors and assigns and Employee, Employee's heirs and personal representatives. This Agreement shall be automatically assigned, without any further action by Employer or Employee, to any of the RHI Companies to which Employee may be transferred, which assignee shall then be deemed, as appropriate, the "Employer" for purposes of this Agreement.

22. <u>Arbitration</u>. Employer and Employee agree that, to the fullest extent permitted by law, any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11 or 13 hereof) shall be submitted to arbitration pursuant to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"). Claims subject to arbitration shall include contract claims, tort claims, or claims relating to compensation, as well as claims based on any federal, state, or local law statute, or regulation, including but not limited to claims arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the California Fair Employment and Housing Act (for California Employees), and comparable equal opportunity statutes for employees in other states. However, claims for unemployment compensation, workers' compensation, and claims under the National Labor Relations Act shall not be subject to arbitration. This Agreement shall be governed by the Federal Arbitration Act ("FAA"). A neutral and impartial arbitrator shall be chosen by mutual agreement of the parties; however, if the parties are unable to agree upon an arbitrator within a reasonable period of time, then a neutral and impartial arbitrator shall be appointed in accordance with the AAA Rules. The arbitrator shall apply the same substantive law, with the same statutes of limitations and remedies, that would apply if the claims were brought in a court of law. The arbitrator shall also prepare a written decision containing the essential findings and conclusions on which the decision is based. The costs and fees of the arbitrator shall be borne by the Employer. An arbitration award rendered pursuant to this

Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. Each party shall pay its own costs and attorneys' fees, unless a party prevails on a statutory claim and the statute provides that the prevailing party is entitled to payment of its attorneys' fees. In that case, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party as provided by law. THE PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONSTITUTES A WAIVER OF THEIR RIGHTS TO A TRIAL BY JURY OF ANY OF THE ABOVE MENTIONED CLAIMS OR CONTROVERSIES.

23. <u>Third Party Beneficiary</u>. Each of the RHI Companies is a third party beneficiary of this Agreement and each of them has the full right and power to enforce rights, interests and obligations under this Agreement without limitation or other restriction.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the date first above written.

ROBERT HALF INTERNATIONAL INC.

By _____

Title _____RMG_____

_____
Employee

**EXHIBIT B**


Robert Half International Inc.

## STAFF POLICY CERTIFICATIONS

I understand that it is very important to read all of these policies. I certify that I have read and understand the following policies:

1. **Regulation FD (Fair Disclosure) Policy (Dated 7/28/04)**

2. **Acknowledgement of Trade Secret Laws (Dated 3/1/04)**

3. **Non-Discrimination Policy (Dated 3/1/04)**

4. **Handbook Acknowledgement (Dated 1/02)**

5. **Corporate Compliance Program (Dated 11/1/01)**

    a. **Corporate Code of Conduct (Dated 11/1/01)**
    - **Professional Standards of Conduct (Dated 11/1/01)**
    - **Dissemination and Education (Dated 11/1/01)**
    - **Confidential Reporting System (Dated 11/1/01)**
    - **Monitoring and Auditing (Dated 11/1/01)**
    - **Procedures Upon Discovery of Misconduct (Dated 11/1/01)**
    - **Responsibility for Compliance Effort (Dated 11/1/01)**

6. **Code of Business Conduct and Ethics (Dated 2/12/04)**

7. **Statement of Company Policy Regarding Compliance With Securities Laws (Dated 9/9/02)**

I understand I can direct any questions regarding these policies to my supervisor or the appropriate 800 number.

I will comply with the above policies.

Signature: _[signed]_

Print Name: David Wojdyl

Date: 1/26/06

Location: Mid-Town / Wall Street

**Remove this Certification from the policy packet, sign and return to your Supervisor.**

STAFF (10/05)

**RHI** Robert Half International Inc.

## ACKNOWLEDGEMENT OF TRADE SECRET LAWS

### Dated March 1, 2004

I am an employee of Robert Half International Inc. ("Company"). As a result of my employment, certain business records and information pertaining to the Company, the Company's affiliated companies, their employees, and clients may be made available to me, which I acknowledge constitute proprietary, confidential information and trade secrets ("Trade Secret" or "Trade Secrets").

