UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                   :

ROBERT HALF INTERNATIONAL INC.,     :

              Plaintiff,          :

                              :     07-CV-

     - against -               :

DAVID WOJDYL; and                   :
THE EXECU/SEARCH GROUP, INC.      :

            Defendants.        :

                                     :

----------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER,
## A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Dated:   New York, New York
          May 15, 2007

Of Counsel:

      Gary H. Glaser, Esq. (GG-9696)
      James S. Yu, Esq. (JY-9734)

SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Plaintiff
Robert Half International Inc.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

    A.    RHI's Business.................................................................................... 3

    B.    RHI's Trade Secrets and Confidential Information. ........................... 4

    C.    Wojdyl's Employment Agreement with RHI. ................................... 5

    D.    Wojdyl's Resignation.......................................................................... 6

    E.    Wojdyl's Misappropriation of RHI Trade Secrets and Unlawful Conduct. ............ 7

    F.    Irreparable Harm to RHI. ................................................................... 9

ARGUMENT .......................................................................................................... 10

    I.    LEGAL STANDARD FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION.................... 10

    II.    RHI IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS............... 10

        A.    RHI is Likely to Succeed on its Misappropriation of Trade Secrets Claim. ....................................................................... 10

        B. RHI is Likely to Succeed on its Unfair Competition Claim. .............. 14

        C.    RHI is Likely to Succeed on its Breach of Contract Claim. ............... 15

        D.    RHI is Likely to Succeed on its Breach of Fiduciary Duty Claim............ 18

        E.    RHI is Likely to Succeed on its Claim for Tortious Interference with Contractual Relations........................................................ 20

    III.    RHI WILL CONTINUE TO SUFFER IRREPARABLE HARM IF THIS COURT DOES NOT GRANT IT INJUNCTIVE RELIEF. .............................. 21

    IV.    A BALANCE OF THE HARDSHIPS WEIGHS IN RHI'S FAVOR.................... 23

    V.    INJUNCTIVE RELIEF SHOULD RUN FROM THE DATE OF THIS COURT'S ORDER. .............................................................................. 24

    VI.    RHI SHOULD BE GRANTED EXPEDITED DISCOVERY. ........................... 25

CONCLUSION........................................................................................................ 28

# TABLE OF AUTHORITIES

## CASES

**Page**

7th Sense, Inc. v. Liu, 220 A.D.2d 215, 631 N.Y.S.2d 835 (1st Dep't 1995) ...............................19

ABC v. Wolf, 52 N.Y.2d 394, 438 N.Y.S.2d 482 (1981)...............................................................17

ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988 (2d Cir. 1983) ............................19

Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd., No. 94 Civ.
5620 (JFK), 1994 WL 719696 (S.D.N.Y. Dec. 28, 1994)............................................................25

American Para Prof'l Sys., Inc. v. Examination Mgmt. Servs., Inc.,
214 A.D.2d 413, 625 N.Y.S.2d 33 (1st Dep't 1995) ....................................................................20

Anacomp, Inc. v. Shell Knob Servs., Inc., No. 93 Civ. 4003 (PKL),
1994 WL 9681 (S.D.N.Y. Jan. 10, 1994) ..............................................................................10, 19

Arnold's Ice Cream Co. v. Carlson, 330 F.Supp. 1185 (E.D.N.Y. 1971) .....................................19

Bausch & Lomb Inc. v. Smith, 630 F.Supp. 262 (W.D.N.Y. 1986)...............................................12

Borne Chemical Co. v. Dictrow, 85 A.D.2d 646, 445  N.Y.S.2d 406 (2d Dep't 1981) ................17

B-S Industrial Controls, Inc. v. Burns Bros. Controls, Inc., 256 A.D.2d 963,
681 N.Y.S.2d 897 (3d Dep't 1998)...............................................................................................20

B.U.S.A. Corp. v. Ecogloves, Inc., No. 05 CIV. 9988 (SCR),
2006 WL 3302841 (S.D.N.Y. Jan. 31, 2006) .........................................................................11, 13

Churchill Commnc's. Corp. v. Demyanovich, 668 F.Supp. 207 (S.D.N.Y. 1987) .................12, 22

Coors Brewing Co. v. Anheuser-Busch Cos., 802 F.Supp. 965 (S.D.N.Y. 1992).........................14

DataType Int'l, Inc. v. Puzia, 797 F.Supp. 274 (S.D.N.Y. 1992)..................................................16

Delphine Software Int'l, S.A.R.L. v. Electronic Arts, Inc., No. 99 Civ.
4454 (AGS), 1999 WL 627413 (S.D.N.Y. Aug. 18, 1999) .........................................................25

Dial Info. Servs. Corp. of New York v. Thornburgh, 938 F.2d 1535 (2d Cir. 1991)....................25

DoubleClick Inc. v. Henderson, No. 116914/97, 1997 WL 731413
(Sup. Ct. N.Y. County Nov. 5, 1997) .......................................................................12, 14, 18, 24

Duane Jones Co. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954)...............................................20

Eastern Artificial Insemination Coop. Inc. v. La Bare, 210 A.D.2d 609,
619 N.Y.S.2d 858 (3d Dep't 1994)..................................................................................12

Ecolab Inc. v. Paolo, 753 F.Supp. 1100 (E.D.N.Y. 1991).................................10, 11, 22

Educational Comm'n for Foreign Sch. Med. Graduates v. Repik, No. A. 99-1381,
1999 WL 317052 (E.D. Pa. May 17, 1999)....................................................................26

Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 190 N.Y.S.2d 977 (1959)..............14

Ellsworth Assocs. v. United States, 917 F.Supp. 841 (D.D.C. 1996)...............................26

Estee Lauder Cos., Inc. v. Batra, 430 F.Supp.2d 158 (S.D.N.Y. 2006)...........................22

Fortune Personnel Agency, Inc. v. Livingston, 102 Misc.2d 369, 423
N.Y.S.2d 360 102 Misc. 2d 369, 423 N.Y.S.2d 360 (Sup. Ct. N.Y. County 1979) ................11, 12

Gelder Medical Group v. Webber, 41 N.Y.2d 680, 394 N.Y.S.2d 867 (1977) ................16

Giffords Oil Co. v. Wild, 106 A.D.2d 610, 483 N.Y.S.2d 104 (2d Dep't 1984)...........11

H.B. Fuller Co. v. Hagen, 363 F.Supp. 1325 (W.D.N.Y. 1973).....................................16

IKON Office Solutions v. Leichtnam, No. 02-CV-0721E(SC), 2003
WL 251954 (W.D.N.Y. Jan. 3, 2003) ............................................................................25

Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F.Supp. 119 (E.D.N.Y. 1997)........12

John Hancock Mut. Life Ins. Co. v. Austin, 916 F.Supp. 158 (N.D.N.Y. 1996)...........16

Johnson Controls v. A.P.T. Critical Sys., Inc., 323 F.Supp.2d 525 (S.D.N.Y. 2004) .............10, 21

Kaufman v. IBM Corp., 97 A.D.2d 925, 470 N.Y.S.2d 720 (3d Dep't 1983) ................24

L.M. Rabinowitz & Co. v. Dasher, 82 N.Y.S.2d 431 (Sup. Ct. N.Y. Count 1948)........19

