UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT HALF INTERNATIONAL INC.,                    07-CV-3821 (RWS)

                Plaintiff,

        -against-

DAVID WOJDYL and THE EXECU/SEARCH
GROUP, INC.,

                Defendants.

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND CERTAIN EXPEDITED DISCOVERY AND TO VACATE TEMPORARY RESTRAINING ORDER

---

**LITTLER MENDELSON, P.C.**
**Attorneys for Defendants**
**885 Third Avenue, 16th Floor**
**New York, New York 10022**
**(212) 583-9600**

*Of Counsel:*
    A. Michael Weber, Esq.
    Gregory B. Reilly, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

SUMMARY OF THE RELEVANT FACTS ............................................................. 3

ARGUMENT .............................................................................................................. 10

RHI'S REQUEST FOR A PRELIMINARY ........................................................... 10

    A.    Standard for Preliminary Injunction .................................................. 10

        1.    RHI is Unlikely to Succeed on the Merits ............................ 11

               a.    RHI's Restrictive Covenants Are Overly Broad and Unenforceable ............................................................ 11

               b.    RHI Has No Protectible Interest Because Wojdyl Is Not a Unique Employee .................................................. 17

        2.    RHI Makes No Showing of Irreparable Harm ..................... 18

        3.    The Balance of the Hardships Weigh Heavily Against Defendants ........ 22

    B.    The Court Should Deny RHI's Request for Expedited Electronic Discovery ........................................................................ 23

    C.    The Court Vacate the Temporary Restraining Order ...................... 24

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*A. Esteban & Co., Inc. v. Metro. Transp. Auth.*, 02 Civ. 3615,2002 U.S. Dist. LEXIS 9353 (S.D.N.Y. 2002)................................................................................................................25

*Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985).............................................................11

*Am. Broad. Cos., Inc. v. Wolf,* 52 N.Y.2d 394, 403-04, 438 N.Y.S.2d 482, 486-87, 420 N.E.2d 363, 367-68 (1981) ..........................................................................................................13

*Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382 (2d Cir. 1982)..............................18

*BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 394, 690 N.Y.S.2d 854, 860-61, 712 N.E.2d 1220 (1999)...............................................................................................................................16

*Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42 (2d Cir. 1983)................11

*Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30 (2d Cir. 1991)..................................................19

*Calvin Klein Co. v. Farah Mfg. Co. Inc.,* 1985 U.S. Dist. LEXIS 13475 (S.D.N.Y. Nov. 26, 1985) ..............................................................................................................................19

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (1977) ..........................................................................................................12

*Estee Lauder Cos., Inc. v. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006)....................................11

Gladstone v. Waldron & Co., 98 Civ. 2038, 1998 U.S. Dist. LEXIS 4073 (S.D.N.Y. March 31, 1998) ..............................................................................................................................24

*Grundin v. Rossington*, 690 F. Supp. 200, 204 (S.D.N.Y. 1988)................................................11

*Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264 (2d Cir. 1986)..........................10

*Heavener v. Brenner*, 96 Civ. 2719, 1996 U.S. Dist. LEXIS 15146 (S.D.N.Y. 1996) ...............25

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir.1979) ..............................11

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366 (S.D.N.Y. 2003)....................................................................................................19

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990)...........................................18

*Kanan, Corbin, Schupak & Aronow, Inc. v. FD Int'l, Ltd.*, 8 Misc. 3d 412, 797 N.Y.S.2d 883 (N.Y. Sup. Ct. 2005)...................................................................................................16

*Karpinski v. Ingrasci,* 28 N.Y.2d 45, 51-52, 320 N.Y.S.2d 1, 6-7, 268 N.E.2d 751, 754-55 (1971) ................................................................................................................................ 16

*Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 1999 U.S. Dist. LEXIS 2353 (S.D.N.Y. March 2, 1999) ........................................................................................................................... 19

Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc., 986 F. Supp. 183 (S.D.N.Y. 1997) ............. 24

*Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277 (S.D.N.Y. 1998) ............... 19

*Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647 (S.D.N.Y. 2001) ......................... 13

*Medical Soc'y of the State of New York v. Toia*, 560 F.2d 535 (2d Cir.1977) ............................ 10

*Nina Ricci, S.A.R.L. v. Gemcraft Ltd.*, 612 F. Supp. 1520 (S.D.N.Y. July 11, 1985) ................. 19

*Pacific Elec. Wire & Cable Co. v. Set Top Intl, Inc.*, 03 Civ. 9623,2003 U.S. Dist. LEXIS 23270 (S.D.N.Y. 2003) ................................................................................................................. 24

Park West Radiology v. Carecore Nat'l LLC, 240 F.R.D. 109 (S.D.N.Y. 2007) ....................... 24

*Purchasing Assocs., Inc. v. Weitz*, 13 N.Y.2d 267, 246 N.Y.S. 2d 600 (1963) ........................... 17

*Purchasing Assocs., Inc. v. Weitz,* 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963) .. 13

*Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976) ................................................................................................................................. 12

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) ......................................... 18

*Robert Half Int'l, Inc. v. Le-Compte,* Case No. EDCV 07-201 VAP (C. Ca. Apr. 5, 2007) .. 14, 21

*Robert Half Int'l, Inc. v. TMP Worldwide Inc.,* Index No. 604050/02 (N.Y. Sup. Ct. June 18, 2003) ................................................................................................................................. 20

*Robert Half Int'l, Inc. v. TMP Worldwide Inc.,* Index No. 604050/02 (NY Sup. Ct. June 18, 2003) ................................................................................................................................. 14

*Savannah Bank N.A. v. Sav. Bank of the Finger Lakes*, 261 A.D.2d 917, 691 N.Y.S.2d 227 (4th Dep't 1999) ....................................................................................................................... 18

*Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805, 780 N.Y.S.2d 675 (3d Dep't 2004) ............... 16

Special Situations Cayman Fund L.P. v. Dot Com Entm't Group, 03-CV-0811E(F), 2003 U.S. Dist. LEXIS 25083 (W.D.N.Y. Dec. 5, 2003) ...................................................................... 24

*USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488 (S.D.N.Y. 1989) ............................... 22

