# EXHIBIT A

*2002 U.S. Dist. LEXIS 9353, **

A. ESTEBAN & COMPANY, INC., Plaintiff, - against - METROPOLITAN TRANSPORTATION AUTHORITY, MICHAEL DURSO, AND ROBERT WELCH, Defendants.

02 Civ. 3615 (NRB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 9353

May 24, 2002, Decided
May 24, 2002, Filed

**DISPOSITION:** [*1] Plaintiff's motion for preliminary injunction denied, and temporary restraining order vacated.

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Plaintiff company sought a temporary restraining order and preliminary injunction to prevent defendant metropolitan transportation authority from informing the prime contractors with whom company worked that they would no longer receive disadvantaged business enterprise (DBE) credit for work done by the company. The case required analysis of 49 C.F.R. § 26.87(i).

**OVERVIEW:** The company previously enjoyed DBE status, which entitled prime contractors to receive credit toward the DBE contract goal if they hired the company as a subcontractor on transportation authority projects. During the instant case the company worked as a subcontractor for three of the prime contractors on the design phase of a federally-funded transportation project. The issue was whether on a going forward basis, the prime contractors with whom the company did business could receive DBE credit for any future work allotted to the company. The court found that while the company had a pricing agreement with the prime contractors that bound the company to provide the promised prices throughout the length of the design phase of the project, there was no contract that bound any contractor to use the company's services throughout the design phase. The company's price list constituted an offer, and each purchase order was an acceptance creating a new contract. Therefore, the prime contractors were entitled to get DBE credit for any work for which a purchase order was issued prior to the transportation authority's reevaluation of the company that denied it DBE status.

**OUTCOME:** The company's motion for a preliminary injunction was denied, and the temporary restraining order was vacated.

**CORE TERMS:** contractor, prime, subcontract, regulation, public interest, phase, ineligible, ineligibility, eligible, preliminary injunction, receive credit, purchase order, subcontractor, plain meaning, oral argument, post-argument, eligibility, completion, removal, notice, temporary restraining order, price list, work done, prevails

**LexisNexis(R) Headnotes**

Public Contracts Law > Business Aids & Assistance > Minority, Women-Owned & Disadvantaged Businesses > General Overview
HN1 See 49 C.F.R. § 26.87(i).

Administrative Law > Agency Rulemaking > Rule Application & Interpretation > General

Overview
Administrative Law > Judicial Review > Standards of Review > General Overview

**HN2** Well-established rules of construction for agency regulations include: First, that a court relies on the plain meaning of a regulation, the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. Second, that all parts of a statute, or regulation, are to be read as a consistent whole and meaning is to be given to each constituent part.

Administrative Law > Agency Rulemaking > Rule Application & Interpretation > General Overview
Administrative Law > Judicial Review > Standards of Review > General Overview
Public Contracts Law > Business Aids & Assistance > Minority, Women-Owned & Disadvantaged Businesses > General Overview

**HN3** The term "contract" is defined as a legally binding relationship obligating a seller to furnish supplies or services and the buyer to pay for them. 49 C.F.R. § 26.5. The meaning of the term "executed" as used in the regulation can be discerned from a reading of the language and, in particular, from a comparison of the two subparts of 49 C.F.R. § 26.87. From the examination of the language of the regulation itself it is clear that an executed subcontract refers to a binding written agreement.

Administrative Law > Judicial Review > Standards of Review > General Overview
Public Contracts Law > Business Aids & Assistance > Minority, Women-Owned & Disadvantaged Businesses > General Overview

**HN4** See 49 C.F.R. § 26.89(b).


**COUNSEL:** For Plaintiff: Sheldon Lustigman, Esq., The Lustigman Firm.

For Defendants: Rhonda Moll, Esq., Senior Employment Counsel, MTA, Rebecca K. Myers, Esq., Paul Hastings, Janofsky & Walker, LLP.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** NAOMI REICE BUCHWALD

**OPINION: MEMORANDUM & ORDER**

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff, A. Esteban & Company, Inc. ("Esteban"), brought this action seeking a temporary restraining order and preliminary injunction preventing defendant Metropolitan Transportation Authority ("MTA") from informing the prime contractors with whom plaintiff works that they would no longer receive Disadvantaged Business Enterprise ("DBE") credit for work done by plaintiff. For the reasons discussed below, plaintiff's motion is denied.

