# EXHIBIT E

*2003 U.S. Dist. LEXIS 23270, **

PACIFIC ELECTRIC WIRE & CABLE CO., LTD. and ASIA PACIFIC WIRE & CABLE CORP., LTD., Plaintiffs, -against- SET TOP INTERNATIONAL INC., SWISS RE FINANCIAL PRODUCTS CORPORATION, KINBONG HOLDINGS LIMITED, TOM CHING-YUN TUNG, FRANK WEI-FENG LIN, TAI-SHENG LIEN, FU-CHUAN TSAI, FU-NU TSAI, YUAN-CHUN HSU, JACK TAKACS a/k/a JOHN P. TAKACS, ROBERT EVERETT WOLIN and JOHN DOES 1 THROUGH 10, Defendants.

View the Full Docket from LexisNexis CourtLink for 1:03cv9623
03 Civ. 9623 (JFK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 23270

December 29, 2003, Decided
December 30, 2003, Filed

**SUBSEQUENT HISTORY:** Application denied by Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc., 2004 U.S. Dist. LEXIS 3400 (S.D.N.Y., Jan. 20, 2004)

**DISPOSITION:** [*1] Defendant Set Top's motion for temporary restraining order denied. Intervenor plaintiff's motion for temporary restraining order denied.

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Plaintiffs, a parent company and its subsidiaries, moved for a temporary restraining order and a preliminary injunction preventing defendants, companies, from selling or otherwise disposing of these shares of a subsidiary's stock. The temporary restraining order was granted and the parent company and subsidiaries were ordered to show cause.

**OVERVIEW:** The parent company owned approximately 72.84 percent of the shares of a subsidiary. The parent company's ownership of those shares was in jeopardy because those shares were pledged as collateral so that loans could be obtained from the company. The company announced its intention to sell 50.44 percent of the subsidiary shares in a public sale. According to the parent company and its subsidiaries, the other 22.4 percent could be sold at any time. Because of the many factual disputes that were present, the court could not determine which party, if any, was likely to succeed on the merits. The parent company and subsidiaries' claim relied almost exclusively on the notion that one individual controlled the company and/or that he and his cohorts were engaged in a conspiracy with the persons who controlled the company. The submissions from all other parties, however, indicated that the individual had nothing to do with the company and that a different person owned and controlled that corporation. Similarly, the company's claim that the subsidiary intended to loot itself by pledging the stock of other subsidiaries in a loan transaction to benefit the parent company were not substantiated.

**OUTCOME:** The court dissolved the temporary restraining order. The company's motion for a temporary restraining order was likewise denied, and the subsidiary's motion for a temporary restraining order is also denied.

**CORE TERMS:** subsidiary, intervenor, stock, temporary restraining order, injunctive relief, buy, preliminary injunction, foreclosure, hardship, irreparable harm, principal place of business, faction, tip, irreparable injury, decidedly, letter of credit, sub-subsidiaries,

collateral, chairman, execute, pledged, pledge, likelihood of success, quotations, occupied, loan transaction, law firm, shareholders, injunction, leadership

## LexisNexis(R) Headnotes

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
Civil Procedure > Remedies > Injunctions > Temporary Restraining Orders

**HN1** It is well settled in the Second Circuit that preliminary injunctive relief is appropriate when the applicant establishes (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in the applicant's favor. The standard for granting a temporary restraining order is identical to that for a preliminary injunction. Absent an abuse of discretion, a district court's decision granting or denying injunctive relief will not be disturbed on appeal.

Civil Procedure > Remedies > Injunctions > Elements > General Overview
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions

**HN2** For injunctive relief to issue, the injury to be prevented must be not only irreparable, but also actual and imminent.

Civil Procedure > Remedies > Injunctions > Elements > General Overview

**HN3** Regarding injunctive relief, some courts have found irreparable harm where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied, or where an action for damages would be inadequate because the defendant is insolvent or its assets are in danger of depletion and dissipation.

**COUNSEL:** For Pacific Electric Wire & Cable Co., Ltd. and Asia Pacific Wire & Cable Corp., Ltd., Plaintiffs: COUDERT BROTHERS LLP, New York, New York.

