# EXHIBIT G

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

ENTERED
CLERK, U.S. DISTRICT COURT
APR - 5 2007
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

FILED - EASTERN DIVISION
CLERK U.S. DISTRICT COURT
APR - 5 2007
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HALF INTERNATIONAL INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>MELINDA T. LE-COMPTE, an individual; ELIZABETH M. MURPHY, an individual; PWC & ASSOCIATES, INC., a California corporation; and DOES 1 through 10,<br><br>          Defendants. | Case No. EDCV 07-201-VAP (JCRx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

DOCKETED ON CM
APR - 5 2007
BY _____

## I. BACKGROUND

On February 20, 2007, Plaintiff Robert Half International, Inc. ("RHI") filed a Complaint alleging claims for misappropriation of trade secrets, breach of contract, and violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, against its former employees, Defendants Melinda T. Le-Compte and Elizabeth M. Murphy, and their new employer, Defendant PWC &

(51)

1 | Associates ("PWC"). Simultaneously with the Complaint,
2 | RHI filed an Application for a Temporary Restraining
3 | Order and Order to Show Cause Why a Preliminary
4 | Injunction Should Not Issue ("Application"). On February
5 | 26, 2007, the Court denied RHI's Application, construing
6 | it as a Motion for Preliminary Injunction.
7 |
8 | On March 19, 2007, after a round of expedited
9 | discovery, RHI filed Supplemental Memorandum of Points
10 | and Authorities in Supports of Its Application for a
11 | Preliminary Injunction ("Pl.'s Supp."). On March 22,
12 | 2007, Defendants filed a Supplemental Opposition ("Defs.'
13 | Supp.").
14 |
15 | **II. LEGAL STANDARD**
16 | The standard for a preliminary injunction ordinarily
17 | balances the plaintiff's likelihood of success on the
18 | merits against the relative hardship to the parties. See
19 | Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115,
20 | 1119 (9th Cir. 1999). In seeking a preliminary
21 | injunction, a plaintiff meets its burden by demonstrating
22 | either: (1) a combination of probable success on the
23 | merits and the possibility of irreparable injury; or (2)
24 | that serious questions are raised and the balance of
25 | hardships tips sharply in its favor. Save Our Sonoran,
26 | Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005); see
27 | also Fed. R. Civ. P. 65. These two formulations are not
28 |

separate tests but represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. <u>Clear Channel Outdoor, Inc. v. City of Los Angeles</u>, 340 F.3d 810, 813 (9th Cir. 2003).

"The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." <u>Alaska v. Native Village of Venetie</u>, 856 F.2d 1384, 1389 (9th Cir. 1988). A "serious question" is one on which the movant has a "fair chance of success on the merits." <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1421 (9th Cir. 1984). Generally, the "balance of harm" evaluation should proceed the "likelihood of success analysis," because until the balance of harm has been evaluated the court cannot know how strong and substantial the plaintiff's showing of the likelihood of success must be. <u>Alaska</u>, 856 F.2d 1384, 1389 (9th Cir. 1988). Given that preliminary injunctions are "an extraordinary and drastic remedy," courts refrain from granting them unless the moving party carries the burden of persuasion by a "clear showing." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).

///

## III. DISCUSSION

RHI seeks to enjoin Defendants from: (1) using trade secrets that Defendants misappropriated from RHI; (2) soliciting business from or conducting business with any employer customer that was a customer of RHI while Defendants Le-Compte and Murphy worked there; or (3) placing any candidate employee who is identified in any RHI documents and with whom Defendants established contact through RHI. (Proposed Order Granting Preliminary Injunction at 4-5.) For the reasons set forth below, the Court denies Plaintiff's application for the requested injunction.

### A. Irreparable Harm

In considering RHI's Application for a TRO, the Court found that the balance of hardships did not tip sharply in RHI's favor, largely because of the broad sweep of RHI's proposed order. (Minute Order dated Feb. 26, 2007 at 3-4.) RHI does not press this issue in its Supplemental Memorandum, and the proposed injunction here supports a similar finding.

RHI does contend, however, that it faces a possibility of irreparable harm if an injunction does not issue. (Pl.'s Supp. at 16.) According to RHI, this harm consists of its lost customer relationships and lost goodwill resulting from Defendants' unfair competition.

4

(<u>Id.</u>)  Defendants respond that there is no evidence of real or imminent injury to RHI's goodwill or customer relationships.  (Defs.' Supp. at 20.)  Thus, Defendants contend, RHI has an adequate remedy at law:  money damages.

As the Court indicated in its February 26, 2007, Minute Order, if RHI prevails after a trial on the merits, then RHI likely would receive both an injunction preventing Defendants from doing business with any RHI clients they solicited through the trade secrets and a disgorgement of Defendants' profits from the relevant period.  Given the market statistics available to RHI, a compensatory damages award would be quantifiable and adequate.  (<u>See</u> Declaration of Dylan W. Wiseman ("Wiseman Decl."), Ex. I (Deposition of Carol Caldwell) at 35-46.)  Further, any purported injury to RHI's goodwill or customer relationships is unsupported by more than bare assertion,[1] and thus too speculative to support injunctive relief.  <u>See</u> <u>Goldie's Bookstore v. Super. Ct.</u>, 739 F.2d 466, 472 (9th Cir. 1984).  Thus, RHI has not made a "clear showing" that there is a possibility of irreparable harm absent interim injunctive relief.

