# EXHIBIT H

Source: Legal > / . . . / > **PA Federal District Courts** ⓘ
Terms: **name(robert half)** (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

*2000 U.S. Dist. LEXIS 16557, \*; 17 I.E.R. Cas. (BNA) 164*

**ROBERT HALF** INTERNATIONAL, INC. v. GREGORY J. STENZ

CIVIL ACTION NO. 00-2570

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2000 U.S. Dist. LEXIS 16557; 17 I.E.R. Cas. (BNA) 164

November 15, 2000, Decided

**DISPOSITION:** [\*1] Plaintiff's Motion for Expedited Discovery and Preliminary Injunction Hearing DENIED. Plaintiff's Motion for Preliminary Injunction GRANTED IN PART and DENIED IN PART.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employer filed a motion for preliminary injunction against defendant former employee in a suit for breach of a noncompetition provision in an employment agreement.

**OVERVIEW:** Plaintiff employer filed suit against defendant former employee, alleging breach of employment agreement, misappropriation of trade secrets, and tortious interference with business relations. Plaintiff sought to enjoin defendant from working for a competing agency, from soliciting former clients, and using confidential information. The court held that the plaintiff had no likelihood of success in enforcing the provision of the employment contract which prohibited working for a competing agency, thus defendant could not be enjoined as such. However, defendant was enjoined from soliciting former clients and using confidential information, because plaintiff would likely succeed on those claims, and would suffer irreparable harm if defendant was not so enjoined.

**OUTCOME:** Preliminary injunction granted in part, where plaintiff had reasonable likelihood of success in enforcing provision of agreement and would suffer irreparable harm without injunction. Preliminary injunction denied in part so that defendant could continue employment with plaintiff's competitor.

**CORE TERMS:** personnel, confidential information, covenant, irreparable harm, preliminary injunction, enforcing, temporary, customer, injunctive relief, soliciting, database, restrictive covenant, breach of contract, placement, candidate, enjoined, employment agency, trade secrets, injunction, termination, recruiting, induce, former employer, weigh, service business, indirectly, connected, enjoining, solicit, reasonable likelihood

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🔖
*HN1*⬇Even in diversity actions based upon state-created rights, a motion for a preliminary injunction brought in federal court is governed by the federal standard for injunctive relief. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions

HN2 Injunctive relief is considered an extraordinary remedy, which should be granted only in limited circumstances. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions

HN3 To determine if circumstances warranting injunctive relief exist, a court must carefully weigh four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions

HN4 A probability of success on the merits and a showing of irreparable harm are considered fundamental and a court may not issue an injunction unless both of these factors are present. More Like This Headnote

Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview
Civil Procedure > Federal & State Interrelationships > Erie Doctrine
Labor & Employment Law > Employment Relationships > General Overview

HN5 In a federal court exercising diversity jurisdiction, the applicable state law will be determined by the forum state's choice of law rules. More Like This Headnote

Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview
Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview
Civil Procedure > Federal & State Interrelationships > Erie Doctrine

HN6 In Pennsylvania, a court will enforce a choice of law provision in a contract executed by the parties. More Like This Headnote

Contracts Law > Types of Contracts > Covenants
Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements

HN7 In Delaware, covenants not to compete in employment contracts are subject to heightened scrutiny. More Like This Headnote

Contracts Law > Types of Contracts > Covenants
Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements
Real Property Law > Restrictive Covenants > General Overview

HN8 The Delaware courts analyze the enforceability of a restrictive covenant using a two-pronged analysis. The court must begin by ensuring that the formal elements of contract were satisfied, the geographic and time limitations in the covenant were reasonable, and that the restriction fosters a legitimate economic interest of the employer. Once the covenant's validity is established, the court must determine if the covenant is specifically enforceable under the facts presented. More Like This Headnote

Contracts Law > Types of Contracts > Covenants
Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements

HN9 When determining if the specific facts presented warrant enforcing a valid noncompetition covenant, the Delaware courts have balanced the interest of the

employer against the consequences of specific enforcement to the employee. More Like This Headnote

Contracts Law > Types of Contracts > Covenants
Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Trade Secrets & Unfair Competition > Noncompetition & Nondisclosure Agreements
Real Property Law > Restrictive Covenants > General Overview