During the course of my employment, I understand that I may gain knowledge of or have access to Trade Secrets, including, without limitation, Company financial records and information, personnel records and information, customer and applicant lists, including the name, address and identity of clients and applicants, Company databases, client contracts, job orders, business proposals, and any other information which the Company may consider proprietary or otherwise wish to keep confidential.

I understand that all of the foregoing items, as applied to the Company, its employees, permanent and temporary applicants, and to clients of the Company and any financial or other information not generally available to others, are extremely valuable to the Company and give it a competitive advantage in its industry. I further acknowledge that such information is safeguarded by the Company and its affiliates as Trade Secrets, and is made available only to those employees who need to have access to such information.

I acknowledge and agree that I have a duty to safeguard such Trade Secrets, not to disclose them to others and not to remove or copy materials which include any Trade Secrets, or to use any Trade Secrets outside of my present employment.

I agree that during the course of my employment and after its termination, I will not disclose any information described herein to any party except in connection with my duties to the Company and will not use such information directly or indirectly for my own benefit.

I understand that after termination of my employment, my solicitation of any temporary or permanent employment applicant, recruited candidate, temporary employee, or client of the Company may constitute the illegal taking of a Trade Secret for which I could be enjoined and be liable for money damages. The disclosure of any Trade Secret or any other violation of this policy during the course of my employment or after its termination will cause immediate and irreparable injury, loss and damage to the Company and/or its employees and clients. In the event of disclosure or threatened disclosure of Trade Secrets, the Company is entitled to institute and prosecute proceedings in a court of competent jurisdiction to obtain temporary and/or permanent injunctive relief to enforce this policy, without the necessity of proof of actual damage or loss. Non-compliance with this policy may result in disciplinary actions ranging from suspension to termination of employment. I understand that this policy is in addition to policy in the Employee Handbook and other policies promulgated by the Company. These terms and conditions survive the termination of my employment for any reason.

**EXHIBIT C**

# ROBERT HALF INTERNATIONAL INC.
## REMINDER OF POST-TERMINATION OBLIGATIONS

Name _David Wojdyl_

Termination Date _____

Non-Competition Covenant:  ☐ Yes     ☐ No

Your employment with Robert Half International Inc. or its subsidiaries ("Robert Half") terminated on the above date. The purpose of this letter is to remind you of your obligations to Robert Half concerning its confidential information and trade secrets, which were made available to you during the course of your employment, and of certain other continuing obligations that may be applicable to you.

While working for Robert Half, you had access to its confidential information and trade secrets, including, but not limited to, completed application forms, resumes, temporary and permanent employee files, client files, fee arrangements, job orders, mailing lists, activity sheets, information with respect to the names, addresses, contact persons or requirements or customers, clients, applications or employees and information with respect to the procedures, advertising, finances, organizations, personnel, plans, objectives or strategies of Robert Half.

Any use or disclosure of Robert Half's confidential information and trade secrets is governed by state and federal law. You are under a continuing obligation not to, directly or indirectly, disclose furnish or make accessible to any person, firm, corporation or their entity, or make use of, any confidential information or trade secrets obtained while you were in the employer of Robert Half. You are also required to return all property of Robert Half, including but not limited to, files in your possession or control that may have been retained after the termination of your employment, as well as any copies, computer printouts, or materials and information derived from those files.

In addition to your obligations, regarding Robert Half's trade secrets and confidential information, you may be under a continuing obligation, pursuant to an Employment Agreement that you have previously entered into with Robert Half, to not compete with Robert Half in a certain geographical region for a specified period of time following the "Non-Competition Covenant" above. Please refer to your copy of your Employment Agreement for details regarding this obligation of yours.

Robert Half will take all appropriate steps to prevent any attempt by you, directly or indirectly, to utilize its confidential information and trade secrets for your personal gain or that of any other business. Robert Half will also take all appropriate steps to prevent competition by you in violation of any applicable Employment Agreement. Legal proceedings may include a suit for money damages and/or equitable relief. In the event Robert Half commences legal proceedings, it is not required to provide you with any prior notice.

Date: 3.26.07

Sincerely,

_____
Supervisor's Signature