Levitt Corp. v. Levitt, 593 F.2d 463 (2d Cir. 1979) .......................................................25

Lumex, Inc. v. Highsmith, 919 F.Supp. 624 (E.D.N.Y. 1996) .................................12, 21

Mallory Factor, Inc. v. Jicka, 168 A.D.2d 344, 562 N.Y.S.2d 666 (1st Dep't 1990)..............16, 17

Mallory Factor, Inc. v. Schwartz, 146 A.D.2d 465, 536 N.Y.S.2d 752 (1st Dep't 1989) ............17

Maritime Fish Products v. World-Wide Prods., 100 A.D.2d 81,
474 N.Y.S.2d 281 (1st Dep't 1984) .............................................................................18

Markovits v. Venture Info Capital, Inc., 129 F.Supp.2d 647 (S.D.N.Y. 2001)................23

Natsource LLC v. Paribello, 151 F. Supp.2d 465 (S.D.N.Y. 2001) .........................................21, 23

North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38 (2d Cir. 1999).......................12, 19, 21, 22

Onan Corp. v. United States, 476 F.Supp. 428 (D. Minn. 1979)....................................................26

Panther Sys. II, Ltd. v. Panther Computer Sys., Inc., 783 F. Supp. 53 (E.D.N.Y. 1991) .............12

Pashaian v. Eccelston Props., Ltd., 88 F.3d 77(2d Cir. 1996) ........................................................10

Richardson v. Suzuki Motor Co., 868 F.2d 1226 (Fed. Cir. 1989)..................................................21

Roanoke Eng'g Sales Co. v. Rosenbaum, 290 S.E.2d 882 (Va. 1982)............................................25

Roy Export Co. Establishment of Vaduz, Liechtenstein v. CBS, Inc.,
672 F.2d 1095 (2d Cir. 1982)..........................................................................................................14

Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037(2d Cir. 1980) ............................................14

Service Sys. Corp., 41 A.D.2d at 24, 341 N.Y.S.2d at 706 (4th Dep't 1973) ................................17

Stanley Tulchin Assocs. v. Vignola, 186 A.D.2d 183, 587
N.Y.S.2d 761 (2d Dep't 1992).................................................................................................16, 22

State of N.Y. v. U.S. Metals Ref. Co., 771 F.2d 796 (3d Cir .1985)...............................................25

Textron, Inc. v. Teleoperator Sys. Corp., 554 F.Supp. 315 (E.D.N.Y. 1983) ...............................21

U.S. Naval Inst. v. Charter Commc'ns Inc., 875 F.2d 1044 (2d Cir. 1989) ...................................26

Velo-Bind, Inc. v. Scheck, 485 F.Supp. 102 (S.D.N.Y. 1979).......................................................22

Wenner Media LLC v. Northern & Shell North Am. Ltd., No. 05 Civ. 1286 (CSH),
2005 WL 323727 (S.D.N.Y. Feb. 8, 2005)....................................................................................21

Webcraft Techs., Inc. v. McCaw, 674 F.Supp. 1039 (S.D.N.Y. 1987) .............................11, 14, 17

## OTHER AUTHORITIES

Restatement (Third) of Unfair Competition § 39 & cmt. b (1995)...................................................11

Restatement of Torts § 757 (1939) ..................................................................................................11

Plaintiff Robert Half International Inc. ("RHI" or "Plaintiff"), by and through its

attorneys, Seyfarth Shaw LLP, respectfully submits this memorandum of law in support of its

motion for a temporary restraining order and a preliminary injunction against Defendants David

Wojdyl ("Wojdyl") and The Execu/Search Group, Inc. ("Execu/Search") (collectively,

"Defendants"), pursuant to Rule 65 of the Federal Rules of Civil Procedure.  Plaintiff also seeks

expedited discovery in advance of its hearing on this motion for a preliminary injunction.

## PRELIMINARY STATEMENT

RHI, a leading personnel services and executive recruiting and placement firm,

employment agency and temporary personnel service business, can only succeed based on its

development of strategic business plans and competitive information, together with its careful

development and support of its reputation and goodwill.  As a result, RHI takes great care and

precaution to safeguard its trade secrets and confidential information, as well as its reputation

and valuable name recognition, which it has spent over 50 years building and nurturing.

This action and the instant application for injunctive relief arises out of the blatant

misappropriation, disclosure, and unauthorized use of RHI's trade secrets and other confidential

and proprietary business, client and candidate information by Defendant Wojdyl, a former RHI

employee, in breach of his common law and contractual obligations to RHI, for the benefit of

himself and Defendant Execu/Search.  As a Recruiting Manager in RHI's Finance and

Accounting division, Wojdyl was entrusted and provided with unique access to RHI's

confidential, proprietary, and trade secret information, including but not limited to, information

relating to RHI's clients and candidates, strategic business and financial information, as well as

RHI's business model and training.  Due to the sensitive nature of this information and to protect

RHI's reputation and goodwill, as a condition of his employment with RHI, Wojdyl executed an

employment agreement, pursuant to which, he agreed, among other things, to maintain RHI's

trade secrets and business information in confidence and refrain from competing with RHI for a reasonable period of one year within a prescribed geographic area. Wojdyl expressly recognized in the employment agreement that the foregoing restrictions were reasonable and necessary to protect RHI's legitimate business interests, and that these restrictions continued after his employment with RHI ended.

Despite these obligations to RHI, Wojdyl blatantly violated them by not only joining Defendant Execu/Search, a competing executive search and recruiting firm, immediately following his departure from RHI, but quite literally on the eve of his resignation, during non-business hours, he systematically printed and stole documents containing RHI's confidential, proprietary, and trade secret information, including, but not limited to, client lists, client contact information, open job orders, candidate information and training materials, for his own use and benefit, and for that of Execu/Search. Additionally, in the days leading up to his resignation, Wojdyl transmitted to his personal email account various other RHI documents containing similar information, as well as RHI's business strategies and formulas for success.

It is standard practice for employees in the staffing industry to advise their employers of the existence of restrictive covenants to which they are bound, and therefore, Execu/Search was, upon information and belief, well aware of Wojdyl's employment agreement with RHI, and blatantly caused him to ignore his obligations to RHI. Inevitably, Wojdyl and Execu/Search will unfairly make use and take advantage of RHI's stolen confidential information and trade secrets. Indeed, since he joined Execu/Search, RHI has already learned that Wojdyl has been soliciting RHI's customers and candidates with whom he was working while employed by RHI and whose names and other confidential information appear on the very documents which Wojdyl stole

from RHI. Wojdyl has also contacted at least one RHI client regarding job orders that he had knowledge of as a result of his employment with RHI.

The consequences of the Defendants' tortious actions have been and will continue to be injurious and will continue to irreparably harm RHI in multiple ways. Based on the foregoing, RHI seeks a preliminary injunction in order to (1) prevent Defendants from continuing to make use of and disclose RHI's confidential trade secrets; (2) prohibit Defendants from competing with RHI in the provision of recruitment services and from soliciting RHI's customers and clients for the period set out in his written employment agreement, as extended by the period of his breach of such obligations; and (3) prohibit Defendants from contacting or soliciting RHI customers and candidates; (4) secure a return of all RHI documents, records and property within Defendants' possession, custody or control. By their unlawful actions, Defendants are poised to irreparably harm the business, reputation and goodwill that RHI has spent years building and nurturing. Accordingly, injunctive relief is plainly warranted in order to protect RHI against Defendants' ongoing and continuing flagrant violations.