This memorandum of law is submitted on behalf of Defendants, David Wojdyl ("Wojdyl") and The Execu/Search Group, Inc. ("Execu/Search"), (collectively "Defendants") in opposition to the motion of Plaintiff Robert Half International, Inc. ("RHI") for a preliminary injunction and certain expedited discovery and to vacate the temporary restraining order.[1]

## PRELIMINARY STATEMENT

Commencing January 30, 2006, Wojdyl worked at RHI as a permanent placement recruiter in RHI's fledgling financial services group (FSG). He resigned approximately seven weeks ago on March 26, 2007 to join Execu/Search as a permanent placement recruiter specializing in the financial services industry. Nearly a month after he resigned from RHI, on April 23, 2007, RHI contacted Wojdyl and accused him of misappropriating RHI's alleged confidential and proprietary information and working for a competitor in violation of his restrictive covenant agreement with RHI (the "Employment Agreement"). Regardless, it was not until three weeks later, on May 16, 2007, that RHI took action. On that date, RHI provided Execu/Search with twenty (20) minutes notice that it was filing papers in federal court for a temporary restraining order ("TRO"), preliminary injunction and expedited discovery. On May 17, 2007, the Court granted RHI a TRO broadly prohibiting both Wojdyl and Execu/Search from having any contact with RHI's clients or job candidates and prohibiting Wojdyl from working at Execu/Search or any other job placement firm within 50 miles of RHI's Manhattan offices.

As shown below, RHI obtained this extraordinary relief by misleading the Court, either by omission or design, respecting the applicable facts and law. Despite RHI's multiple

---

[1]     Defendants also submit the accompanying Affidavit of David Wojdyl and Declaration of Edward Fleischman sworn to on May 21, 2007.

"information and belief" allegations, Execu/Search and Wojdyl neither have any confidential or proprietary information from RHI nor have they exploited any such information. *See* Complaint, ¶¶ 2, 39, 40, 43, 46, 51, 85, 86. Respecting the law, RHI cited dozens of cases but misled the Court by its failure to cite ***any*** cases which construed the ***exact*** restrictive covenants RHI seeks to enforce here. It is clear that RHI misled the Court by not citing these most relevant cases because courts from around the country have found the restrictive covenants in RHI's Employment Agreement to be overly broad and unenforceable.

RHI has not made a factual showing that the actual information Wojdyl took was even protectable. Moreover, injunctive relief as against Execu/Search is unwarranted because Execu/Search advised Wojdyl orally and in writing on several occasions both before and during his employment that he was prohibited from taking or utilizing any of RHI's confidential and proprietary information, and Execu/Search neither knew that he took anything from RHI nor did Execu/Search profit by Wojdyl's error. As far as Execu/Search knew, Wojdyl had complied with its directives.

As explained below, RHI cannot show a likelihood of success on the merits, irreparable harm or that the equities tip in its favor. Considering RHI's two-month delay in taking action and its failure (and inability) to allege any express monetary damages, the Court should deny RHI's request for a preliminary injunction and expedited computer forensic discovery and, in the interim, vacate the existing TRO.[2]

---

[2] Defendants are concurrently filing a motion to dismiss pursuant to Rule 12(b)(1) for inability to meet the jurisdictional amount for diversity jurisdiction because of RHI's inability to show damages or prospective damages.

## SUMMARY OF THE RELEVANT FACTS[3]

Overview of RHI and Its Hiring of Wojdyl as a Recruiter for the Fledgling RHI Financial Services Group (FSG)

RHI is an international corporation with approximately 400 offices, and last year it had four (4) billion dollars in revenue. Regardless of its success (its web page asserts that it is the largest placement firm in the world), after September 11, 2001, its permanent placement business for financial service industry personnel in Manhattan precipitously declined. While RHI recruiters at times placed financial services job candidates on a permanent basis, it did not have a department solely dedicated to such placements in Manhattan.

In or about January 2006, RHI apparently decided to compete more aggressively for this business. To this end, it established its FSG in Manhattan, which was to be dedicated to making permanent placements in the financial services sector.[4] Coincidentally, Wojdyl was looking for a job at this time. He was 33 years old, unemployed and living in a friend's apartment in Manhattan (he now rents an apartment in Weehawken, New Jersey). Wojdyl had worked as a securities trader for eight years. He had been laid off eight months previously, and he had been unsuccessful in obtaining a new position as a securities trader.

Wojdyl's decision to join RHI was his introduction to the permanent placement business. Although he had no recruiting experience, RHI presumably hired him because of his prior experience (and potential contacts) as a securities trader. RHI provided Wojdyl a more impressive job title, Recruiting Manager, than his lack of recruiting experience would suggest

---

[3] The facts below are on the basis of the pleadings to date and the accompanying Affidavit of David Wojdyl and Declaration of Edward Fleischman.

[4] "Permanent placements" are when a job candidate accepts employment with an employer with the expectation of continued employment. In contrast, "temporary placements" constitute placement of a job candidate with a customer for a temporary assignment. RHI and Execu/Search are in both the permanent and temporary placement business. However, the present dispute appropriately relates only to the permanent placement business since that is the only type of recruiting Wojdyl conducted at either RHI or Execu/Search.

was appropriate. Although labeled a "manager," Wojdyl did not manage any RHI employees and none reported to him.

RHI's Keith Feinberg ("Feinberg"), the Director of Permanent Placement, convinced Wojdyl to join RHI by telling him that RHI would provide him with training and adequate support so that he could succeed in this new endeavor. Feinberg also told Wojdyl that RHI would be hiring a manager to run the new department. In fact, two days after Wojdyl joined RHI, John Pierson ("Pierson"), joined RHI as Division Director for the FSG in Manhattan. RHI also had hired recruiters Rocco Tufo (hired fall 2005) and David Diller (hired approximately June 2006) so that by the Summer of 2006, RHI's new FSG department had four employees.

All recruiters at RHI including Wojdyl were, upon information and belief, required to execute the Employment Agreement (attached as Exhibit A to RHI's Complaint), which contained various restrictions on the recruiter's post-employment activities. Wojdyl was presented with this seven and one-half page single spaced Employment Agreement on his first day of work for RHI. *See* Complaint, ¶ 30. He neither negotiated the Employment Agreement nor was in a position to do so.