**BACKGROUND**

In June 1998, plaintiff, a reprographics company, was re-certified by the MTA as a DBE, entitling prime contractors to receive credit toward the DBE contract goal if they hire plaintiff as a subcontractor on MTA projects. Plaintiff currently works as a subcontractor for three [*2] of the prime contractors on the design phase of the East Side Access Project, a federally-funded transportation project.

We held oral argument on this motion on May 21, 2002. For the reasons stated on the record, we determined, notwithstanding the expiration date included in the MTA's June 1998 re-certification letter and a subsequent regulatory change, that the MTA could not remove Esteban's certification as a DBE without complying with the notice and hearing requirements set out in the Department of Transportation regulations. 49 C.F.R. § 26.87. Therefore, Esteban remained certified as an eligible DBE until March 12, 2002. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Plaintiff has indicated that it will challenge the MTA's determination under the Department of Transportation's appeal procedure, 49 C.F.R. § 26.89, though it has not yet done so. Accordingly, for reasons of exhaustion among others, the merits of the removal of DBE status are not before this Court.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The remaining issue, which we asked **[*3]** the parties to brief following the hearing, concerns whether on a going forward basis, the prime contractors with whom plaintiff does business may receive DBE credit for any future work allotted to plaintiff. While plaintiff agrees that it may not now enter into a new subcontract with other prime contractors on the project that could be used by another prime contractor to meet its DBE goals, it maintains that it retains its DBE status with respect to the three contractors with whom it was dealing prior to March 12, 2002.

## DISCUSSION

Plaintiff contends that, under 49 C.F.R. § 26.87(i)(2), the prime contractors can continue to receive credit for all work done by plaintiff until the completion of plaintiff's subcontract, which it claims lasts until the design phase of the East Side Access Project is complete. n2 Defendants argue that plaintiff does not have a protectible subcontract within the meaning of 49 C.F.R. § 26.87. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The current projected completion date for the design phase is December, 2008. See Affidavit of Joseph J. Petrocelli, Chief Financial and Administrative Officer of the Project, sworn to on May 22, 2002. **[*4]**

n3 49 C.F.R. § 26.87(i) states:

> *HN1* Effects of removal of eligibility. When you remove a firm's eligibility, you must take the following action:
> (1) When a prime contractor has made a commitment to using the ineligible firm, or you have made a commitment to using a DBE prime contractor, but a subcontract or contract has not been executed before you issue the decertification notice provided for in paragraph (g) of this section, the ineligible firm does not count toward the contract goal or overall goal. You must direct the prime contractor to meet the contract goal with an eligible DBE firm or demonstrate to you that it has made a good faith effort to do so.
> (2) If a prime contractor has executed a subcontract with the firm before you

have notified the firm of its ineligibility, the prime contractor may continue to use the firm on the contract and may continue to receive credit toward its DBE goal for the firm's work. In this case, or in a case where you have let a prime contract to the DBE that was later ruled ineligible, the portion of the ineligible firm's performance of the contract remaining after you issued the notice of its ineligibility shall not count toward your overall goal, but may count toward the contract goal.
(3) Exception: If the DBE's ineligibility is caused solely by its having exceeded the size standard during the performance of the contract, you may continue to count its participation on that contract toward overall and contract goals.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*5]**

Plaintiff's post-argument submission essentially argues that plaintiff has contractual rights enforceable against the prime contractors for whom they have done work. This, however, is not the issue. Rather, the question is whether the "prime contractor has executed a subcontract with the firm [Esteban]" within the meaning of § 26.87(i)(2). We find that it has not. In reaching that conclusion, we rely on <sup>HN2</sup> well-established rules of construction: first, that a court relies on the plain meaning of a regulation, See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989) (stating that "the plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (citations omitted); second, that all parts of a statute (or regulation) are to be read as a consistent whole and meaning is to be given to each constituent part. United States v. Morton, 467 U.S. 822, 828, 81 L. Ed. 2d 680, 104 S. Ct. 2769 (1984).