For Pacific Electric Wire & Cable Co., Ltd., Intervenor Plaintiff: KAYE SCHOLER LLP, New York, New York.

For Set Top International, Inc., Defendant: BAKER & McKENZIE, New York, New York.

For Swiss Re Financial Products Corporation, Defendant: O'MELVENY & MYERS LLP, New York, New York.

For Tom Ching-Yun Tung, Defendant: JONES DAY, New York, New York.

For Robert Everett Wolin, Esq., Defendant: PATTERSON, BELKNAP, WEBB & TYLER LLP, New York, New York.

**JUDGES:** JOHN F. KEENAN, United States District Judge.

**OPINION BY:** JOHN F. KEENAN

**OPINION:** MEMORANDUM OPINION and ORDER

**JOHN F. KEENAN, United States District Judge:**

**Background**

Plaintiff Pacific Electric Wire & Cable Co. ("PEWC") owns, through its subsidiaries Pacific U.S.A. Holdings Corp. ("PUSA") and Kinbong Holdings Limited ("Kinbong"), approximately 72.84% n1 of the shares of plaintiff Asia Pacific Wire & Cable Corp. ("APWC"). **[*2]** PEWC's ownership of those shares is in jeopardy because PEWC or its subsidiaries pledged those shares as collateral so that loans could be obtained from defendant Set Top International, Inc. ("Set Top"). On November 17, 2003, Set Top announced its intention to sell 50.44% of the APWC shares (the shares held by PUSA) in a public sale on December 9, 2003. According to plaintiffs, the other 22.4% could be sold at any time. Plaintiffs moved on December 4, 2003, by Order to Show Cause, for a temporary restraining order and a preliminary injunction preventing defendants from selling or otherwise disposing of these shares of APWC stock. Plaintiffs brought the motion ex parte and insisted to the Court on December 8, 2003, that notice to the defendants would result in the sale of the 72.84% of the stock thereby causing plaintiffs irreparable damage. The Court issued the temporary restraining order based on plaintiffs' counsel's claims and representations and made the Order to Show Cause returnable December 15, 2003.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The exact percentage of APWC shares that PEWC controls through its subsidiaries is not clear. Among, and even within, the submissions the Court has found figures ranging from 72.44% to 75.4%. While the percentages are subject to speculation, the actual number of shares at issue seems to remain consistent throughout the various parties' submissions: 6,976,666 shares are attributable to PUSA, and 3,097,436 shares are attributable to Kinbong. The Court does not rule on the precise percentage of shares those figures represent, but uses the percentages that seem most prevalent among the submissions: 50.44% for the PUSA shares and 22.4% for the Kinbong shares.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*3]**

At the December 8 hearing, and in its moving papers, plaintiffs offered the following diagram to show PEWC's relationship to its subsidiaries that are involved in this case:

[SEE PEWC IN ORIGINAL]

Plaintiff PEWC is a Taiwanese corporation headquartered in Taipei. APWC is a Bermuda corporation with its principal place of business in Singapore. Kinbong is a British Virgin Islands corporation with its principal place of business in Hong Kong. PUSA is a Texas corporation that, in December 2002, filed for Chapter 11 protection in the United States Bankruptcy Court for the Northern District of Texas. Although PUSA is not a party to this case, its bankruptcy and subsequent attempts to reorganize and to pay its debts have created a veritable Serbonian bog into which "armies whole" might well sink. n2 Matter of Appointment of Independent Counsel, 766 F.2d 70, 72 (2d Cir. 1985) (citing J. Milton, Paradise Lost, in 4 Harvard Classics, The Complete Poems of John Milton 125 (Eliot ed. 1909)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Because of the number of Taiwanese parties in this case, the Court notes that the PUSA bankruptcy and the disputes surrounding it might more aptly be called a "Formosan fog."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*4]**