---

[1] Although RHI elicited the testimony of Brett Good at the hearing on this Motion, his testimony did not establish that any goodwill was lost as a result of Defendants' actions.

5

## B. Likelihood of Success on the Merits

Even if RHI had demonstrated some possibility of irreparable harm, it cannot satisfy its corresponding burden of demonstrating a strong likelihood of success on the merits.

### 1. Trade Secrets Claim

Both parties agree that the critical issue for this claim is whether Defendants "solicited" customers with the help of RHI's trade secrets. (See Pl.'s Supp. at 12; Defs.' Supp. at 5.) "[M]isappropriation occurs if information from a customer database is used to solicit customers." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993); Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1524 (1997) ("While California courts have shown a reluctance to impose an unconditional prohibition on doing business with customers of the former employer, they have prohibited the unlawful use of trade secrets to solicit those customers.").

In Morlife, the court noted that the California Supreme Court defined "solicit" as "[t]o appeal to (for something); to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving." 56 Cal. App. 4th at 1525 (internal citations and quotations omitted). Merely "informing customers of one's former employer of a change in employment, without more, is not

6

solicitation," however. Id.[2] The California Supreme Court affirmed this distinction in 2004:

> [A]lthough an individual may violate the UTSA [Uniform Trade Secrets Act] by using a former employer's confidential client list to solicit clients, the UTSA does not forbid an individual from announcing a change of employment, even to clients on a protected trade secret client list. As one decision explains, merely announcing a new business affiliation, without more, is not prohibited by the UTSA definition of misappropriation because such conduct is basic to an individual's right to engage in fair competition.

---

[2] In Morlife, the defendants sent their former employer's clients a letter with the following language that the court described as "beyond merely announcing [their] new affiliation and actively solicit[ing] business for [the] new company[:] . . . I've joined forces with other roofing and general construction professionals to bring you the next generation of roofing companies.' After describing the services offered, the letter ends with, 'As always, you have my commitment to provide you with timely, dependable, professional solutions to alleviate your roofing problems. With rainy weather on the doorstep, let's talk soon about how we can prevent or minimize your headaches and costs.'" Id. at 1524 n.6. This stands in stark contrast with the communications from Defendant Le-Compte in this case.

1  Reeves v. Hanlon, 33 Cal. 4th 1140, 1156 (2004) (internal
2  citations and quotations omitted).[3]  Here, RHI has
3  produced insufficient evidence that Defendants actively
4  solicited clients using its trade secrets.  Although RHI
5  submits a chart purporting to show extensive contact
6  between Le-Compte and seventeen of her most active former
7  clients, an examination of the actual evidence of these
8  contacts reveals a lack of "active solicitation" as that
9  type of wrongdoing is defined under California law.  (See
10 Defs.' Supp. at 10-18.)
11
12      For example, Client 6 responded to Le-Compte's
13 professional announcement of her new affiliation.  Client
14 12 merely received the same announcement.  Other clients
15 contacted Le-Compte after she sent them Thanksgiving
16 cards, including Clients 1 and 8.  Le-Compte contacted
17 Client 7 in response to an advertisement that the client
18 itself had posted in the newspaper.  Le-Compte's contact
19 with Client 3 is with a close friend who works for that
20 client, who after taking Le-Compte to breakfast on her
21 birthday broached the subject of an upcoming placement.
22 Clients 17 and 24 initiated the contact between
23 themselves and Le-Compte.  Several of these clients
24 submitted declarations that they initiated the contact,
25 and Le-Compte did not solicit them.  Other contacts were

---

27      [3]Plaintiff's contention that Morlife holds or hints
   that after enactment of the UTSA, even such notifications
28 may be unlawful (see Pl.'s Supp. at 12) thus lacks merit.

the product of referrals (Clients 15, 36), existing relationships with PWC (Clients 4, 14), professional networking (Clients 3, 5, 16), or outside social functions (Clients 2, 9, 10, 13). Equity will not enjoin these contacts, which are basic to any person's right to engage in fair competition. Id.

### 2. Breach of Contract Claim

RHI's breach of contract claim is coextensive with its trade secrets claim, because the nonsolicitation provision of the employment contract here is only enforceable to the extent that it protects RHI's trade secrets from misappropriation. See Thompson v. Impaxx, Inc., 113 Cal. App. 4th 1425, 1431 (2003) (reaffirming that "nonsolicitation clauses are allowable only when they protect trade secrets or confidential proprietary information"). Thus, RHI likewise has not demonstrated a strong likelihood of success on the merits of this claim.

### 3. Computer Fraud and Abuse Act ("CFAA") Claim

RHI has not demonstrated a strong likelihood of success on the merits of its CFAA Claim. The CFAA civil enforcement scheme contains a significant restriction, one that likely bars RHI's recovery. See 18 U.S.C. § 1030(g) ("A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or

(v) of subsection (a)(5)(B).")). Thus, RHI has not met its burden on this claim.

Further, as indicated in the Court's Order to Show Cause, this potential shortcoming in Plaintiff's CFAA claim would divest the Court of subject matter jurisdiction. This would also prevent Plaintiff from obtaining any equitable relief from the Court.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Plaintiff's Motion for Preliminary Injunction.

Dated: April 4, 2007

VIRGINIA A. PHILLIPS
United States District Judge