HN10 As opposed to mechanical enforcement, the Delaware courts have found that a restrictive covenant should be enforced to the extent that it is reasonable to enforce it. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
HN11 Irreparable harm is essentially a potential harm which cannot be redressed by a legal or equitable remedy following a trial. The harm must be immediate, the mere possibility of injury at some point in the future will not suffice. More Like This Headnote

Civil Procedure > Remedies > Damages > Monetary Damages
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
HN12 In a breach of contract action, loss of income will not be sufficient to show irreparable harm, but a court will consider (a) the difficulty of proving damages with reasonable certainty, (b) the difficulty of procuring a suitable substitute performance by means of money awarded as damages, and (c) the likelihood that an award of damages could not be collected. More Like This Headnote

Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements
Trade Secrets Law > Civil Actions > Burdens of Proof
Trade Secrets Law > Civil Actions > Remedies > Injunctive Relief > General Overview
HN13 To prevail claims of misappropriation of trade secrets and tortious interference with prospective business advantage, a plaintiff must show either the communication of a trade secret or an attempt by the defendant to prevent a business relationship of the plaintiff's from occurring. More Like This Headnote

**COUNSEL:** For ROBERT HALF INTERNATIONAL INC., PLAINTIFF: THOMAS J. BARTON, JESSICA L. KRENTZMAN, DRINKER BIDDLE & REATH LLP, PHILADELPHIA, PA USA.

For GREGORY J. STENZ, DEFENDANT: JAMES M. HOLSTON, SCHNADER, HARRISON, SEGAL & LEWIS, PHILA, PA USA. JOHN-PATRICK CURRAN, KEVIN A. FOX, TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT, NEW YORK, NY USA.

For WALL STREET SERVICES, INC., ROSA CATALANO, PETER LAUGHTER, MOVANTS: ROLIN PLUMB BISSELL, SCHNADER, HARRISON, SEGAL & LEWIS, PHILA, PA USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINION BY:** HERBERT J. HUTTON

**OPINION: MEMORANDUM AND ORDER**

HUTTON, J.

November 15, 2000

Presently before the Court are the Plaintiff's Motion for Preliminary Injunction (Docket No. 2),

the Plaintiff's Motion for Expedited Discovery and Preliminary Injunction Hearing (Docket No. 3), and the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Injunctive Relief (Docket No. 4).

## I. BACKGROUND

The Plaintiff, Robert Half International, Inc. (RHI), is a personnel placement firm **[*2]** which recruits and places temporary and permanent employees in certain specialized fields. On April 14, 1998, RHI hired the Defendant, Gregory Stenz, as a staffing manager for their Accountemps division located in their Wilmington, Delaware office. In that position, the Defendant managed existing client relationships and solicited new clients on behalf of the Plaintiff. In addition, the Defendant had access to RHI's client database which contains information on both current and prospective clients as well as RHI's candidate database which contains extensive information regarding candidates qualified to be placed by RHI.

As a condition of the Defendant's employment, he executed an Employment Agreement (Agreement) coinciding with his start date at RHI. The portions of the Agreement relevant to this dispute are the following:

> 7. Disclosure or Misuse of Confidential Information. Employee shall not, at any time during his or her employment by Employer or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information obtained while he or she was in the employ of Employer, including, **[*3]** without limitation, information with respect to the name, address, contact persons or requirements of any customer, client, applicant or employee of any of the RHI Companies (whether having to do with temporary or permanent employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information is safeguarded by the RHI companies as trade secrets . . . .

> 8. Restrictive Covenant. In view of Employee's access to confidential information and trade secrets of the RHI Companies and in consideration of the value of such property to the RHI Companies, for a period of twelve months after termination of Employee's employment with any of the RHI companies, Employee agrees that he or she shall not directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any competing executive recruiting firm, employment agency or temporary personnel service business in any part of the area encompassed within a radius of fifty (50) miles form any office of any **[*4]** of the RHI Companies in which Employee has exercised any form of supervisorial authority, during the one year period preceding termination (such offices of the RHI Companies being collectively referred to herein as "Applicable Offices"). Employee agrees that, among other things, he or she shall not during this period, directly or indirectly:

>> (a) solicit the trade or patronage of any customers of any of the Applicable Offices for himself or herself or for any other person or organization engaging in an executive recruiting firm, employment agency or temporary personnel service business; customers shall include all persons and organizations for whom any of the Applicable Offices performs or has performed services in the course of its

Get a Document - by Party Name - robert half
Case 1:07-cv-03821-RWS    Document 10-11    Filed 05/22/2007    Page 6 of 11
Page 5 of 10

business within the twelve (12) months preceding Employee's termination of employment, regardless of whether or not such customers were previously customers of Employee or of others; or

(b) solicit, induce, or attempt to induce any other employee (including any temporary employee) of any of the Applicable Offices to leave the employ of the RHI Companies to become connected in any way with, or employ or utilize any such employee in, any other [*5] executive recruiting firm, employment agency or temporary personnel service business.