## STATEMENT OF FACTS

A complete statement of the facts is set forth in the accompanying Declaration of Dawn S. Fay, and the exhibits annexed thereto. A summary of the key facts is set forth herein for the convenience of the Court.

**A.    RHI's Business.**

RHI conducts business as a personnel staffing services firm. Since 1948, RHI has developed a reputation for high quality, professional and state-of-the-art recruitment and placement services. RHI, through various divisions such as financial services, information technology, legal services, creative, and office and administrative professionals, specializes in

3

placing personnel candidates with clients of RHI in both permanent, project and consulting/temporary job positions in all industries.

**B.    RHI's Trade Secrets and Confidential Information.**

RHI's success in the recruiting and placement business is due in large part to its relationship with its clients and its knowledge and strategic position in this competitive field.  Its repeat business with clients results from its successful performance of placement services, its extensive advertising and well-deserved reputation for guarding the confidentiality of the information which it has gathered, analyzed and developed over the period of its many years of existence, as well as its clients' relationship s with RHI and its recruiting staff, including Wojdyl.

RHI's confidential information includes its extensive files on its many clients, including their identities, preferences, needs, and particular requirements with respect to permanent, project and temporary placement services, as well as its extensive files pertaining to the applicants and candidates who have registered with RHI and/or who have been placed by RHI with its clients.[1]  This information is considered a closely guarded trade secret by RHI and is not available to the public; only internal staffing professionals and administrative personnel are given access to RHI's existing client account files and database and to RHI's candidate files and database.  RHI's candidate lists and information concerning job openings are integral to RHI's efforts at developing and maintaining its goodwill and, therefore, also constitute trade secrets and/or proprietary, confidential information.  In addition, RHI has spent a great deal of time and expense developing specific forms and documents used in the regular course of its business.

In connection with his position as Recruiting Manager at RHI's Finance and Accounting division, Wojdyl was given access to this highly confidential information, and in some cases was

---

[1]    All of the applicants and candidates who have registered for temporary or permanent employment or who have been placed by RHI will be referred to collectively herein as "candidates."

4

responsible for developing such information. Indeed, it is because of the sensitivity of this information and Wojdyl's access to it, that he was required to sign the Employment Agreement containing restrictive covenants, including non-solicitation and non-disclosure provisions, as a condition of his employment with RHI. Defendants' misappropriation and unauthorized use of this information allows them to unfairly compete with RHI, and inflicts upon RHI an extraordinary and irreparable harm.

**C.    Wojdyl's Employment Agreement with RHI.**

Wojdyl began his employment with RHI on January 30, 2006 as a Recruiting Manager in the Finance and Account division, and was assigned to work from both RHI's Wall Street office and the Midtown Office (collectively, RHI'S NYC Offices; at various times, he worked out of both the Midtown branch and the Wall Street branch). The Finance and Accounting division engages in the placement of personnel in the finance and accounting industry; Wojdyl was part of the division's Financial Services Group ("FSG"), which specializes in the placement of individuals in the financial services industry.

In order to protect RHI's trade secrets and confidential information, its reputation and good name, and its market position, Wojdyl was required by RHI as a condition of his employment to execute that same day an agreement containing certain restrictive covenants, including non-competition, non-solicitation and non-disclosure provisions (the "Employment Agreement"). Specifically, the restrictive covenants in Wojdyl's Employment Agreement, among other things: (1) prohibit him from disclosing or misusing RHI's confidential information; (2) restrict him for a period of twelve months after termination from becoming employed by any competing executive recruiting firm within a fifty-mile radius of any RHI office in which he worked during the twelve-month period prior to the termination of his employment; (3) prohibit him from soliciting RHI's customers, clients, and candidates;

(4) prohibit him from soliciting or inducing any RHI employee (whether temporary or internal staff) to leave RHI to join a competitor; and (5) prohibit him from using or trading on RHI's name for the benefit of himself or anyone else, except for the limited purpose of seeking bona fide employment.

Wojdyl expressly agreed that these restrictions were "reasonable and necessary in order to protect and maintain [RHI's] proprietary and other legitimate business interests" and that such restrictions do not prevent him from earning a livelihood. Wojdyl further agreed that temporary and permanent injunctive relief would be appropriate remedies against an actual or threatened breach of these restrictive covenants. Finally, Wojdyl certified that he read and understood RHI's "Acknowledgments of Trade Secret Laws," which provides, among other things, that any solicitation of candidates or clients of RHI after termination of employment "could constitute the illegal taking of a Trade Secret for which [he] could be enjoined and be liable for money damages."

## D.  Wojdyl's Resignation.

As early as March 19, 2007, Wojdyl appears to have been communicating with Gary Grossman, partner in charge of accounting and finance recruiting at Execu/Search, about possible employment with Execu/Search. Upon information and belief, on or about March 22, 2007, Wojdyl met with Mr. Grossman and Mitchell Peskin, partner in charge of Execu/Search's permanent placement divisions for financial services and human resources recruiting. Wojdyl tendered his resignation from RHI on Monday, March 26, 2007, upon information and belief, after he accepted an offer of employment with Execu/Search.

On that same day, March 26, 2007, Keith Feinberg, Director of Permanent Services of RHI with immediate supervisory responsibility for Wojdyl, and to whom Wojdyl tendered his resignation, met with Wojdyl and, among other things, reminded him of his continuing

6

obligations to RHI, including his obligations concerning its confidential information and trade secrets that were made available to him throughout his employment at RHI and with respect to the restrictive covenants in his Employment Agreement, and provided him with a written "Reminder of Post-Termination Obligations." (A true and correct copy of Wojdyl's "Reminder of Post-Termination Obligations" is annexed hereto as Exhibit C.)

E.   **Wojdyl's Misappropriation of RHI Trade Secrets and Unlawful Conduct.**

Prior to tendering his resignation from RHI, Wojdyl embarked on a stealth campaign to surreptitiously steal RHI's confidential, proprietary, and trade secret information during non-business hours for his own use and for the benefit of Execu/Search. Indeed RHI's computer records indicate that Wojdyl was present in RHI's Midtown Office both during after-hours in the final days of his employment with RHI and during the weekend prior to his resignation, at a time when the office was likely to be empty of other personnel, or sparsely populated by co-workers. RHI's computer records further indicate that during such time periods, Wojdyl systematically printed various documents containing RHI's confidential, proprietary and trade secret information. Upon information and belief, Wojdyl stole such documents and information for the express purpose of converting and misappropriating such documents and information to his own benefit and for that of Execu/Search and to unfairly compete with RHI.

The foregoing documents printed and retained by Wojdyl for his personal use and benefit and for that of Execu/Search included, among other things, information relating to RHI's clients (including, but not limited to, RHI clients with whom Wojdyl himself had dealt on behalf of RHI), and including information such as such clients' contact names, email addresses, and telephone numbers; information relating to open and pending job orders with RHI's customers (including, once again, job orders which Wojdyl had himself worked on for RHI); candidate information, including resumes that they had submitted to assist in their placement; a document

7

entitled "WALL STREET FSG PERM H-O-T" which was a list of RHI's Financial Services

Group's "hot" client prospects, candidates and job orders; an RHI document which is basically a

"How-To" training guide on recruiting candidates, and a 28-page FSG "Training Guide". These

documents are described by way of example only, as Wojdyl appears to have printed out

approximately 45 documents just on Sunday before his resignation, and the Monday of his

resignation.