As Wojdyl's employment with RHI progressed, he discovered the training and support that was promised (and that was one of the reasons Wojdyl joined RHI) never substantially materialized. While Feinberg had told Wojdyl that he anticipated having twelve permanent placement recruiters in the FSG department, at its largest, RHI had five permanent placement recruiters. However, two recruiters quickly resigned after they were hired - one resigned after one week of employment and the other after two weeks.

Pierson's employment with RHI also was short-lived.  Pierson left RHI sometime on or about July 2006.  Thereafter, he was not replaced so Wojdyl's FSG department was without a direct manager for the eight (8) months prior to Wojdyl's eventual resignation.

Of the three financial services permanent placement recruiters who remained with RHI, Wojdyl was the worst performer.  Pursuant to the Employment Agreement, Wojdyl was paid a monthly draw of $4,000.  RHI paid Wojdyl this $4,000 per month or 30% of all revenue he generated, whichever was greater.  However, during Wojdyl's entire employment with RHI, his commissions never exceeded his draw.

In the months proceeding Wojdyl's resignation, he repeatedly failed to meet RHI's expectations.  In December 2006, Feinberg advised Wojdyl that he needed to make significant improvements, but Wojdyl failed to make a single placement in January 2007.  It was not for lack of trying.  Throughout his RHI employment, Wojdyl often stayed in the office late or came in on weekends, and he was conscientious in following up on job orders and attempting to make placements.  Regardless of these efforts, Wojdyl failed to improve and throughout the early months of 2007, Feinberg repeatedly warned Wojdyl about his poor production.  Not surprisingly, Wojdyl was very concerned that RHI might terminate his employment.

Wojdyl's Resignation and Hiring by Execu/Search

By March 2007, Wojdyl was motivated to leave RHI.  He was seeking work with a permanent placement firm that, unlike RHI, had a larger presence in the financial services sector and would provide him with the training and resources he needed to succeed as a recruiter.

On or about March 19, 2007, Wojdyl met with representatives of Execu/Search.  In contrast to RHI, Execu/Search was a regional placement firm, conducting business principally in New York, New Jersey and Connecticut.  It also differed from RHI's fledging FSG department

because it had a well-established 13 year old financial services industry recruiting division and, as of May 2007, had seven recruiters dedicated to this function.

Wojdyl was interviewed by Edward Fleischman, Gray Grossman and Mitchell Peskin all of whom are Execu/Search shareholders. Each of these Execu/Search shareholders advised Wojdyl that should he be hired, he was not to take any information, documents or other property whatsoever from RHI. Wojdyl was essentially told he should arrive at Execu/Search with "an empty briefcase." Execu/Search was and is a successful leader in the financial services sector of the permanent placement industry, and it did not need any information from RHI because it had its own databases of 19,000 financial services job candidates and regularly has 200 or more pending financial services industry job orders from clients. Indeed, the risks to Execu/Search of Wojdyl misappropriating RHI's information far outweighed the unlikely benefits Execu/Search would receive by having any information from RHI, a company with a new and failing FSG group and no recognizable presence in the industry. Execu/Search has and had no interest in RHI's alleged confidential information because it had succeeded the past 20 years by competing fairly. Indeed, prior to RHI's lawsuit, Execu/Search had never before been sued for any claims arising from an alleged breach of a restrictive covenant agreement. Moreover, at present, there are fewer available qualified job candidates in the financial services sector than available jobs. It was, in part, for this reason that Execu/Search hired Wodjyl – not to exploit RHI's alleged confidential information – but instead to comb through Execu/Search's 19,000 candidate database and make contacts with candidates, which candidates Execu/Search could then match with the clients' job orders.

Wojdyl received and accepted a job offer from Execu/Search on Friday, March 23, 2007. Rather than immediately starting work as recruiter, Execu/Search put Wojdyl in its two week

training course to educate him on how to succeed. Execu/Search knew that Wojdyl had little recruiting experience and what experience he obtained from RHI was probably not useful. Execu/Search viewed the hiring of Wojdyl not as an opportunity to obtain RHI's alleged confidential and proprietary information (which it had no need for), but instead as an opportunity to hire someone with financial services industry knowledge, and to train him to be a successful financial services recruiter. Accordingly, in addition to the warnings Execu/Search provided during the interview process, Execu/Search required Wojdyl, as a condition of Execu/Search employment, to execute a March 23, 2007 offer letter which expressly provided that he was prohibited from misappropriating or exploiting his former employer's confidential and proprietary information. *See* Fleischman Decl., Ex. A.

RHI Asserts Wojdyl Misappropriated Its Property But Takes No Action

Regardless of Execu/Search's warnings and the terms of its offer letter, Wojdyl erred by taking some of RHI's property in advance of his resignation. Wojdyl no longer has any of RHI's alleged confidential and proprietary information. Likewise, Execu/Search does not have and never received any confidential or proprietary information of RHI nor has it attempted to exploit any such information.

As noted, Wojdyl resigned from RHI nearly two months ago on March 26, 2007. Four weeks ago, on April 23, 2007, Wojdyl received a telephone call from Feinberg. Feinberg stated that he knew Wojdyl was working as a recruiter, that he knew Wojdyl had taken documents from RHI prior to his resignation, and that RHI's lawyers were "licking their chops" to aggressively pursue a lawsuit.

Regardless, even though RHI ***now*** alleges that it is at imminent risk of irreparable harm and it provided Execu/Search with only 20 minutes notice that it was seeking a TRO, ***another***

**_three weeks passed_** before RHI took any action.  Under the circumstances, RHI cannot credibly claim that it faces the impending likelihood of suffering irreparable harm when it took no action. Moreover, RHI cannot show irreparable harm or potential irreparable harm because Wojdyl neither made a single job placement nor did he assist any Execu/Search employee in doing so in the seven weeks following his RHI resignation.