Applying these principles of construction, we examine first the **[*6]** language of the regulation at issue. <sup>HN3</sup> The term "contract" is defined as "a legally binding relationship obligating a seller to furnish supplies or services ...and the buyer to pay for them." 49 C.F.R. § 26.5. The meaning of the term "executed" as used in the regulation can be discerned from a reading of the language and, in particular, from a comparison of the two subparts of § 26.87. From the examination of the language of the regulation itself it is clear that an executed subcontract refers to a binding written agreement. n4 The contrast between (i)(1) and (i)(2) is between a "commitment" and an "executed ... subcontract."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Further support for this reading may be found in § 26.13 which refers in the context of required assurances to "each subcontract the prime contractor signs with a subcontractor...." 49 C.F.R. § 26.13 (emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In the context of publicly funded projects with a host of mandates, it is hardly surprising that there would be requirement **[*7]** for written agreements to support the expenditure of public funding. It is undisputed that there was no comprehensive written contract between Esteban and any of the three prime contractors. Rather, the prior dealings between the plaintiff and the prime contractors were in the form of purchase orders that were signed based on an existing price list offered by the plaintiff. In effect, each purchase order

constituted a distinct subcontract. It should be noted that the prime contractor for whom plaintiff did the most work, PB/STV, stated at oral argument that it did not consider itself limited to dealing with the plaintiff and plaintiff's post-argument submission concedes that it did not have an exclusive relationship with the other prime contractors. Accordingly, we find that while plaintiff had a pricing agreement with the prime contractors that bound the plaintiff to provide the promised prices throughout the length of the design phase of the project, there was no contract that bound any contractor to use plaintiff's services throughout the design phase. Quite simply, plaintiff did not have a requirements contract with any of the three prime contractors. In sum, plaintiff's price **[*8]** list constituted an offer, and each purchase order was an acceptance creating a new contract.

We now turn to our attention to whether there are other portions of Part 26 of Title 49 that will inform our reading of § 26.87(i). We believe that there is learning that may be gleaned from a consideration of HN4§ 26.89(b) that provides: "Pending the Department's decision in the matter [referring to the appeal process before the Department of Transportation], the recipient's decision remains in effect. The Department does not stay the effect of the recipient's decision while it is considering an appeal." This provision makes clear that in the balancing between the public interest and the private interest of the firm seeking to maintain DBE status that the public interest prevails. A reading of § 26.87(i) makes clear that it is designed to protect the interest of the prime contractor (i.e. avoid disruption) if it has already executed a subcontract with a company that it thought was DBE qualifed, but that in the absence of such a subcontract the public interest once more prevails. In either event, it is not the prospective interest of the potential subcontract that controls. Moreover, applying **[*9]** traditional preliminary injunction analysis, the public interest, when affected, is an important consideration. Clearly, the public interest, as determined by the MTA, n5 the body charged with making that decision initially, would not be served by the granting of the requested preliminary relief.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Retaining plaintiff as an eligible DBE firm after the MTA has determined that the actual owner is not disadvantaged, would mean that a qualified DBE would not be afforded the opportunity to perform the work.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Therefore, the prime contractors are entitled to get DBE credit for any work for which a purchase order had been issued prior to March 12, 2002. After that date, plaintiff falls under § 26.87(i)(1); any future orders from plaintiff would not count toward the contract or overall project DBE goals.

## CONCLUSION

Having found that the regulation at issue does not support plaintiff's contention that it has executed subcontracts for future work as defined by 49 C.F.R. § 26.87(i), **[*10]** plaintiff's motion for a preliminary injunction is denied, and the temporary restraining order is vacated.

**IT IS SO ORDERED.**

DATED: New York, New York

May 24, 2002

NAOMI REICE BUCHWALD

going

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2002 us dist lexis 9353**
View: Full
Date/Time: Monday, May 21, 2007 - 5:34 PM EDT

\* Signal Legend:

- ● - Warning: Negative treatment is indicated
- ■ - Questioned: Validity questioned by citing refs
- ▲ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.