Former defendant Swiss Re is a Delaware corporation with its principal place of business in New York. n3 Swiss Re has been stipulated out of the case by all parties concerned. Defendant Set Top is another British Virgin Islands corporation with its principal place of business in Taipei.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Swiss Re is involved in the case because it was the original creditor that threatened PEWC with foreclosure. In September 2001 and February 2002, PUSA entered into agreements with Swiss Re whereby Swiss Re would provide a letter of credit to PUSA to enable PUSA to secure a loan from Standard Chartered Bank. As security, PUSA pledged the 6,976,666 shares of APWC stock that PUSA held. PEWC, in addition, promised to reimburse Swiss Re for any payments made on the letter of credit. When PUSA filed for bankruptcy protection in December 2002, Swiss Re was obliged to pay approximately $ 90 million to Standard Chartered Bank pursuant to the letter of credit agreement. Swiss Re then demanded reimbursement from PEWC. Through negotiations surrounding the PUSA bankruptcy proceedings in Texas, the parties agreed to settle the debt for $ 50 million. PEWC paid approximately $ 38.7 million of the outstanding debt, but defaulted on the remaining portion. Swiss Re then threatened foreclosure on the 6,976,666 APWC shares. This potential foreclosure was the starting point for the dispute in this case. No one questions the legitimacy of the transactions with Swiss Re.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*5]

Defendant Tom Ching-Yun Tung is a resident of Taiwan. He serves as president and chairman of PEWC, chairman of PUSA, chairman of APWC, and as one of two directors of Kinbong. n4 Furthermore, according to plaintiffs, Mr. Tung either owns or controls Set Top. Mr. Tung's purported control of Set Top is a central issue in this matter.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Mr. Tung is, or was, the Chairman of PEWC, and is head of the "Tung faction." However, in the minds of his opponents, called by Set Top the "Sun Faction," Mr. Tung was removed from the chairmanship in early December, 2003, and has been replaced by one Michael Lee. Indeed, the leadership of PEWC and the propriety of actions taken by that leadership are contested issues in this case. The Sun faction contends that Mr. Lee controls the board of PEWC and therefore actions taken under his direction bind the corporation. The Tung faction, on the other hand, claims that only those actions taken under Mr. Tung's direction are authorized.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Defendant Robert Everett Wolin is a partner in the [*6] Dallas office of the Kirkpatrick & Lockhart ("K & L") law firm which has acted as PEWC's counsel for several years. n5 Defendant John P. Takacs, a resident of Texas, is the chief executive officer of PUSA. Defendant Tai-Sheng Lien is the principal owner of Set Top. The other named individual defendants are officers, principal shareholders, or spouses of shareholders of PEWC or Set Top.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Defendant Wolin submits papers explaining in detail his involvement with PEWC throughout the transaction of the business at issue. Also submitted is the December 22, 2003, declaration of another K & L partner, Gerrit M. Pronske, Esq. These submissions indicate that Mr. Wolin diligently pursued the best interest of PEWC, that he made significant efforts to help PEWC out of its financial troubles, and that, in fact, he had very little to do with the transactions that are the basis for this dispute. Nothing in plaintiff's submission proves any wrongdoing on Mr. Wolin's part.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On December 15, 2003, the principal parties appeared [*7] through counsel. The Tung faction of PEWC also appeared through counsel as an intervening plaintiff (hereinafter "intervenor plaintiff"). Swiss Re was stipulated out of the case by all concerned.

**Factual History as Developed Through the Parties' Submissions**

This case focuses on a series of transactions among Set Top, Swiss Re, PEWC, and PEWC's subsidiaries. In particular, the parties dispute the validity of a loan to Kinbong from Set Top, the validity of Set Top's purchase of Swiss Re's claim against PEWC and PUSA, and the subsequent foreclosures that the loans may bring about.

The first transaction involves the PEWC subsidiary Kinbong. As one of two directors of Kinbong, defendant Tung executed agreements whereby Kinbong borrowed $ 4.1 million from Set Top with the 22.4% of APWC shares as collateral. The $ 4.1 million was transferred directly to Swiss Re in partial payment of Swiss Re's claim against PEWC. According to plaintiffs, if Set Top rejected Kinbong's proposed payment plan or if Kinbong failed to repay the $ 4.1 million, then Set Top could dispose of Kinbong's shares of APWC.