. . .

10. Injunction. In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants not to compete and the related restrictive covenants set forth in Sections 7, 8 and 9 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided, that nothing herein shall [*6] be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have.

. . .

15. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal and equitable relief is sought. In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

On March 24, 2000, the Defendant resigned from RHI. Shortly thereafter, the Defendant accepted a position at another personnel placement agency named Wall Street Service (WSS) whose offices are within fifty (50) miles of the Plaintiff's Wilmington office. Since joining WSS, the Defendant has contacted one of the Plaintiff's former clients whom the Defendant claims is a personal friend. The Defendant asserts that he did not attempt to take any client's business away from RHI.

On May 19, 2000, the Plaintiff filed suit against the Defendant alleging breach of contract, unfair competition: misappropriation of trade secrets, and tortious interference with prospective business advantage. The matter [*7] was filed in this Court on the basis of diversity of citizenship with the Plaintiff being a Delaware Corporation and the Defendant being a resident of Pennsylvania. Also on May 19, 2000, the Plaintiff filed the motions for injunctive relief which are the subject of this memorandum.

Get a Document - by Party Name - robert half
Page 6 of 10
Case 1:07-cv-03821-RWS    Document 10-11    Filed 05/22/2007    Page 7 of 11

## II. DISCUSSION

*HN1*Although this diversity action is based upon state-created rights, a motion for a preliminary injunction brought in federal court is governed by the federal standard for injunctive relief. See <u>Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989).</u> *HN2*Injunctive relief is considered an "'extraordinary remedy, which should be granted only in limited circumstances.'" <u>Id. at 800</u> (quoting <u>Frank's GMC Truck Center, Inc. v. G.M.C., 847 F.2d 100, 102 (3d Cir. 1988).</u> *HN3*To determine if those circumstances exist, the Court must carefully "weigh four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and **[*8]** (4) whether granting preliminary relief will be in the public interest." <u>SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985);</u> see also <u>Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).</u> *HN4*The first two factors, a probability of success on the merits and a showing of irreparable harm, are considered fundamental and the Court may not issue an injunction unless both of these factors are present. See <u>McKeesport Hosp. v. Accreditation Council, 24 F.3d 519, 523 (3d Cir. 1994).</u> Each of the Plaintiff's claims must be analyzed within this framework.

### A. Breach Of Contract

The Plaintiff's first claim for relief stems from the specific language in the employment agreement. The parties' Agreement states that it is to be interpreted "in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal and equitable relief is sought." *HN5*While the standard for issuance of a preliminary injunction is federal, determining if the Plaintiff has a reasonable likelihood of success on the merits or will suffer irreparable harm requires application of **[*9]** the relevant state law to the underlying facts. See <u>SI Handling Sys., Inc., 753 F.2d at 1255.</u> In a federal court exercising diversity jurisdiction, the applicable state law will be determined by the forum state's choice of law rules. See <u>Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994).</u> *HN6*In Pennsylvania, the courts will enforce a choice of law provision in a contract executed by the parties. See Id. Therefore, in accordance with the language in the Agreement and the intent of the parties, this Court will interpret the breach of contract claims under Delaware law.

### 1. Substantial Likelihood Of Success On The Merits

The Plaintiff's probability of success on its breach of contract claim hinges upon the enforceability of the restrictive covenant in the Agreement. If the restrictive covenant would not be specifically enforced, then there is no likelihood of success on the merits for the purposes of obtaining a preliminary injunction. *HN7*In Delaware, covenants not to compete in employment contracts are subject to heightened scrutiny. See <u>Faw, Casson & Co. v. Cranston, 375 A.2d 463, 465 (1977).</u>

*HN8*The Delaware courts **[*10]** analyze the enforceability of a restrictive covenant using a two-pronged analysis. See <u>McCann Surveyors, Inc. v. Evans, 611 A.2d 1, 3 (1987).</u> The court must begin by ensuring that the formal elements of contract were satisfied, the geographic and time limitations in the covenant were reasonable, and that the restriction fosters a legitimate economic interest of the employer. Id. Once the covenant's validity is established, the court must determine if the covenant is specifically enforceable under the facts presented. Id.