Furthermore, in the days leading up to his resignation, Wojdyl also periodically

forwarded to his personal email account other items containing similar confidential, proprietary

and trade secret information. One of these emails contained information regarding recruiting and

placement strategies and attached a list of clients whom RHI had received job orders from in

2006.

Immediately after his departure from RHI, Wojdyl joined Execu/Search, where, upon

information and belief, his responsibilities continue to involve the recruiting of personnel for the

finance and accounting industries, within a short distance from RHI's NYC Offices – in fact,

within a few short blocks of RHI's Midtown Office where Wojdyl worked at the time of his

resignation – in direct competition with RHI. Indeed, since Wojdyl joined Execu/Search, RHI

has learned that he immediately began soliciting RHI's clients and candidates in direct violation

of his Employment Agreement. Specifically, RHI was advised by at least one client with whom

Wojdyl worked while with RHI, that it had been receiving telephone calls from Wojdyl

regarding job orders that Wojdyl had knowledge of, and had worked on, while he was still

employed by RHI. RHI also recently learned that Wojdyl had contacted at least one other client

and a candidate whom he had been working with while at RHI.

In sum, since Wojdyl's departure from RHI, he has breached his restrictive covenants and confidentiality agreements as well as his common-law duties of loyalty, by directly competing with RHI in violation of his non-compete agreements, soliciting RHI's clients and candidates, and by misappropriating and using RHI's trade secrets and confidential information, for the benefit of himself and his current employer, Execu/Search. Furthermore, upon information and belief, Execu/Search knew of the restrictive covenants contained in Wojdyl's employment agreement, and nevertheless knowingly induced and caused him to breach that contract and to use the trade secrets and other confidential information which Wojdyl had misappropriated from RHI, for Execu/Search's benefit.

**F.    Irreparable Harm to RHI.**

Wojdyl's decision to flout his non-competition agreements by joining Execu/Search, does not simply rob RHI of the benefit of its agreement to be free from unfair competition for a reasonable period of time — a benefit to which RHI would be entitled in and of itself. Rather, Wojdyl has gone even further. As set forth above, Wojdyl brazenly stolen highly confidential business information and trade secrets which RHI has expended great effort to protect. Defendants' possession of this knowledge is an unfair "leg up" in their attempts to compete against RHI. Further, the unique relationships with RHI's clients and candidates, which Wojdyl was given the opportunity to forge on behalf of RHI, have been irreparably harmed.

On these facts, injunctive relief is necessary and appropriate because if the Defendants continue on their present course, RHI will suffer further damage that cannot be compensated by money alone. As the Defendants continue to misappropriate and misuse RHI's trade secrets, confidential and/or proprietary information, the confidentiality of such information is lost forever.

9

**ARGUMENT**

**I.     LEGAL STANDARD FOR ISSUANCE OF A TEMPORARY
        RESTRAINING ORDER AND A PRELIMINARY INJUNCTION.**

Under the well-known standard of this Circuit, RHI is entitled to a preliminary injunction

if it can establish:  (1) irreparable harm; and (2) either (a) likelihood of success on the merits, or

(b) sufficiently serious questions going to the merits to make them a fair ground for litigation and

the balance of the hardships weighs in its favor.  Pashaian v. Eccelston Props., Ltd., 88 F.3d 77,

85 (2d Cir. 1996); Johnson Controls v. A.P.T. Critical Sys., Inc., 323 F. Supp. 2d 525, 531

(S.D.N.Y. 2004).

**II.    RHI IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.**

The facts demonstrate that RHI is likely to succeed on its claims.  Importantly, RHI need

not show that success is an absolute certainty, but only "that the probability of [its] prevailing is

better than fifty percent."  Ecolab Inc. v. Paolo, 753 F. Supp. 1100, 1109-10 (E.D.N.Y. 1991).

Moreover, "[w]here . . . the balance of hardships tips strongly in [the movant's] favor, the

required showing of the probability of its success is reduced.  It is enough that [the movant's]

chances are better than negligible."  Id. at 1110 (citations omitted); see also Johnson Controls,

323 F. Supp. 2d at 531.  In the present case, RHI more than meets this standard.

**A.     RHI is Likely to Succeed on its Misappropriation of Trade Secrets Claim.**

Defendants should be enjoined from misappropriating RHI's trade secrets and

confidential information and unfairly competing with RHI.  Under New York law, trade secrets

are defined as any compilation of information which is used in one's business and which gives it

an opportunity to obtain an advantage over competitors who did not know or use it.  Anacomp,

Inc. v. Shell Knob Servs., Inc., No. 93 Civ. 4003 (PKL), 1994 WL 9681, at *6 (S.D.N.Y. Jan. 10,

1994) (copy attached at Tab A to the accompanying Compendium of Unreported Cases in

Support of Plaintiff Robert Half International Inc's Motion for a Temporary Restraining Order, Preliminary Injunction and Expedited Discovery (the "Compendium"); Restatement (Third) of Unfair Competition § 39 & cmt. b (1995); Restatement of Torts § 757 cmt. b (1939). The courts have specifically recognized that information pertaining to candidates and clients in the placement industry are protectable trade secrets. See, e.g., Fortune Personnel Agency, Inc. v. Livingston, 102 Misc. 2d 369, 370, 423 N.Y.S.2d 360, 360 (Sup. Ct. N.Y. County 1979) (names of candidates for executive placement constituted trade secrets or confidential information because "the names, addresses, accomplishments and resumes of such people are not readily compiled from publicly available sources").

Customer lists are trade secrets to the extent that the lists include specific contact information for individuals who are employed by those customers that is not readily available to individuals making normal business inquiries to those customers. B.U.S.A. Corp. v. Ecogloves, Inc., No. 05 CIV. 9988 (SCR), 2006 WL 3302841, at *3 (S.D.N.Y. Jan. 31, 2006) (Compendium Tab B). See also Ecolab, 753 F. Supp. at 1112 (client and candidate information that is not readily ascertainable and is acquired "through the cultivation and monitoring" of customers are protectable trade secrets); Webcraft Techs., Inc. v. McCaw, 674 F. Supp. 1039, 1046 (S.D.N.Y. 1987) (holding that company was likely to succeed on merits in demonstrating that customer lists qualify as trade secret information because they "took enormous time and effort to develop"); Giffords Oil Co. v. Wild, 106 A.D.2d 610, 611, 483 N.Y.S.2d 104, 106 (2d Dep't 1984) (customer list entitled to protection). New York law imposes a duty upon employees, even after employment is terminated, to "keep and retain [customer lists and trade secrets] in the strictest confidence" thereby precluding their use of that confidential information for the benefit of a competitor business. North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 47-48 (2d Cir. 1999).