<u>RHI Misrepresents that Wojdyl Misappropriated Confidential and Proprietary Information</u>

In paragraphs 10 and 11 of the Complaint, RHI claims that its relationships with "its clients" are based on their confidence in the quality of its services and recognition of its name. This is false.  It is exceedingly rare that clients in this industry have any exclusive relationship or loyalty with a single placement firm.  Instead, the clients usually use several different placement firms in their attempts to fulfill their hiring needs with qualified personnel.  In particular, for the financial services sector, there is little (if any) client loyalty given the fact that there are more jobs available than qualified applicants to fill the positions.  Moreover, it is the clients, not the permanent placement firms, that establish the placement fees they are willing to pay.  In other words, the clients "hold all the cards," and pricing information is readily available to all placement companies who simply contact the client.

Moreover, the vast majority of time the clients in this industry do not provide job orders (requests that open positions be filled) to simply one permanent placement company. Instead, the clients generally post job orders with many permanent placement firms in their desire to fill their open positions, and they usually post their open positions (including necessary education, experience and qualifications) on their company internet sites or commercial websites (such as Monster.com, Careerbuilder.com, etc.) such that anyone in the public could easily obtain the very information RHI claims is confidential and proprietary.

8

Similarly, job candidates (and detailed information respecting these candidates) is not the exclusive "property" of RHI or any permanent placement firm.  Job candidates often rely on the services of several placement firms and they often independently pursue job opportunities by posting their resumes on commercial internet job sites or responding to newspaper advertisements.[5]

### RHI Will Not Suffer Irreparable Harm in the Absence of An Injunction Whereas the Injunctive Relief Requested by RHI Will Harm the Public, Execu/Search and Wojdyl

The Complaint suggests that RHI will suffer irreparable harm in the absence of an injunction. *See* Complaint, ¶¶52-55.  The fact, however, that RHI waited eight weeks before taking any action conclusively shows that RHI is not concerned about alleged harm Defendants might cause, but it is instead prosecuting this action in an attempt to obtain an unfair competitive advantage against Execu/Search and Wojdyl.

Other facts bear out this conclusion.  As noted, RHI is a four billion dollar international corporation.  RHI is deluding itself if it thinks Wojdyl, an inexperienced recruiter, could cause it irreparable harm where, as here, Wojdyl was at most a marginal $48,000/year performer when he was with RHI and, in the seven weeks following his resignation, he failed to make a single placement.  Wojdyl has been with Execu/Search for nearly two months – RHI, however, fails to cite any decrease in revenue attributable to Wojdyl nor can it.

Rather than RHI, it is the public, Execu/Search and Wojdyl who will suffer irreparable harm from a preliminary injunction.  The public will be harmed because the broad injunctive relief sought by RHI will prevent clients and candidates from using Execu/Search's services.

---

[5] It is apparent RHI submitted a "canned brief" to the Court because it asserts it has some "inside track" respecting candidates because it knows candidates' test scores and evaluations by various employers.  See Complaint, ¶ 23. Such information, however, is not applicable to the permanent placement business – only the temporary placement business, which is not the industry in which Wojdyl worked either for RHI or Execu/Search.

9

These are the same clients and candidates that RHI describes as "its own," but which in reality are (and should be) available to all placement firms to "grease the wheels of the economy" by uniting clients with candidates who can meet each other's needs.  Likewise, Execu/Search will be harmed because, without any proof by RHI of wrongdoing, it would be prohibited from making job placements for clients and candidates, with which it had independent and pre-existing relationships prior to its hiring of Wojdyl.

Lastly, Wojdyl will suffer tremendously.  As a result of the TRO, Wojdyl is now prevented from working in his chosen profession anywhere in the vicinity of where he lives.  The timing could not have been worse.  While he might have previously been able to fall-back to his prior career as a securities trader, his securities trader licenses (Series 7, 24 and 63) expire at the end of this month and cannot be renewed unless he is employed with a registered broker-dealer employer.  It is highly unlikely that he can find another job in the next eight (8) days as a securities trader, which means that should the Court issue the preliminary injunction requested by RHI, Wojdyl will be in the unenviable position of retaking all his licensing exams again (which will take approximately six months, assuming he passes) to restart his former career.

## ARGUMENT

### RHI'S REQUEST FOR A PRELIMINARY INJUNCTION MUST BE DENIED

A.    **Standard for Preliminary Injunction**

A preliminary injunction is considered a "drastic" and "extraordinary" remedy. *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"); *Med. Soc'y of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977) (preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted").

To obtain a preliminary injunction in this circuit, the moving party has the burden of demonstrating " '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)); *see also Estee Lauder Cos., Inc. v. Batra*, 430 F. Supp. 2d 158, 169-70 (S.D.N.Y. 2006) (Sweet, J.); *Grundin v. Rossington*, 690 F. Supp. 200, 204 (S.D.N.Y. 1988) (Sweet, J.).

Applying this standard, it is clear that Plaintiff has failed to meet its burden of proof and thus has no right to the preliminary injunctive relief requested.

1.    **RHI is Unlikely to Succeed on the Merits**

To satisfy its burden of showing likelihood of success on the merits, the movant must show that the probability of the movant prevailing is better than fifty percent. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). A determination as to whether plaintiff is likely to succeed on the merits in this case requires an analysis of the restrictive covenant agreement at issue.

a.    RHI's Restrictive Covenants Are Overly Broad and Unenforceable

RHI seeks to enforce restrictive covenants that are overly broad restrictions upon Wojdyl's right to earn a livelihood after the termination of his employment for any reason whatsoever, with or without cause. As explained below, these overly broad covenants should not be enforced. The so-called Employment Agreement is a seven and one-half page single-spaced document that was extracted from Wojdyl by RHI as a condition of employment the day he commenced work at RHI. It is totally one-sided in favor of RHI. Not one iota of the Agreement

was negotiated between the parties.  Instead, Wojdyl (and, upon information and belief, all other RHI recruiters) had to sign the document if they wished to work at RHI regardless of the lack of any reasonable business necessity for the extremely broad covenants.  RHI has not argued, let alone demonstrated, that its actions do not amount to blatant anti-competitive conduct.   In contrast, Execu/Search does not require its recruiters to enter a restrictive covenant preventing post-termination competition.