Plaintiffs have urged that Mr. Tung's alleged control over Set Top, coupled with his [*8] position as director of Kinbong, made Kinbong's default and the eventual transfer of the stock to Set Top inevitable. In order to take control of the APWC shares for Set Top (and thereby, as the individual purportedly in control of Set Top, for himself), Mr. Tung would need only to reject any proposed repayment plan from Kinbong or to exercise his power as a Kinbong director to make sure that Kinbong did not repay the loan. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The other parties demonstrate a notable lack of interest in the Kinbong loan. They simply note that PEWC paid $ 4.1 million to Swiss Re in partial fulfillment of its obligations, and that the money came from Set Top.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The second transaction at issue involves defendant Set Top and former defendant Swiss Re. On October 16, 2003, Set Top paid $ 11.5 million for Swiss Re's claim to 50.44% of the APWC shares. n7 According to plaintiffs, Mr. Tung orchestrated this transaction with the intent of taking control of an even greater percentage of the shares of APWC: Between the Kinbong transaction [*9] and the Swiss Re/Set Top transaction, Set Top would control 72.84% of APWC's shares. Without an injunction, plaintiffs claim, Set Top will be able to foreclose on the APWC shares and sell them for a significantly larger sum than the total of $ 15.6 million Set Top spent to acquire its interest in those assets. According to plaintiffs, such sale of a controlling percentage of the shares of APWC will cause irreparable harm.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 See supra note 3 for more information on the Swiss Re claim.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Intervenor plaintiff objects to the possible foreclosure on the APWC assets, but gives different reasons for its objections. Intervenor plaintiff contends that, as a condition of the transaction between Swiss Re and Set Top, Swiss Re required PEWC's consent to the transaction. PEWC, in turn, would only give its consent if Set Top would promise to sell the Swiss Re claim, including the rights to foreclose on the APWC shares, to PEWC. The parties refer to this promise as a "buy back agreement." Because of time constraints that [*10] the closing of the Swiss Re/Set Top deal imposed, Set Top did not execute the buy back agreement at the time of closing. Instead, intervenor plaintiff claims that Mr. Lien of Set Top promised to execute the buy back agreement soon after the closing. In reliance on this promise, intervenor plaintiff urges, Mr. Tung, as Chairman of PEWC, wrote a letter consenting to the Swiss Re/Set Top transaction.

According to intervenor plaintiff, Mr. Lien subsequently changed his mind concerning the buy back agreement. Set Top's lawyers now maintain that no such agreement ever existed. Set Top's alleged conduct, intervenor plaintiff argues, constitutes breach of contract and fraudulent misrepresentation. Therefore, intervenor plaintiff asks the Court for a temporary restraining order preventing the sale of the 50.44% interest in APWC.

Defendant Set Top contends that all transactions between Set Top, PEWC, and PEWC's subsidiaries were conducted at arms' length and in good faith. Furthermore, Set Top seeks injunctive relief against PEWC, APWC, and APWC General Holdings, a subsidiary of APWC (hereinafter "APWC Gen'l"), to prevent an alleged "looting" of APWC through the pledge of stock of four APWC [*11] sub-subsidiares in yet another loan transaction for the benefit of PEWC.

Set Top claims that, on December 4, 2003, the date that plaintiffs filed this action, the board of directors of APWC Gen'l announced a board meeting to be held in Singapore. The purpose of this meeting was to appoint a director, one Mr. Sun, to negotiate one or more loans in which the stock of four APWC subsidiaries would be pledged as collateral. The money generated from the loans would go directly to PEWC. The meeting took place on December 8, 2003, and the resolution was passed. Because APWC is a holding company with all its assets in its subsidiaries and sub-subsidiaries, such pledging of the shares of APWC's subsidiaries would render APWC's own shares worthless.