*HN9*When determining if the specific facts presented warrant enforcing a valid covenant, the Delaware courts have balanced the interest of the employer against the consequences of

specific enforcement to the employee. See Take-A-Break Coffee Serv., Inc. v. Grose, 1990 Del. Ch. LEXIS 62, No. CIV.A.11217, 1990 WL 67392, at *5 (Del. Ch. May 30, 1990); LewMor, Inc. v. Fleming, 1986 Del. Ch. LEXIS 359, No. CIV.A.8355, 1986 WL 1244, at *2 (Del. Ch. Jan. 29, 1986). This balancing of harms is an essential factor in determining whether a covenant not to compete will be specifically enforced particularly in the employment context where the financial harm that could come **[*11]** to an employee seeking to support himself and his family weighs against mechanically enforcing restrictive covenants. See McCann Surveyors, Inc., 611 A.2d at 4; Sapp v. Casey Employment Serv., Inc., 1989 Del. Ch. LEXIS 150, No. CIV.A.10781, 1989 WL 133628, at *4 (Del. Ch. Nov. 3, 1989). ᴴᴺ¹⁰⊤As opposed to mechanical enforcement, the Delaware courts have found that a restrictive covenant should be enforced to the extent that it is reasonable to enforce it. See Faw, Casson & Co., 375 A.2d at 467.

The employment agreement at issue attempts to restrict the Defendant in several ways: (1) the Defendant shall not take a position in any competing personnel placement agency within fifty miles of the Plaintiff's office for one year after the termination of the Defendant's employment, (2) the Defendant shall not make use of any confidential information obtained through his employment with the Plaintiff, (3) the Defendant shall not solicit any former clients from his employment with the Plaintiff, and (4) the Defendant shall not attempt to induce any other employee of the Plaintiff to leave the Plaintiff and become associated with the Defendant's new company. These four restrictions **[*12]** can be further consolidated into two categories for purposes of the Court's analysis: (1) restrictions on the Defendant's use of information or contacts that he obtained through his employment with the Plaintiff; and (2) a restriction on his ability to work for a competing agency regardless of whether he uses information that he obtained from his employment with the Plaintiff.

These two categories of restrictions are handled differently by Delaware law. The Delaware courts have often enforced those restrictions in category one because the employee, in that instance, has obtained valuable information or made valuable contacts which will give them a competitive advantage that they otherwise might not have had. See Take-A-Break Coffee Serv., Inc., 1990 Del. Ch. LEXIS 62, 1990 WL 67392, at *5 (specifically enforcing covenant not to solicit prospects or customers of former employer); Knowles-Zeswitz Music, Inc. v. Cara, 260 A.2d 171, 175 (Del. Ch. 1969) (enforcing covenant to the extent that employee was former employer's sole sales representative in that area); but see Bernard Personnel Consultants, Inc. v. Mazarella, 1990 Del. Ch. LEXIS 137, No. CIV.A.11660, 1990 WL 124969, at *4 **[*13]** (Del. Ch. Aug. 28, 1990) (claiming the information is less clearly protectible because in the personnel placement industry the contact information is publicly available, there is no practice of exclusive relationships, and disclosure would not cause significant injury to the former employer). In category two, however, the balancing of the harms weighs substantially in favor of not enforcing the covenant. It is assumed that without using confidential information, the employee is no more effective than an ordinary competitor and causes little damage to the former employer. Bernard Personnel Consultants, Inc., 1990 Del. Ch. LEXIS 137, 1990 WL 124969, at *4. Meanwhile, if the injunction is issued, the employee is forced to resign their new employment and suffers a significant harm. See Take-A-Break Coffee Serv., Inc., 1990 Del. Ch. LEXIS 62, 1990 WL 67392, at *5 (specifically enforcing prohibition against employee working for competitor is a draconian remedy); Bernard Personnel Consultants, Inc., 1990 Del. Ch. LEXIS 137, 1990 WL 124969, at *4 (the impact on the employee of granting the injunction would be grave); LewMor, Inc., 1986 Del. Ch. LEXIS 359, 1986 WL 1244, at *3 (restrictive covenant not enforceable when the **[*14]** employee is not using proprietary information of the former employer in his new employment); Knowles-Zeswitz Music, Inc., 260 A.2d at 175 (not enforcing covenant prohibiting employee from working for competing company for two years after termination). For that reason, courts have declined to enforce these otherwise valid restrictions.