Similarly, confidential financial information or other business information (such as RHI's marketing and business strategies) is routinely protected. See Inflight Newspapers, Inc. v. Magazines In-Flight, LLC., 990 F. Supp. 119, 126-27 (E.D.N.Y. 1997) (finding that information relating to pricing, customer preferences, terms of particular agreements, and similar information were trade secrets and warranted preliminary injunction and enforcement of non-disclosure and non-competition provisions); Lumex, Inc. v. Highsmith, 919 F. Supp. 624, 630 (E.D.N.Y. 1996) (confidential data about products, pricing, income, company objectives, financial information, and profit margins were protectable trade secrets); Bausch & Lomb Inc. v. Smith, 630 F. Supp. 262, 265 (W.D.N.Y. 1986) (sensitive product strategies were protectable secrets); DoubleClick Inc. v. Henderson, No. 116914/97, 1997 WL 731413, at *5 (Sup. Ct. N.Y. County Nov. 5, 1997) (revenue projections, pricing and product strategies, and information about customers were trade secrets) (Compendium Tab C); Eastern Artificial Insemination Coop. Inc. v. La Bare, 210 A.D.2d 609, 610-11, 619 N.Y.S.2d 858, 859-60 (3d Dep't 1994) (deeming pricing and marketing strategies protectable trade secrets).

It is, of course, black-letter law that employees who have been entrusted with confidential information pertaining to the conduct and clientele of their employer's business "'may not subsequently use that information to further [their] own ends.'" Churchill Comme'ns Corp. v. Demyanovich, 668 F. Supp. 207, 212 (S.D.N.Y. 1987). Indeed, employees have an affirmative duty "not only not to purloin such material or copy it or even commit it to memory with the intention of using it for their own gain," but also "to respect this confidentiality and utilize it in no way in their own behalf." Fortune Personnel, 102 Misc. 2d at 370, 423 N.Y.S.2d at 360; see also Panther Sys. II, Ltd. v. Panther Computer Sys, Inc., 783 F. Supp. 53, 66 (E.D.N.Y. 1991) ("[E]ven if defendants have not physically appropriated a [customer] list, 'a former employee

may not solicit the customers of his former employer if they would be unknown to the employee but for information obtained during his prior employment.") That obligation is present even in the absence of an express non-disclosure provision — it is even more obvious where, as here, Wojdyl is contractually obligated to maintain the confidentiality of RHI's confidential information. <u>See, e.g.</u>, <u>B.U.S.A. Corp.</u>, 2006 WL 3302841, at *6 (defendant can misappropriate a trade secret without having entered into a confidentiality agreement).

RHI, for more than fifty years, has expended substantial time and effort to compile its confidential information which it uses to effectively compete in the marketplace, grow its business, and place candidates in permanent and consulting/temporary job positions in various fields. RHI maintains extensive files and a proprietary computer database pertaining to its clients' preferences, needs and requirements, as well as its candidates' experience and skill sets, all of which was acquired through years of cultivating its client relationships and monitoring its customers' needs. In a service business like RHI's, such efforts are necessary to succeed because repeat business with established clients and candidates is critical. RHI's detailed and carefully compiled database cannot be found in any public document nor can it be easily compiled by a competitor. RHI's database clearly gives it an advantage over competitors who have not spent the time or expense to compile such information, and as such, certainly constitutes trade secrets, or at least, confidential information worthy of legal protection.

RHI entrusted Wojdyl with broad access to its confidential information because it believed that he would respect RHI's confidentiality and not subsequently misappropriate that information to further his own ends. Wojdyl acknowledged the confidentiality of RHI's trade secrets and his duty to safeguard such trade secrets – both during his employment and again at the time of his resignation. And yet, as set out above, Wojdyl blatantly misappropriated that

13

information and breached RHI's confidence by, among other stealth and underhanded operations, surreptitiously stealing printouts and emailing to himself documents containing RHI's valuable trade secrets and other proprietary information.  Wojdyl has taken wrongful advantage of his status as a former employee of RHI and has sought to profit unjustly from RHI's extensive efforts to cultivate this information.  As such, RHI clearly establishes its likelihood of success on its misappropriation of trade secrets claim.

**B.**    **RHI is Likely to Succeed on its Unfair Competition Claim.**

RHI is also likely to succeed on its unfair competition claims for the same reasons.  The essence of unfair competition in contravention of New York common law "is that the defendant has misappropriated the labors and expenditures of another." Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).  Unfair competition clearly exists where a former employee misappropriates confidential information belonging to his former employer in abuse of his relationship of trust. DoubleClick, 1997 WL 731413, at *7.

While the claim of unfair competition usually involves some misappropriation, courts have recognized that this tort can encompass a broad range of conduct.  See Roy Export Co. Establishment v. CBS, Inc., 672 F.2d 1095, 1105 (2d Cir. 1982) ("New York courts have noted the 'incalculable variety' of illegal practices falling within the unfair competition rubric, calling it a 'broad and flexible doctrine.'") (citations omitted); see also Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 568, 190 N.Y.S.2d 977, 986-87 (1959) ("'The incalculable variety of illegal commercial practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use.'") (citation omitted).  Indeed, courts have noted that the tort can be applied to just about "'any form of commercial immorality.'" Coors Brewing Co. v. Anheuser-Busch Cos., 802 F. Supp. 965, 974-75 (S.D.N.Y. 1992) (citation omitted).  Here, Wojdyl's stealth campaign to steal RHI documents, together with

14

his repeated and flagrant breaches of his Employment Agreement, combined with Execu/Search's apparent encouragement if not inducement of the foregoing conduct, are precisely the types of "commercial immorality" that this cause of action was intended to prevent. Accordingly, injunctive relief is amply warranted to protect RHI against Wojdyl's and Execu/Search's misappropriation of its trade secrets and confidential information and the resulting unfair competition. See Webcraft, 674 F. Supp. at 1045-46.

### C.    RHI is Likely to Succeed on its Breach of Contract Claim.

RHI is also likely to succeed on its claim that Wojdyl breached his Employment Agreement. Under the Agreement, Wojdyl agreed not to become employed for a period of twelve months by any competitor in any part of the area encompassed within fifty mile radius from any office in which he worked during the one year period preceding his termination date. Competitor is defined in the Employment Agreement as "any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by [RHI] . . . ." Despite these express restrictions, Wojdyl immediately joined Execu/Search, a direct competitor, whose offices and operations are located mere blocks away from RHI's Midtown office where Wojdyl worked at the time of his resignation, and plainly with the 50-mile restriction set out in his Agreement.

Further, Wojdyl explicitly agreed, again for a period of twelve months, that he would not, "directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer. . . *regardless* of whether or not any such Customer was previously a customer of Employee or whether or not such Customer was previously, or is at the time of Solicitation or the performance of services, a customer of any Competitor." (emphasis added). Despite this provision, RHI has learned that Wojdyl has directly solicited at least two RHI customers in the short timepsan since he left RHI, as noted above.

15

Moreover, in order to ensure the confidentiality of RHI's trade secrets and to prevent any unfair competition by Wojdyl, he agreed not to disclose or misuse RHI's confidential information to which he had access, including, without limitation, "information with respect to the name, address, contact persons or requirements of any customer, client, applicant, candidate . . . and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies." Wojdyl breached the Agreement when he disclosed and misused RHI's confidential information such as its clients' identities, contact information, needs and requirements and its candidates' preferences, skill sets and experience.