As the New York Court of Appeals explained in *Reed, Roberts Assocs.*, "our economy is premised on the competition engendered by the uninhibited flow of services, talent and ideas.  Therefore, no restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment." *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 680, 353 N.E.2d 590, 593 (1976).  To be enforceable, a non-compete covenant must be "reasonable in time and area, *necessary to protect the employer's legitimate interests*, not harmful to the general public and not unreasonably burdensome to the employee." *Id.*, 40 N.Y.2d at 307, 386 N.Y.S.2d at 679, 353 N.E.2d at 593 (emphasis added).

The New York Court of Appeals has held that restrictive covenants that tend to prevent an employee from pursuing a similar vocation after termination of employment will be enforced "only if reasonably limited temporally and geographically, and then only to the extent necessary to protect the employer from unfair competition which stems from the employee's *use or disclosure* of trade secrets or confidential customer lists." *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006, 369 N.E.2d 4, 6 (1977) (emphasis added).

Underlying this approach is the general public policy that favors robust and uninhibited competition, and sanctions against the loss of a person's livelihood. *Am. Broad. Cos., Inc. v. Wolf,* 52 N.Y.2d 394, 403-04, 438 N.Y.S.2d 482, 486-87, 420 N.E.2d 363, 367-68 (1981) ("once the term of an employment agreement has expired, the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition"); *see also Columbia Ribbon & Carbon Mfg. Co.*, 42 N.Y.2d at 499, 398 N.Y.S.2d at 1006, 369 N.E.2d at 6 (public policy "militate[s] against sanctioning the loss of a man's livelihood"); *Purchasing Assocs., Inc. v. Weitz,* 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 603, 196 N.E.2d 245, 247 (1963) ("Since there are powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood, the courts have generally displayed a much stricter standard with respect to covenants of this type.").

It is abundantly clear that RHI's requested preliminary injunction, which would prohibit Wojdyl from working in his chosen profession, is overly broad and unenforceable under New York law. One would only need to look at the cases cited by RHI in which courts granted such preliminary injunctions to be able to readily distinguish those circumstances from the instant case.

Thus, RHI cites this Court's decisions in *Estee Lauder Cos.,* 430 F. Supp. 2d 158 (Sweet, J.) and *Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647 (S.D.N.Y. 2001) (Sweet, J.), which resulted in preliminary injunctions being entered prohibiting the defendant former employee from continuing to work in their former professions. In *Estee Lauder Cos.*, however, the former employee held an extremely responsible upper management executive position (Global General Branch Manager), received a $100,000 signing bonus as consideration for executing the non-compete and was paid his regular salary ("garden leave") during the post-

termination period of the non-compete.  It was clear that in working for a competitor this upper-level executive would inevitably disclose his former employer's trade secrets as he was privy to high-level management meetings respecting the company's strategic direction and products. Likewise, RHI cites this Court's decision in *Markovits*.  There, this Court granted a preliminary injunction prohibiting a high level executive from competing for two years.  Unlike here, however, the plaintiff-employer provided "garden leave" as consideration ($100,000 in salary per year plus health benefits).

Plaintiff misleadingly cite opinions such as the above, but hides, either by omission or design, the most meaningful cases – those cases in which courts have actually construed RHI's restrictive covenant agreement.  In those cases, courts around the country have found RHI's Employment Agreement overly broad and unenforceable.  Thus, in *Robert Half Int'l, Inc. v. TMP Worldwide Inc.,* Index No. 604050/02 (NY Sup. Ct. June 18, 2003),[6] the New York Supreme Court refused to grant a preliminary injunction to RHI prohibiting former employees from working and competing in the permanent placement industry even though there was evidence of misappropriation.  Similarly, RHI omits *Robert Half Int'l, Inc. v. Le-Compte,* Case No. EDCV 07-201 VAP (C. Ca. Apr. 5, 2007) in which a court again refused RHI's request to enter a preliminary injunction.  In that case, RHI attempted to prohibit (pursuant to a black letter reading of the same Employment Agreement) two former employees from working as recruiters. The court denied RHI's request for a preliminary injunction finding, particularly, that "the balance of hardships did not tip sharply in RHI's favor, largely because of the broad sweep of RHI's proposed order" which would have created a blanket prohibition on RHI's former employees from working in their chosen profession near their homes.

---

[6]      Unpublished opinions are attached to the appendix of this memorandum.

The same result holds true in this case. The Employment Agreement's restrictive covenants are overly broad and unenforceable:

- The Agreement prohibits Wojdyl from working for any "Competitor," which is defined as "any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies." *See* Complaint, Ex. A, ¶¶7, 9. As noted, however, Wojdyl cannot be prohibited from working or even competing.

- The Agreement is not tailored to competitive risks presented by Wojdyl. Specifically, while some parts of the Agreement might be enforceable depending upon the employee, here they are not so as applied to Wojdyl. Nevertheless, RHI apparently has all its recruiters sign the same agreement. Wojdyl was and is a neophyte to the permanent placement business, was not a success during his RHI employment, and he worked only in a single sector, financial services. RHI's "cookie cutter" Agreement, however, applies to all recruiters regardless of their experience, the business sector(s) whether they conducted their recruiting or whether they were recruiting for temporary placements (which Wojdyl was not) or permanent placements. Accordingly, the non-competition restriction is overly broad and unenforceable.

- The Agreement prohibits Wojdyl from soliciting RHI "customers" (which is broadly defined in paragraph 7 of the Employment Agreement to encompass both RHI's clients and job candidates) with whom Wojdyl had no contact during his RHI employment; regardless of whether: (a) these customers are pre-existing customers of Execu/Search; (b) these customers and/or candidates are in the financial services sector to which Wojdyl was assigned during his 15 month tenure with RHI; (c) the customers and candidates are from RHI's New York offices or one of its other 398 other offices around the world; or (d) the customers and candidates are still customers and candidates of RHI or when they ceased to be RHI customers or candidates.

Recognizing that the above overly broad requirements could run afoul of various state laws (and certainly New York law), the Agreement specifically provides a "carve out" that the non-compete section shall not apply in "any state in which such provisions are not enforceable under applicable State law." *See* Complaint, Ex. A, ¶9.