This conduct, Set Top says, demonstrates an intent to hinder or delay Set Top's legitimate claims. Set Top therefore seeks a temporary restraining order and a preliminary injunction preventing the pledge of the APWC subsidiaries' or sub-subsidiaries' stock, preventing disposal of the APWC subsidiaries' or sub-subsidiaries' assets, preventing other major transactions involving APWC stock not in the ordinary course of business, and preventing PEWC [*12] from receiving any funds generated by the pledge or disposal of the assets of APWC or any of APWC's subsidiaries. At oral argument, however, counsel for plaintiff indicated that the proposed transaction would not take place, and Set Top has brought forth no evidence showing that the proposed transaction, or others similar to it, were likely to occur.

Of particular interest to the Court are the statements of defendant Tai-Sheng Lien, many of which contradict plaintiffs' contentions. The Court emphasizes Mr. Lien's claims because plaintiffs have offered no evidence to shore up their foundational contention that Mr. Tung

owns a controlling interest in Set Top or otherwise exercises control over that corporation. Instead, plaintiffs have offered only "information and belief" to substantiate their claim that Mr. Tung controls Set Top.

In his affidavit dated December 12, 2003, Mr. Lien states "I am the principal beneficial owner of Set Top." Lien aff. P 1. He claims familiarity with the organization's structure and notes that Mr. Tung neither forms a part of that structure nor owns shares or "any beneficial interest in Set Top." Id. P 3. Furthermore, Mr. Lien asserts, "Mr. Tung does [*13] not control Set Top directly or indirectly." Id.

Other portions of the Lien affidavit read as follows:

> 5. Set Top acquired the claim that Swiss Re Financial Corporation ("Swiss Re Claim") held against Pacific USA Holdings, Inc. ("PUSA") in an arms-length transaction for $ 11.5 million. Swiss Re's Claim against PUSA was secured by 6,976,666 shares in APWC. Set Top did not have any agreement with PEWC, Mr. Tung or any of their respective affiliates for a "buy back" arrangement with respect to the Swiss Re Claim. In fact, I understand that PEWC, through the Dallas office of the law firm of Kirkpatrick & Lockhart, filed proceedings in Texas against Set Top based on an alleged failure by Set Top to execute a buy back agreement, an "agreement" that Set Top never agreed to.
>
> 6. In September 2003, Set Top loaned $ 4.1 million (the "Kinbong Loan") to Kinbong Holdings Limited ("Kinbong"). The loan was secured by 3,097,436 shares in APWC that were owned by Kinbong. My understanding is that the proceeds of this loan were used to assist PEWC in paying funds to Swiss Re to prevent Swiss Re from foreclosing on shares of APWC. Kinbong is in default on the Kingbong Loan, and has not paid the [*14] loan off although it has become due.

The issue underlying Mr. Lien's statements -- control of Set Top -- is a main issue in this case, and necessarily is key to the Court's consideration of the appropriateness of injunctive relief.

**Standards for a Preliminary Injunction.**

HN1 It is well settled in this Circuit that "preliminary injunctive relief is appropriate when the applicant establishes (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in [applicant's] favor." Wisdom Import Sales Co. v. Labatt Brewing Company Ltd., 339 F.3d 101, 108 (2d Cir. 2003) (quoting TCPIP Holding Co., Inc., v. Haar Comunications, Inc., 244 F.3d 88, 92 (2d Cir. 2001)); see AIM Int'l Trading, LLC v. Valcucine SpA, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002) (quoting Jackson Dairy, Inc., v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). The standard for granting a temporary restraining order is [*15] identical to that for a preliminary injunction. Aim Int'l, 188 F. Supp. 2d at 387. Absent an abuse of discretion, a district court's decision granting or denying injunctive relief will not be disturbed on appeal. Id. (quoting Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990)).