Looking at the restrictions in this light, the Court must conclude that there is no reasonable likelihood that the Plaintiff will prevail in enforcing the restriction on the Defendant's ability to

work for a competing personnel agency. As a result, the standard for issuance of a preliminary injunction can not be met and the Court must deny the Plaintiff's request to enjoin the Defendant from working for a competing personnel placement agency. However, there is a reasonable likelihood that the remaining restrictions would be enforced. Therefore, the Court's analysis must continue regarding those restrictions.

## 2. Irreparable Harm

*HN11*⚓Irreparable harm is essentially "a potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight Co., 882 F.2d at 801. The harm must **[*15]** be "immediate", the mere possibility of injury at some point in the future will not suffice. See Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir. 1994). *HN12*⚓In a breach of contract action, loss of income will not be sufficient to show irreparable harm, but the Court will consider "'(a) the difficulty of proving damages with reasonable certainty, (b) the difficulty of procuring a suitable substitute performance by means of money awarded as damages, and (c) the likelihood that an award of damages could not be collected.'" Id. 882 F.2d at 802 (quoting Restatement (Second) of Contracts § 360 (1981)).

Initially, the Court will address the Plaintiff's assertion that the irreparable harm element of the preliminary injunction standard is satisfied simply by the stipulation to that effect in the Agreement. The Plaintiff points to several Delaware cases involving contractual stipulations in complex merger transactions in support of this view. See True North Communications Inc. v. Publicis S.A., 711 A.2d 34, 44 (Del. Ch. 1997) (finding irreparable harm when contract contained stipulation); Vitalink Pharmacy Services, Inc. v. Grancare, Inc., 1997 Del. Ch. LEXIS 116, at *32, No. 15744 **[*16]** (Del. Ch. Aug. 7, 1997) (stipulation alone satisfies irreparable harm). However, under more rigidly scrutinized employment contracts, the Delaware courts have been more reluctant to apply such a stipulation. See Bernard Personnel Consultants, Inc., 1990 Del. Ch. LEXIS 137, 1990 WL 124969, at *1-5 (not finding irreparable harm when personnel agency employment contract contained stipulation). Therefore, the Court will look at the facts of this case and independently evaluate if the Plaintiff will suffer irreparable harm if injunctive relief is not granted.

In the instant case, the remaining restrictions surround the Defendant's use of information or contacts obtained while working for the Plaintiff. "Reasonable protection for an owner of a decentralized business is necessary because the former employee has had an opportunity to develop economically valuable relationships with his former employer's customers." Knowles-Zeswitz Music, Inc., 260 A.2d at 175. Here, if the Defendant were allowed to use his contacts with former clients or information from the Plaintiff's databases to enhance his business, it would essentially be appropriation of the Plaintiff's goodwill. **[*17]** See Id. The same can be said of the Defendant's use of information obtained through the Plaintiff's client and candidate databases.

This Court concludes that the loss caused by the Defendant's appropriation of the Plaintiff's goodwill would result in harm which is immediate and extremely difficult to quantify. The continual solicitation of the Plaintiff's clients by the Defendant will make it more difficult for the Plaintiff's new employee to form a working relationship with the contact personnel at their various clients' offices. This will have long term implications on the Plaintiff's ability to network with those clients and obtain business from them. The Defendant will have the "inside track" to these clients simply by virtue of his previous position with the Plaintiff. In addition, once the Defendant has disclosed and used confidential information obtained from the Plaintiff's databases, there is no way it can be retracted. The nature of the business makes the resulting damages difficult to prove with reasonable certainty. Therefore, the Court finds that the Plaintiff will suffer irreparable harm if the Defendant is not enjoined from soliciting former clients or using confidential **[*18]** information obtained through his employment with the Plaintiff.