Under New York law, the narrowly tailored provisions in Wojdyl's Employment Agreement are enforceable as reasonable and necessary for RHI's protection. See John Hancock Mut. Life Ins. Co. v. Austin, 916 F. Supp. 158, 163 (N.D.N.Y. 1996) (finding that agreement prohibiting competing employment within district where employee worked for a two-year period was reasonable); DataType Int'l, Inc. v. Puzia, 797 F. Supp. 274, 285 (S.D.N.Y. 1992) (former employee enjoined for two years from soliciting "those particular specific individuals with whom he has previously dealt"); H.B. Fuller Co. v. Hagen, 363 F. Supp. 1325, 1333 (W.D.N.Y. 1973) (enjoining defendants from violating employment contract, using confidential information or soliciting customers for a two-year period); Gelder Med. Group v. Webber, 41 N.Y.2d 680, 685, 394 N.Y.S.2d 867, 871 (1977) (agreement prohibiting competing employment within thirty miles of previous employer for five-year period found reasonable); Stanley Tulchin Assocs. v. Vignola, 186 A.D.2d 183, 186, 587 N.Y.S.2d 761, 763 (2d Dep't 1992) (covenant restricting defendant from using employer's client lists for three years was upheld); Mallory Factor, Inc. v. Jicka, 168 A.D.2d 344, 344, 562 N.Y.S.2d 666, 667 (1st Dep't 1990) (affirming injunction prohibiting defendant employee for two years from "performing services for any client with

whom defendant had dealt while an employee of plaintiff"); Mallory Factor, Inc. v. Schwartz, 146 A.D.2d 465, 467-68, 536 N.Y.S.2d 752, 753-54 (1st Dep't 1989) (upholding eighteen-month non-solicitation clause reasonably designed to insure against defendant's misappropriation of plaintiff's trade secrets and goodwill); Borne Chem. Co. v. Dictrow, 85 A.D.2d 646, 649, 445 N.Y.S.2d 406, 412 (2d Dep't 1981) (upholding covenant prohibiting competing employment within 150 miles of previous employer's office held reasonable).

In analyzing whether restrictive covenants are reasonable and, therefore enforceable, courts look, in particular, at the following four factors: (1) the time and geographical scope of the restriction must be reasonable; (2) the burden on the employee must not be unreasonable; (3) the general public must not be harmed; and (4) the restriction must be necessary for the employer's protection. ABC v. Wolf, 52 N.Y.2d 394, 403-04, 438 N.Y.S.2d 482, 486-87 (1981); Schwartz, 146 A.D.2d at 467, 536 N.Y.S.2d at 753; Applying these four factors to the case at hand, there is no question but that the provisions here are reasonable and enforceable against Wojdyl.

First, the time and scope of the restrictive provisions are clearly reasonable in light of Wojdyl's broad access to RHI's entire database of confidential information, the time and resources expended by RHI in developing and cultivating its client relationship, and the extensive training afforded to Wojdyl. See Webcraft, 674 F. Supp. at 1047 (two-year period found to be reasonable); Jicka, 168 A.D.2d at 344, 562 N.Y.S.2d at 667 (same); Service Sys. Corp. v. Harris, 41 A.D.2d 20, 24, 341 N.Y.S.2d 702, 706 (4th Dep't 1973) (enjoining defendant for three years from soliciting accounts which he developed or which he may have serviced while working for plaintiff).

Second, the burden on Wojdyl is reasonable and comparatively insignificant. The provisions that RHI seeks to enforce do not prevent Wojdyl from working for a competitor outside a narrow geographic region, nor do they prevent him from earning a livelihood. The employment agreement merely prevents Wojdyl from unjustly enriching himself at the expense of RHI's years of goodwill and effort by misappropriating RHI's trade secrets, soliciting RHI's clients and candidates, and soliciting RHI's employees for his own benefit or that of others. Indeed, Wojdyl himself agreed that these provisions were "reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interest of [RHI], and that the enforcement thereof would not prevent Employee from earning a livelihood."

Finally, the restrictions are obviously necessary for RHI's protection, particularly in light of Wojdyl's demonstrated bad faith and willingness to disregard his obligations under the Employment Agreement not to misuse RHI's trade secrets and confidential information and unfairly compete with RHI. Indeed, it is reasonable to infer that Wojdyl has engaged in numerous other breaches of his common-law and contractual obligations to RHI beyond that which has been discovered to date. RHI, therefore, has shown a likelihood of success on the merits of its claims, or in the alternative, clearly presented sufficiently serious questions going to the merits to make them a fair ground for litigation.

**D.     RHI is Likely to Succeed on its Breach of Fiduciary Duty Claim.**

RHI is likely to succeed on its claim that Wojdyl breached his fiduciary duties to RHI. "It is a firmly established principle in the law of [New York] that [an employee] is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Maritime Fish Prods. v. World-Wide Prods., 100 A.D.2d 81, 88, 474 N.Y.S.2d 281, 285 (1st Dep't 1984); accord DoubleClick, 1997 WL 731413, at *6. Wojdyl's duties of good faith and loyalty to RHI

requiring him to refrain from improperly using the information he learned about RHI's clients and candidates while employed there remain in effect even after he left RHI. <u>Anacomp</u>, 1994 WL 9681, at *14.

"It is implied in every contract of employment that the employee will hold sacred any trade secrets or other confidential information which he acquires in the course of his employment. This is a duty that the employee assumes not only during his employment but after its termination." <u>L.M. Rabinowitz & Co. v. Dasher</u>, 82 N.Y.S.2d 431, 435 (Sup. Ct. N.Y. County 1948) (citation omitted). The Second Circuit made this fundamental tenet absolutely clear in <u>North Atlantic Instruments</u>, 188 F.3d 38, where the court determined that an injunction was appropriate where the defendant competed with his former employer by specifically targeting its client list. There, the court held that the defendant's conduct violated the confidentiality provisions of the employment agreement, and further emphasized that the defendant's actions also breached his implied common-law duties to the former employer, because the employment agreement merely "makes explicit an employee's implied duties under New York law with respect to confidential information." <u>Id.</u> at 48.

Indeed, with or without an express agreement, it is well settled under New York law that "an agent has a duty 'not to use confidential knowledge acquired in his employment in competition with his principal.'" <u>ABKCO Music, Inc. v. Harrisongs Music, Ltd.</u>, 722 F.2d 988, 994 (2d Cir. 1983) (citation omitted); <u>see also</u> <u>7th Sense, Inc. v. Liu</u>, 220 A.D.2d 215, 216, 631 N.Y.S.2d 835, 836 (1st Dep't 1995) (issuing broad injunction against a former employee using prior employer's client information, and noting that former employee could not evade his fiduciary obligations to his former employer by resigning his post and taking a job elsewhere); <u>Arnold's Ice Cream Co. v. Carlson</u>, 330 F. Supp. 1185, 1188 (E.D.N.Y. 1971) (enjoining

defendant from competing against former employer where defendant violated fiduciary duties by actively soliciting former employer's clients prior to resignation).

In the instant case, Wojdyl was equally bound by the common-law duties of good faith and loyalty not to use his knowledge of RHI's client and candidate information to contact and solicit those clients and candidates, and his actions represent a clear breach of their fiduciary duties and warrant the immediate issuance of an injunction to prevent RHI from suffering irreparable harm.