Considering New York's jurisprudence respecting non-competition covenants is so contrary to the terms of the Agreement, this Court can and should hold the Agreement's non-

competition and non-solicitation provisions unenforceable not only under New York law, but also pursuant to Agreement's own carve out provision.

Thus, the New York Court of Appeals made clear in *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 394, 690 N.Y.S.2d 854, 860-61, 712 N.E.2d 1220 (1999), that restrictive covenants, like RHI's, will be rejected as overly broad and not cured by the court if the employer is overreaching, coercively uses its dominant bargaining power or is otherwise engaged in anti-competitive conduct. *See also Karpinski v. Ingrasci*, 28 N.Y.2d 45, 51-52, 320 N.Y.S.2d 1, 6-7, 268 N.E.2d 751, 754-55 (1971); *Scott, Stackrow & Co. v. Skavina*, 9 A.D.3d 805, 806, 780 N.Y.S.2d 675, 676 (3d Dep't 2004). Partial enforcement of such an overly broad agreement would be proper only where the employer established the absence of anti-competitive conduct on its part. *BDO Seidman*, 93 N.Y.2d at 394; *Skavina*, 9 A.D.3d at 807 (holding that former employer was not entitled to partial enforcement of restrictive covenant, barring employee from soliciting or performing work for any client of employer, in employment agreement that former employee was required to sign upon hire); *Kanan, Corbin, Schupak & Aronow, Inc. v. FD Int'l, Ltd.*, 8 Misc. 3d 412, 415, 797 N.Y.S.2d 883, 885-86 (N.Y. Sup. Ct. 2005) (applying *Skavina* holding to similar facts). Partial enforcement is also inappropriate in this case, since it is clear that RHI's motivations are purely anti-competitive because it seeks by enforcement of its overly broad restrictive covenants to not only deprive Wojdyl of employment, but to create a windfall by taking Execu/Search out of competition for clients and candidates for which neither RHI nor any placement firm has exclusive business relationships.

The two corporate parties in this action are employment placement agencies whose customers can be any entities in the financial services industry that employ people. The customers are openly engaged in business in advertised locations and their names and addresses

may readily be found by those engaged in the trade.  Moreover, the identity of the employee of

any potential customer, who is in charge of hiring permanent help, can be readily ascertained by

a telephone call to the human resources department.  Alternatively, many of the clients post their

available positions (and the qualifications, experience and other criteria necessary to fill these

positions) on their own internet sites or on commercial job sites such as Monster.com and

Careerbuilder.com, which sites can be viewed by any and all placement recruiters or the public

in general.  Similarly, the candidates post their resumes and other information on the same

commercial websites and often use the services of several different placement firms during their

job searches.  In other words, while RHI would like the Court to believe that Wojdyl and/or

Execu/Search could possibly steal "its clients" and/or "its candidates," that is simply not the

case.  The clients and candidates do not "belong" to anyone – they are available to the public and

to those permanent placement firms that look.

　　　Considering the above facts and law, RHI's restrictive covenants cannot be enforced and,

therefore, RHI cannot succeed on the merits.  Accordingly, the Court should deny RHI's request

for a preliminary injunction.[7]

    b.  <u>RHI Has No Protectible Interest Because Wojdyl Is Not a Unique</u>
       <u>Employee</u>

　　　RHI also cannot claim it is entitled to enforcement of its restrictive covenants because

Wojdyl is not unique within the meaning of the law.  The test for uniqueness in this context is set

forth in the leading New York Court of Appeals case of *Purchasing Assocs., Inc. v. Weitz*, .

There Judge Fuld made clear how high is the bar for injunctive relief:

> [T]he plaintiff may prevail only if the defendant's services are
> 'unique' or 'extraordinary.'  More must, of course, be shown to

---

[7]  Since RHI cannot succeed on its breach of contract claim to enforce the restrictive covenants, it is likewise unlikely to succeed respecting its other legal claims.

> establish such a quality than that the employee excels at his work or that his performance is of high value to his employer. It must also appear that his services are of such character as to make his replacement impossible or that the loss of such services would cause the employer irreparable injury. (citations omitted).

13 N.Y.2d 267, 272-73, 246 N.Y.S. 2d 600, 605 (1963) (citations omitted). *Accord, Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 390 n.9 (2d Cir. 1982); *Savannah Bank N.A. v. Sav. Bank of the Finger Lakes*, 261 A.D.2d 917, 691 N.Y.S.2d 227, 229 (4th Dep't 1999) ("Restrictive covenants will be enforced only so far as necessary to protect trade secrets or in the cases where the employee's services are so unique or extraordinary as to be irreplaceable." (citations omitted)).

Under these authorities, it is clear that Wojdyl is not unique and irreplaceable. He has little experience in the recruiting business and, therefore, poses no real threat to RHI. RHI could readily replace his services. Accordingly, RHI cannot show a likelihood of success on the merits, and, therefore, the Court should deny a preliminary injunction.

## 2. <u>RHI Makes No Showing of Irreparable Harm</u>

The Second Circuit has instructed that a showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell*, 719 F.2d at 45 (*quoting* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 431 (1973)); *see also Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *Markovits*, 129 F. Supp. 2d at 655 (Sweet, J.).

The mere possibility of harm is not sufficient – the harm must be imminent and the movant must show "that it is likely to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *Borey v. Nat'l Union Fire Ins.*

*Co.*, 934 F.2d 30, 34 (2d Cir. 1991) (mere possibility of irreparable harm is insufficient-the harm must be likely and imminent).