Because of the many factual disputes that are present in this case, the Court cannot determine which party, if any, is likely to succeed on the merits. As mentioned above,

plaintiff's claim rests almost exclusively on the notion that Mr. Tung controls Set Top and/or that he and his cohorts are engaged in a conspiracy with the persons who control Set Top. The submissions from all other parties, however, indicate that Mr. Tung has nothing to do with Set Top and that Mr. Lien owns and controls that corporation. Similarly, Set Top's claims that APWC Gen'l intends to loot APWC by pledging the stock of APWC subsidiaries in a loan transaction to benefit PEWC have not been substantiated; in fact, PEWC admits that such a plan was once considered but has now been discarded. Set Top disputes intervenor plaintiff's claim that a buy back agreement existed between [*16] Set Top and PEWC: Set Top denies that any such agreement ever existed.

With so many unresolved issues on all sides, serious questions as to the merits are inevitable. However, it is not clear that the balance of hardships tips decidedly in favor of one party over another. Plaintiffs and intervenor plaintiff claim that the potential loss of the APWC shares tips the balance of hardships in their favor. Set Top, on the other hand, claims that the potential looting of APWC and the inability to proceed with a legitimate foreclosure on the APWC stock tip the balance in favor of Set Top. Neither alleged hardship seems to outweigh the other. None of the parties satisfy this criterion.

The loss of the 50.44% of APWC shares, plaintiffs and intervenor plaintiff claim, constitutes irreparable injury for which injunctive relief is warranted. Even if plaintiffs and intervenor plaintiff had satisfied their burden of showing a likelihood of success on the merits or serious questions as to the merits and a balance of hardships that tips decidedly in their favor, their claim for irreparable injury would fail. HN2 For injunctive relief to issue, the injury to be prevented must be not only irreparable, [*17] but also actual and imminent. Jackson Dairy, 596 F.2d at 72 (citing New York v. Nuclear Regulatory Comm'n, 550 F.2d 745, 755 (2d Cir. 1977)). Because of the December 8 temporary restraining order, Set Top cancelled the sale scheduled for December 9. Another sale, defendants concede, could not take place in less that three to four weeks. No clear showing has been made by any party that Set Top definitely intends to schedule another sale at that time or at any time in the near future. The harm, therefore, lacks the imminence and actuality required for this Court to grant injunctive relief. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Plaintiffs, but not intervenor plaintiff, also seek to prevent sale of the 22.4% interest in APWC represented by the Kinbong shares. Because this interest represents only a minority of the shares of APWC, however, the loss of this interest does not qualify as "irreparable harm."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Set Top's claim of irreparable harm similarly lacks merit. Although HN3 some courts have found irreparable harm "where, [*18] but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied," Quantum Corporate Funding, Ltd., v. Assist You Home Health Care Services, 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) (internal quotations omitted), or "where an action for damages would be inadequate because the defendant is insolvent or its assets are in danger of depletion and dissipation," Transamerica Rental Finance Corp. v. Rental Experts, 790 F. Supp. 378, 381 (D. Conn. 1992) (internal quotations omitted), irreparable harm does not exist in this case. APWC is just one member of a large family of corporations of which PEWC is the head. Were APWC Gen'l to strip the assets of APWC, Set Top could still be returned to the position it previously occupied by an award of monetary damages against the persons or corporations responsible for the stripping.

**Conclusion**

For the foregoing reasons, the Court hereby dissolves the temporary restraining order of December 8, 2003. Defendant Set Top's motion for a temporary restraining order is likewise denied, and intervenor **[*19]** plaintiff PEWC's motion for a temporary restraining order is also denied. The case is referred to Magistrate Judge Andrew J. Peck for discovery, to be completed by the close of business on March 31, 2004. Should it be necessary, a hearing on the preliminary injunction applications will be held on April 12, 2004, at 10:30 a.m. n9 Counsel are to notify the Court in writing by April 8, 2004, whether a preliminary injunction hearing is desired.

- - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -

n9 The Court gives the parties ninety days to conduct discovery because, based on the submissions so far received, the Court estimates that at least a dozen depositions will be needed, many in the Far East. Moreover, none of the defendants have filed responsive pleadings or motions addressed to the Complaint or to jurisdiction.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**SO ORDERED.**

**Dated: December 29, 2003**

**JOHN F. KEENAN**

**United States District Judge**

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 23270**
View: Full
Date/Time: Monday, May 21, 2007 - 5:35 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
■ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.