### 3. The Public Interest And Harm To The Defendant

The two essential elements for enjoining the solicitation of former clients and the use of confidential information have been met. Therefore, the Court must consider the resulting harm to the Defendant if the injunction is issued and whether it is in the public interest to grant the requested relief. In his affidavit, the Defendant has stated that he has not been soliciting business from his former clients, has not used confidential information that he obtained from his employment with the Plaintiff, and that his new employer targets a different clientele than the Plaintiff. Therefore, any restriction on soliciting former clients and using confidential information should not impact on the Defendant's ability to be successful in their new employment. In addition, the Court cannot find and the Defendant does not point to any reason why the public interest is not served by enjoining the Defendant from utilizing the information and contacts obtained through their employment with the Plaintiff. As a result, all four factors weigh in favor of enjoining the Defendant. **[*19]**

### B. Unfair Competition: Misappropriation Of Trade Secrets And Tortious Interference With Prospective Business Advantage

The Court does not see a need to address the Plaintiff's request for injunctive relief based upon their unfair competition and tortious interference claims. *HN13* To prevail on both of these claims, the Plaintiff must show either the communication of a trade secret or an attempt by the Defendant to prevent a business relationship of the Plaintiff's from occurring. See Wilmington Trust Co. v. Consistent Asset Mgmt. Co., 1987 Del. Ch. LEXIS 409, at *8-9, No. 8867 (Del. Ch. March 18, 1987); DeBonaventura v. Nationwide Mut. Ins. Co., 419 A.2d 942, 947 (Del. Ch. 1980). Because the Court is enjoining the Defendant from soliciting former clients and from using information obtained from the client and customer databases of the Plaintiff, there is no risk to the Plaintiff that trade secrets will be communicated or business relationships will be interfered with. Essentially, the same behavior need not be enjoined twice. Therefore, it is unnecessary to address these issues at this time.

### III. CONCLUSION

For the foregoing reasons, **[*20]** the Court finds that based upon the Plaintiff's breach of contract claim, the Court will enjoin the Defendant from making use of any confidential information obtained through his employment with the Plaintiff, from soliciting any former clients and candidates that have done business with the Plaintiff within the twelve months prior to the Defendant's termination of his employment, and from attempting to induce any other employee of the Plaintiff to leave the Plaintiff and become associated with the Defendant's new company. The Court will not, however, enjoin the Defendant from taking a position in a competing personnel placement agency.

An appropriate Order follows.

### ORDER

AND NOW, this 15th day of November, 2000, upon consideration of the Plaintiff's Motion for Preliminary Injunction (Docket No. 2), the Plaintiff's Motion for Expedited Discovery and Preliminary Injunction Hearing (Docket No. 3), and the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Injunctive Relief (Docket No. 4), IT IS HEREBY ORDERED that the Plaintiff's Motion for Expedited Discovery and Preliminary Injunction Hearing is **DENIED**.

IT IS HEREBY FURTHER ORDERED that the Plaintiff's **[*21]** Motion for Preliminary Injunction is **GRANTED IN PART and DENIED IN PART** as follows:

1) the Defendant **IS** enjoined from directly or indirectly soliciting any of the Plaintiff's clients or candidates for whom the Plaintiff has performed services in the course of its business within the twelve months preceding March 24, 2000;

2) the Defendant **IS** enjoined from soliciting, inducing, or attempting to induce any other of the Plaintiff's employees to leave the Plaintiff and become connected with the Defendant at any other executive recruiting firm, employment agency or temporary personnel services business;

3) the Defendant **IS** enjoined from disclosing, furnishing, or making accessible to any person, firm, corporation, or other entity, or making use of, any confidential information obtained while he or she was in the employ of the Plaintiff including information obtained through the client and candidate databases of the Plaintiff; and

4) the Defendant **IS NOT** enjoined from owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any competing **[*22]** executive recruiting firm, employment agency or temporary personnel service business.

IT IS HEREBY FURTHER ORDERED that the above described preliminary injunction shall not take effect until such time as Plaintiff posts security in the amount of $ 100 pursuant to Federal Rules of Civil Procedure 65(c) and 65.1.

BY THE COURT:

HERBERT J. HUTTON, J.

Source: Legal > / . . . / > **PA Federal District Courts** 
Terms: **name(robert half)** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Monday, May 21, 2007 - 4:48 PM EDT

**LexisNexis®** About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.