### E.    RHI is Likely to Succeed on its Claim for Tortious Interference with Contractual Relations.

Defendant Execu/Search has tortiously interfered with Wojdyl's employment contract by soliciting and hiring him, knowing that he had an employment agreement with RHI. See Duane Jones Co. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954) (raid of employees by competing employer held compensable); B-S Indus. Controls, Inc. v. Burns Bros. Controls, Inc., 256 A.D.2d 963, 681 N.Y.S.2d 897 (3d Dep't 1998) (denying defendant's motion to dismiss claim of tortious interference with contract where defendant lured away three employees from competitor); American Para Prof'l Sys., Inc. v. Examination Mgmt. Servs., Inc., 214 A.D.2d 413, 625 N.Y.S.2d 33 (1st Dep't 1995) (enjoining defendants from entering into or inducing the breach of any contractual agreements with persons presently under contract with plaintiff). It is well recognized that such employee raiding is precisely the form of "commercial piracy" that will not be countenanced by the courts.

Under these circumstances, RHI easily satisfies its burden of showing a likelihood of success on this claim. See American Para, 214 A.D.2d at 414, 625 N.Y.S.2d at 34 (enjoining defendants from entering into or inducing the breach of any contractual agreements with persons under contract with plaintiff). As such, a temporary restraining order and preliminary injunction

should be issued to prevent not only any further raiding by Execu/Search of RHI, but also tampering with RHI's existing contractual relationships with its clients.

### III.  RHI WILL CONTINUE TO SUFFER IRREPARABLE HARM IF THIS COURT DOES NOT GRANT IT INJUNCTIVE RELIEF.

New York courts uniformly hold that irreparable harm can be presumed where defendants, such as here, are competing while in possession of a plaintiff's confidential and proprietary information, or where exploitation of such information is imminent.  See Wenner Media LLC v. Northern & Shell North Am. Ltd., No. 05 Civ. 1286 (CSH), 2005 WL 323727, at *4 (S.D.N.Y. Feb. 8, 2005) (Compendium Tab D); Johnson Controls, 323 F. Supp. 2d at 532 ("Generally, when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm."); Natsource LLC v. Paribello, 151 F. Supp. 2d 465, 471 (S.D.N.Y. 2001) (holding that because plaintiff bargained for a contract provision allowing it 120 day period after employee's termination to gain client's trust, plaintiff would be irreparably harmed if it did not receive the benefit of its bargain).

RHI's loss of its trade secrets and confidential information cannot be measured in money damages, because "'[a] trade secret once lost is, of course, lost forever.'"  Lumex, Inc., 919 F. Supp. at 628 (quoting FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984) (alteration in original)); see also Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1247 (Fed. Cir.) (enjoining defendant's continuing use of trade secrets, the court stated, "a misappropriator of trade secrets has no authorization of right to continue to reap the benefits of its wrongful acts"), cert. denied, 493 U.S. 853 (1989); Textron, Inc. v. Teleoperator Sys. Corp., 554 F. Supp. 315, 327 (E.D.N.Y. 1983) (defendant's appropriation of plaintiff's trade secret to defendant's own use for competitive purposes constitutes irreparable harm); North Atl. Instruments, 188 F.3d at 49 (finding that defendants' use of trade secrets violated New York law

and employment agreement, and would likely cause irreparable harm). And, with every day

Wojdyl remains employed by or provides services to Execu/Search in breach of his employment

agreement, RHI is exposed to further loss of its trade secrets.

Furthermore, Defendants are evidently competing while in possession of RHI's

confidential, proprietary and trade secret information because they are known to have directly

solicited RHI customers and candidates. The Defendants have acted as predators feeding off of

RHI's reputation and goodwill in ways not fully compensable by money. See Velo-Bind, Inc. v.

Scheck, 485 F. Supp. 102, 109 (S.D.N.Y. 1979) (harm to plaintiff's "good will built up over the

years" constitutes irreparable harm that is not "monetarily ascertainable"); accord Ecolab, 753 F.

Supp. at 1110 ("Loss of good will constitutes irreparable harm which cannot be compensated by

money damages."); Churchill, 668 F. Supp. at 214-15 (use and disclosure of an employer's

confidential customer information and the possibility of loss of customers through such usage

constitute irreparable harm); Stanley Tulchin, 186 A.D.2d at 185, 587 N.Y.S.2d at 763

("Misappropriation of STA's client lists threatened the type of irreparable injury warranting

injunctive relief."). In any event, RHI need not at this juncture demonstrate that Defendants have

in fact used the stolen information, only that there is a risk of inevitable disclosure. Estee Lauder

Cos., Inc. v. Batra, 430 F. Supp. 2d 158, 179 (S.D.N.Y. 2006).

Also, as noted above, Wojdyl acknowledged in writing that temporary and permanent

injunctive relief would be appropriate remedies against actual or even threatened breaches of his

restrictive covenants, particularly his duty to safeguard RHI's trade secrets. Such

acknowledgments have been relied upon in determining irreparable injury for purposes of

upholding a grant of injunctive relief. See Estee Lauder, 430 F. Supp. 2d at 174 (holding that

employees' concession that in the event of breach of post-employment obligations, employer is

22

entitled to injunctive relief, amounts to an admission of irreparable harm); North Atl.

Instruments, 188 F.3d at 49 (upholding grant of injunctive relief where defendant acknowledged

in his employment agreement that a breach of confidentiality clause would cause "irreparable

injury") (citing Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999)); see also Markovits

v. Venture Info Capital, Inc., 129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001).

 If the Defendants are permitted to continue their wrongful conduct, RHI will be faced

with the permanent and irretrievable loss of its confidential information and its goodwill, as well

as the interference with its hard-earned client and candidate relationships. It is exceeding

difficult, if not impossible, to predict RHI's loss if Defendants are permitted to exploit either the

relationships that RHI has formed with its clients and candidates or its confidential trade secret

information. If Defendants are allowed to proceed with their unlawful misconduct, the result for

them, however, is clear: Wojdyl and RHI's competitor, Execu/Search, may succeed in

undermining RHI's business relationships and goodwill. RHI's business will be substantially,

irreparably and incalculably harmed. Therefore, only an immediate injunction against the

Defendants will ensure that they will not cause any more irreparable damage to RHI's business.

## IV.   A BALANCE OF THE HARDSHIPS WEIGHS IN RHI'S FAVOR.

 In addition to RHI's strong showing of a likelihood of success on the merits and

irreparable harm, it is also evident that the balance of hardships weighs decidedly in RHI's favor.

RHI is not seeking to prevent Wojdyl from earning a livelihood. Rather, RHI is simply seeking

to prevent him from *unfairly* competing against it — i.e., by misappropriating and using its trade

secrets and confidential information, by operating or joining a competitor within a narrow

geographic range and time period, by soliciting RHI's clients and candidates, and by misusing

RHI's name and reputation, all in accordance with a restriction that it bargained for as part of a

negotiated contract. Natsource, 151 F. Supp. 2d at 469 (holding that plaintiff would be

irreparably harmed if it did not receive the benefit of the restriction it bargained for). RHI is asking the Court simply to enjoin Wojdyl from violating the Employment Agreement to which he agreed at the outset of his employment and his unmistakable common law obligations.