RHI has not demonstrated an imminent and likely risk of disclosure warranting a preliminary injunction. RHI's delay in seeking relief makes it abundantly clear that it is not at any real risk of irreparable harm and it knows it. Thus, as stated, Wojdyl resigned to join Execu/Search over seven weeks ago, and RHI knew at least four weeks ago that Wojdyl was working with a competitor and had taken RHI's alleged confidential and proprietary information. Nevertheless, RHI did nothing. Under the circumstances, RHI cannot now allege that it is at risk of imminent irreparable harm – if this was truly the case, RHI would and could have immediately sought injunctive relief. *See, e.g., Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 1999 U.S. Dist. LEXIS 2353, at *12 (S.D.N.Y. March 2, 1999) (denying injunction in part because of the seven week delay in filing for it); *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 281 (S.D.N.Y. 1998) (denying preliminary injunction in part because there was an unexplained delay of five weeks in bringing suit and three months in seeking preliminary injunction); *Calvin Klein Co. v. Farah Mfg. Co. Inc.*, 1985 U.S. Dist. LEXIS 13475, at *14 (S.D.N.Y. Nov. 26, 1985) (denying the preliminary injunction in part because of the delay in filing the complaint and the seven week delay thereafter in filing for the injunction); *Nina Ricci, S.A.R.L. v. Gemcraft Ltd.*, 612 F. Supp. 1520, 1530 (S.D.N.Y. July 11, 1985) (denying preliminary injunction in part because of the six week delay in filing for relief from the court); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 392 (S.D.N.Y. 2003) (denying preliminary injunction in part because of the six week delay between filing the complaint and requesting the injunction).

Moreover, Execu/Search hardly needs RHI's financial services information (and expressly advised Wojdyl on several occasions that he should not take, use or rely on such information). At most, RHI has alleged that Wojdyl contacted two unidentified RHI clients and/or a single candidate in the eight weeks since his departure. Complaint, ¶¶ 48 and 49. RHI does not provide any affidavits from "its clients" respecting what discussions occurred or how its alleged confidential and proprietary information was somehow exploited when Wojdyl made these contacts. Likewise, RHI has not and cannot assert that it lost any business in the past two months attributable to Defendants' actions. Without more, it has failed to demonstrate an imminent risk of harm when Wojdyl (or anyone else) could have made the same contacts on the basis of publicly available information.

The fact is RHI exaggerates the harm, if any, it may suffer in the absence of injunctive relief. In this respect, notably absent from RHI's moving papers are court decisions construing RHI's requests for injunctive relief in similar circumstances. Thus, for example, New York Supreme Court Judge Charles E. Ramos, construed the same non-compete restriction which "prohibited the employee, for twelve months after termination, from managing, operating, controlling, being employed by or being connected to any competing 'executive recruiting firm, employment agency or temporary personnel service business in any part of the area encompassed within a radius of fifty (50) miles from any office of the RHI Companies in which Employee worked.'" *Robert Half Int'l, Inc. v. TMP Worldwide Inc.,* Index No. 604050/02 (N.Y. Sup. Ct. June 18, 2003). In that case, as here, RHI contended that defendants had valuable confidential and trade secret information (including e-mails with client information), which required protection pursuant to RHI's Employment Agreement. The court, however, found that "it was far from clear what [RHI] information, if any, qualifies as trade secrets." *Id.* at 9-10. The court

went further in noting that the "mere risk of unfair competition does not warrant the granting of a preliminary injunction. Such an application should await discovered facts." The court refused to issue a preliminary injunction against the individual defendants and their new employer stating:

> RHI has failed to show that it has suffered any damages or that it is likely to be harmed in any way if an injunction is not issued. Mere conclusory statements that the harm is imminent are not enough to satisfy the standard. * * * Further, an injunction would be an improper remedy where no more than money damages is at issue. Irreparable injury has been defined as damages that cannot be adequately compensated by money or damages that cannot be sufficiently measured. (cites omitted). Even if RHI had established that it had lost clients to TMP due to misappropriation of its confidential information, the value of that loss could be determined and money damages awarded. In that case, an injunction would be the wrong remedy.

*Id.* at 14-15. Similarly, RHI omits *Robert Half Int'l, Inc. v. Le-Compte,* Case No. EDCV 07-201 VAP (C. Ca. Apr. 5, 2007) in which the court could not find irreparable harm. In that case, RHI attempted to prohibit (pursuant to a black letter reading of the same Employment Agreement) two former employees from working as recruiters. The court denied RHI's request for a preliminary injunction finding, particularly, that "the balance of hardships did not tip sharply in RHI's favor, largely because of the broad sweep of RHI's proposed order." As here, RHI contended that it faced harm consisting "of lost customer relationships and lost good will resulting from Defendants' unfair competition." Again, however, the court agreed that there was no evidence of real or imminent injury to RHI's goodwill or customer relationships and that RHI had an adequate remedy at law – money damages. *Id.* at 4-5. Indeed, unlike the case at bar in which RHI has merely alleged Wojdyl contacted two clients and one candidate, in *Le-Compte* RHI submitted a chart showing defendants had solicited 17 "RHI clients." *Id.* at 8. The court,

however, was not persuaded. The court considered these to be contacts, rather than solicitations, "which are basic to any person's right to engage in fair competition." *Id.*[8]

For all of the above reasons, RHI cannot show it will likely suffer irreparable harm in the absence of a preliminary injunction. A preliminary injunction "should not issue upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent, irreparable injury." *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989). RHI has not come close to making the required showing. Here, where RHI delayed weeks seeking a remedy and has made only speculative allegations of possible harm, the Court should deny RHI's request for a preliminary injunction.

### 3. The Balance of the Hardships Weigh Heavily Against Defendants

In light of the fact that RHI has produced no evidence that it has been harmed by either Defendant in any manner, the hardship of enjoining Defendants outweighs the interests of RHI that would be served by the issuance of a preliminary injunction.