On the other hand, if the Court does not issue a temporary restraining order and preliminary injunction here, RHI faces losing the following: the confidentiality of its trade secrets and other proprietary information, the benefit of its bargain in Wojdyl's Employment Agreement, and its relationships with its longstanding clients and candidates. The balance of hardships, therefore, clearly weighs in favor of injunctive relief. It is beyond dispute that the balance of the equities favors RHI, where the use of its proprietary information and resulting diversion of business would cause it real harm. Furthermore, Defendants cannot demonstrate that RHI has acted tortiously against them or is otherwise without "clean hands." See DoubleClick, 1997 WL 731413, at *7.

"By contrast, equity does not favor the employee who seeks to breach his duties to his former employer." Id. (citing Kaufman v. IBM Corp., 97 A.D.2d 925, 926, 470 N.Y.S.2d 720, 722 (3d Dep't 1983)). Here, evidence already exists to support the finding that Wojdyl has joined a competing company in violation of his restrictive covenants, and Defendants (1) have disclosed and used RHI confidential and proprietary information; and (2) have solicited RHI's clients and candidates. As such, RHI respectfully requests that this Court should immediately issue a preliminary injunction to prevent further harm to RHI.

## V. INJUNCTIVE RELIEF SHOULD RUN FROM THE DATE OF THIS COURT'S ORDER.

RHI respectfully submits that the injunctive relief issued by the Court should run from the date of the Court's order. In this case, equity favors enjoining Wojdyl for a full twelve-month period beginning from the date of the Court's order. If the restrictive covenants are

merely enforced from the date of his resignation, Wojdyl will have wrongfully achieved time to unfairly compete, and would, in effect, be rewarded for his breaches.  See, e.g., Roanoke Eng'g Sales Co. v. Rosenbaum, 290 S.E.2d 882, 886-87 (Va. 1982).  In the past, New York courts, in the interests of equity, have extended the time period of a non-competition agreement in order to give one party an opportunity to regain the customers that it lost when the other party breached the agreement.  See, e.g., Levitt Corp. v. Levitt, 593 F.2d 463, 469 (2d Cir. 1979).[2]

## VI.    RHI SHOULD BE GRANTED EXPEDITED DISCOVERY.

While Federal Rule of Civil Procedure 34 generally provides that a party upon whom a document request is served must respond within thirty days, the rule specifically permits that "[a] shorter . . . time may be directed by the court."  Fed. R. Civ. P. 34(b).  In addition, Federal Rule of Civil Procedure 26 "provides very broad discovery and gives the trial court wide discretion to manage the process."  State of N.Y. v. U.S. Metals Ref. Co., 771 F.2d 796, 805 (3d Cir. 1985).

Courts have interpreted these provisions to permit expedited discovery when, as here, the movant shows:  (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.  See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd., No. 94 Civ. 5620 (JFK), 1994 WL 719696, at *3 (S.D.N.Y. Dec. 28, 1994) (citing cases) (Compendium Tab E).

Numerous courts in this and other circuits have recognized the need for and granted expedited discovery in advance of a preliminary injunction hearing.  See, e.g., Dial Info. Servs. Corp. v. Thornburgh, 938 F.2d 1535, 1539 (2d Cir. 1991), cert. denied, 502 U.S. 1072 (1992);

---

[2]    Note that the provisions regarding confidentiality and misuse of RHI's name do not have any time restrictions.

U.S. Naval Inst. v. Charter Commc'ns Inc., 875 F.2d 1044, 1046 (2d Cir. 1989); IKON Office

Solutions v. Leichtnam, No. 02-CV-0721E(SC), 2003 WL 251954, at *3 (W.D.N.Y. Jan. 3,

2003) (granting expedited discovery in aid of hearing on preliminary injunction) (Compendium

Tab F); Delphine Software Int'l, S.A.R.L. v. Electronic Arts, Inc., No. 99 Civ. 4454 (AGS), 1999

WL 627413, at *3 (S.D.N.Y. Aug. 18, 1999) (in misappropriation of trade secrets case, granting

motion for expedited discovery based upon finding that plaintiff "is entitled to substantial

discovery to enable it to proceed with a preliminary injunction hearing") (Compendium Tab G);

Advanced Portfolio, 1994 WL 719696, at *3 ("Expedited deposition discovery is made available

by Rule[] 30(a) of the Federal Rules of Civil Procedure [and] . . . is often available in cases

where preliminary relief is sought."); Educational Comm'n for Foreign Sch. Med. Graduates v.

Repik, No. Civ. A. 99-1381, 1999 WL 317052, at *3 (E.D. Pa. May 17, 1999) (in trade secret

misappropriation and copyright infringement case, since "[e]xpedited discovery in connection

with a preliminary injunction is appropriate," "[t]he court will permit the parties a reasonable

period of time to conduct discovery relevant to the motion for preliminary injunction, after which

a hearing will be scheduled if necessary") (internal citation omitted) (Compendium Tab H);

Ellsworth Assocs. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Expedited discovery

is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature

of injunctive proceedings.") (citation omitted); Onan Corp. v. United States, 476 F. Supp. 428,

434 (D. Minn. 1979) ("[t]he court grants plaintiff's motion for limited discovery to prepare for a

possible preliminary injunction motion").

  Expedited discovery is needed in this case for RHI to be able to provide a full evidentiary

case at the preliminary injunction hearing. At this stage in the proceedings, RHI knows that

Wojdyl has stolen electronic and hard copies of RHI confidential, proprietary and trade secret

information and disclosed such information to Defendant Execu/Search. RHI also has reason to believe that Defendants are continuing to solicit RHI's clients and candidates and to use the trade secrets and confidential information of RHI. RHI, does not however, know the full extent to which the Defendants are misusing its trade secrets and confidential information and name. There is no prejudice resulting to the Defendants if expedited discovery is granted

Furthermore, Defendants must be ordered to immediately preserve and not alter, and RHI must be permitted to inspect and image, all computers and other electronic devices, including, but not limited to, computers, hard disk drives, floppy disk drives, removable storage devices (e.g., thumb drives), CDs, DVDs, pda's, cell phones, blackberries and/or all other similar electronic storage devices belonging to, under the control of, accessible to, or operated by Wojdyl on which RHI information of any kind resides or may have resided so that RHI can understand the full extent of Defendants' misappropriation of, and whether Defendants have further disseminated, RHI's Trade Secrets. This includes preservation and inspection of Wojdyl's email accounts, including, but not limited to, his personal Hotmail account (dgwoj@hotmail.com), which Wojdyl transmitted documents containing RHI's Trade Secrets to, prior to his departure from RHI.

## CONCLUSION

For all the foregoing reasons, RHI respectfully requests that this Court issue a temporary restraining order, an order permitting discovery to proceed by RHI on an expedited basis, and a preliminary injunction.

Dated:   New York, New York
         May 15, 2007

                                        Respectfully submitted,

                                        SEYFARTH SHAW LLP

                                        By: _____
                                             Gary H. Glaser, Esq.
                                             James S. Yu, Esq.
                                        1270 Avenue of the America, Suite 2500
                                        New York, New York  10020-1801
                                        (212) 218-5500
                                        Email: gglaser@seyfarth.com
                                               jyu@seyfarth.com

                                        Attorneys for Plaintiff
                                        Robert Half International Inc.