The balance of hardships tips in favor of Wojdyl, who would be barred from employment in the tri-state region near where he lives. Moreover, because Wojdyl's securities trader licenses

---

[8]    Even when RHI has succeeded in obtaining a preliminary injunction, it has been much more narrowly tailored than the TRO already obtained from this Court or the preliminary injunction RHI seeks in this case. Thus, in *Robert Half of PA Inc. v. Feight*, 2000 Pa. Dist. & Cnty. Dec. LEXIS 239 (Pa. D. & C. June 29, 2000), the court considered RHI's motion for a preliminary injunction to enjoin a former employee. As here, the RHI attempted to prohibit its former employee from working for a competitor. The court, however, found such relief entirely too broad and issued a preliminary injunction prohibiting the former employee "from only soliciting, contacting or otherwise engaging in business relations with the 16 law firms with which she established relationship while at RHI." *Id.* at *1. The court noted, as in this case, that the identities of other prospective clients were available on the internet and in various directories and, therefore, prohibiting the employee from working in the industry was overreaching; *see also Robert Half Int'l, Inc. v. Buoncontri*, 15 Mass. L. Rep. 742 (Mass. Supp. Jan. 27, 2003) (granting limited preliminary injunction enjoining former RHI recruiter from soliciting any of RHI's clients with whom he had any contact in the last year of his employment with RHI or whom he was aware was a RHI customer); *Robert Half Int'l, Inc. v. Stenz*, 2000 U.S. Dist. LEXIS (E.D. Pa. Nov. 15, 2000) (refusing to enjoin former RHI employee from competing, but prohibiting him from soliciting "any of the Plaintiff's clients or candidates for whom the Plaintiff has performed services in the course of its business within the twelve months preceding March 24, 2000").

are on the cusp of expiring, he is effectively precluded from returning to his former career as a trader without taking a series of arduous and time-consuming tests. Defendants respectfully submit that it is not in RHI's legitimate business interests to preclude Wojdyl from any gainful employment in the permanent placement business.

Respecting Execu/Search, a preliminary injunction is particularly harsh and unwarranted. RHI seeks, inappropriately, to preclude Execu/Search from soliciting any of its "clients" and "candidates" when the reality of this industry is that there are no such exclusive relationships and, undoubtedly, Execu/Search has many pre-existing clients and candidates in common with RHI. Here, where RHI has not made a single specific factual allegation accusing Execu/Search of any wrongdoing, RHI is not entitled to injunctive relief as against Execu/Search.

**B.**      **The Court Should Deny RHI's Request for Expedited Electronic Discovery**

RHI not only seeks a preliminary injunction, but it also seeks detailed, burdensome and unnecessary expedited electronic discovery. Specifically, RHI's proposed order would permit RHI:

> To inspect and image all computers and other electronic devises, including, but not limited to, computers, hard disk drives, floppy disk drives, removal storage devices (e.g., thumb drives), CDs, DVD, pda's, cell phones, blackberries and/or all other similar electronic storage devices belonging to, under the control of, accessible to, or operated by Wojdyl on which RHI information of any kind resides or may have resided. Accordingly, Defendants must produce, within three (3) court days of services of this Order upon them, all computer or other electronic devices described above belong[ing] to, under the control of, accessible to, or operated by Wojdyl on which RHI information of any kind resides or may have resided.

The Court should deny the above-requested relief. As a preliminary matter, Wojdyl has already submitted an affidavit to the Court swearing that he has either returned RHI's alleged confidential and proprietary information and/or destroyed it.

Moreover, RHI has not shown any entitlement to this burdensome, intrusive and expedited relief. Where, as here, RHI cannot show any entitlement to a preliminary injunction and has made no showing of impending irreparable harm, the case law is clear that expedited discovery is inappropriate and should be denied. *Park West Radiology v. Carecore Nat'l LLC*, 240 F.R.D. 109, 114 (S.D.N.Y. 2007) (denying motion for injunctive relief and expedited discovery because the delay in filing suit undercut the assertion of irreparable harm); *Special Situations Cayman Fund L.P. v. Dot Com Entm't Group,* 03-CV-0811E(F), 2003 U.S. Dist. LEXIS 25083, at **4-5 (W.D.N.Y. Dec. 5, 2003) (denying request for expedited discovery in preparation for a preliminary injunction hearing because there was no finding of irreparable injury); *In re Utilities Uranium Decontamination & Decommissioning Fund Litig.,* 98 Civ. 4155, 2001 U.S. Dist. LEXIS 3169, at *10 (S.D.N.Y. March 26, 2001) (same); *Gladstone v. Waldron & Co.*, 98 Civ. 2038, 1998 U.S. Dist. LEXIS 4073, at **3-4 (S.D.N.Y. March 31, 1998) (same); *Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc.*, 986 F. Supp. 183, 189 (S.D.N.Y. 1997) (denying request for expedited discovery because there was no irreparable injury or significant probability of success on the merits).

Accordingly, the Court should deny RHI's request for expedited electronic discovery.

**C.**    **The Court Vacate the Temporary Restraining Order**

Now having the benefit of Defendants' brief and the actual facts and applicable law, Defendants respectfully request that the Court reconsider its May 16, 2007 decision entering a temporary restraining order. As set forth above, RHI's restrictive covenants are overly broad, anti-competitive and, as a consequence, unenforceable. Under the circumstances, the TRO should be immediately vacated. *Pacific Elec. Wire & Cable Co. v. Set Top Intl, Inc.*, 03 Civ. 9623, 2003 U.S. Dist. LEXIS 23270, at **17-18 (S.D.N.Y. 2003) (dissolving the temporary

restraining order due to unresolved issues, and a claim of irreparable harm that had no merit); *A. Esteban & Co., Inc. v. Metro. Transp. Auth.*, 02 Civ. 3615, 2002 U.S. Dist. LEXIS 9353, at *10 (S.D.N.Y. 2002) (denying plaintiff's motion for preliminary injunction and vacating the temporary restraining order); *Heavener v. Brenner*, 96 Civ. 2719, 1996 U.S. Dist. LEXIS 15146, at *4 (S.D.N.Y. 1996) (denying preliminary injunction and dissolving the temporary restraining order because plaintiffs failed to show that they are likely to succeed on the merits).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's motion for a preliminary injunction be denied, Plaintiff's motion for expedited electronic discovery be denied and that the Court vacate the existing temporary restraining order consistent with New York law.


Date:   March 21, 2007
        New York, New York

                            Respectfully submitted,


                            By:    /s/ A. Michael Weber
                                 A. Michael Weber (AMW-8760)
                                 Gregory B. Reilly (GBR-6189)
                                 LITTLER MENDELSON PC
                                 Attorneys for Defendants
                                 885 Third Avenue, 16th Floor
                                 New York, New York 11747
                                 (212) 583-9600

Firmwide:82496451.1 051465.1005
5/21/07 11:31 PM