# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:COMMERCIAL DIVISION
----------------------------------------X
ROBERT HALF INTERNATIONAL INC.,

                       Plaintiff,

                                              Index No. 604050/02
    -against-

TMP WORLDWIDE INC., THOMAS MORAN,
and DEE LONN,

                       Defendants.
----------------------------------------X

**Charles Edward Ramos, J.S.C.:**

     Plaintiff Robert Half International Inc. (RHI) moves, pursuant to CPLR 6301, for a preliminary injunction and expedited discovery against two of its former employees, Thomas Moran (Moran) and Dee Lonn (Lonn), and their current employer, TMP Worldwide Inc. (TMP) (motion sequence number 001).[1] RHI seeks a preliminary injunction enjoining defendants from: (1) maintaining TMP's employment of Moran and Lonn; (2) improperly soliciting RHI's employees; (3) misappropriating RHI's confidential information and trade secrets to compete directly with RHI; (4) unfairly competing with RHI; and (5) improperly trading upon RHI's name and reputation. The defendants cross-move for leave to submit additional papers or, in the alternative, to strike plaintiff's reply affidavits (motion sequence number 002). In motion designated 003, Robert Half International ("RHI") seeks a separate preliminary injunction against TMP Worldwide ("TMP"), enjoining TMP from the use, disclosure or misappropriation of

---

[1]     RHI requests expedited discovery to enable it to proceed with its preliminary injunction motion. This request has been dealt with at a preliminary conference.

RHI's confidential, proprietary and trade secret information. This segment of the dispute is based on recent allegations involving Garrick Respress, a former RHI employee who now works in the Atlanta office of TMP, and does not appear to relate to Moran or Lonn.

All three motions are hereby consolidated for disposition.

When the defendants Moran and Lonn were first hired by RHI, both signed employment agreements which contained three restrictive covenants. The first restrictive covenant mainly prohibited the disclosure or misuse of confidential information. The covenant specifically required the employee to acknowledge that certain information was safeguarded by RHI companies as "trade secrets." The information labeled "trade secrets" included:

> any confidential information obtained while he or she was in the employment of Employer, including, without limitation, information with respect to the name, address, contact persons or requirement of any customer, client, applicant, or employee of any of the RHI Companies (whether having to do with temporary, contract or permanent employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies.

Robert Clark Affidavit in Support (Clark Affidavit), ¶ 24 & Exs. A, B. Each employee was also required to return certain items before leaving RHI, such as manuals, training kits and other property belonging to the RHI companies.

The second restrictive covenant prohibited the employee, for twelve months after termination, from managing, operating, controlling, being employed by or being connected to any

2

competing "executive recruiting firm, employment agency or temporary personnel service business in any part of the area encompassed within a radius of fifty (50) miles from any office of any of the RHI Companies in which Employee has worked, or over which Employee has exercised any form of supervisorial authority," during the one year preceding termination. Clark Affidavit, ¶ 25 & Exs. A, B. The covenant also stated that the employee agreed to refrain from: (a) soliciting any customers who received RHI's services within twelve months preceding employee's termination; or (b) soliciting, inducing, or attempting to induce any other employee to leave RHI companies to work for a competitor. Clark Affidavit, ¶ 26 & Exs. A, B.

The third covenant, regarding the wrongful use of employer's name, prohibited the former employee from indicating on any "advertising, solicitation or other business materials that he or she is or was formerly an employee of Employer, any division or subsidiary of Employer, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the court of seeking employment." Clark Affidavit, ¶ 27 & Exs. A, B.

Both Moran and Lonn left RHI and started working at TMP in September 2002. Presently, Moran is President of TMP's eResourcing, Americas Division, which provides staffing, recruitment, outsourcing, assessment, development and performance solutions across a range of skills and industry sectors. Moran works in Chicago, Illinois, allegedly a short distance from the

3

RHI office where he previously worked. Presently, Lonn is Executive Vice President of Accounting & Finance. She works from her home office in Minneapolis, Minnesota, also allegedly a short distance from the RHI office where she previously worked. However, Lonn alleges that she does not speak to any TMP employees in Minnesota and that she spends 80% of each business week traveling to other areas of the country.

With regard to motion 003, Respress was an account manager in RHI's Brandon, Fla., office from May 2002 until January 2, 2003. As an account manager, Respress was responsible for marketing and filling job orders. To fulfill these duties, he had access to RHI's computer database and information relating to clients and job orders. As was the case with the individual defendants, RHI required Respress to sign an employment agreement that prohibited him from disclosing or misusing confidential information and restricted his ability after leaving RHI to work for competitors and solicit RHI's customers or employees.

Several other former employees of RHI now work for TMP, among them Respress' former supervisor, Sandra Garrett-Hutto, who was apparently recruited by another former RHI employee after the expiration of that employee's agreement to refrain from soliciting RHI employees.

RHI commenced this action by filing a summons and complaint on November 7, 2002. The complaint sets forth causes of action for: permanent injunctive relief; breach of contract; misappropriation of trade secrets; unfair competition; tortious


interference with a contract; and violation of New York General Business Law § 360-1.

The motions seek preliminary injunctions based on: breach of contract; misappropriation of trade secrets; unfair competition; and tortious interference with a contract. RHI makes a number of claims in support of the motions. The allegations and responses include the following.

RHI claims that Moran and Lonn violated and continue to violate the non-compete covenant by working for its competitor, TMP. Both Moran and Lonn allegedly work within a short distance from the RHI offices where they previously worked. In addition, both admittedly began working for TMP before waiting twelve months after their departure from RHI. Moran started about six months later, while Lonn allegedly joined TMP within days of her resignation.

RHI alleges that Moran and Lonn also violated the non-compete covenant by assisting TMP in soliciting or attempting to solicit four RHI employees to work for TMP. See Elden E. DeJarnett, Jr. Affidavit in Support, ¶ 6; Robert Clark Reply Affidavit in Support (Clark Reply Affidavit), ¶ 7; Joseph F. Sos Affidavit in Support (Sos Affidavit), ¶¶ 4-5; Beth Mabry Affidavit in Support, ¶ 4. The four employees all worked in the accounting and finance fields.

Moran and Lonn flatly deny that they took part in soliciting or attempting to solicit RHI employees or clients. Defendants also allege that plaintiff improperly asserts new factual

5

allegations in its reply papers which were not in plaintiff's original papers. Defendants cross-move for leave to submit additional papers to respond or seek leave to strike plaintiff's reply affidavits to the extent they raise factual allegations for the first time.

RHI claims in conclusory fashion that Moran and Lonn breached their employment contracts by misappropriating trade secrets and confidential information made available to them when they worked at RHI. Although Moran and Lonn concede they had access to client and candidate databases, aside from Lonn's clarification that she only had access for Minnesota, the individual defendants allege that, during their time at RHI, they rarely accessed relevant information and had limited client contact. They do not recall relevant information and they deny discussing RHI with TMP aside from the most general terms. Moran and Lonn also argue that regardless of what they knew, the subject information would not be useful in their current positions and/or has gone stale.

RHI asserts misappropriation and disclosure has already occurred as shown by TMP's September 16, 2002 press release and TMP's website. The September 16, 2002 press release allegedly tried to capitalize on RHI's reputation by introducing Moran and Lonn as newly recruited from RHI. The press release includes specific descriptions of Moran and Lonn's work at RHI. TMP's website makes several references to Moran's relationship with RHI.

TMP's response is to point out that the information in the press release can be found in several articles of Crains Chicago Business.

RHI also generally alleges that Moran and Lonn improperly traded upon RHI's name and reputation in breach of their contracts by assisting or cooperating with the issuance of TMP's press release and website. RHI claims TMP tortiously interfered with Moran and Lonn's contract by enlisting Moran and Lonn's assistance in creating its press release and website.

Respress called the staffing services manager, Claude Buford, on January 2, 2003, to resign from RHI. After his resignation, Jennifer Boucher, the branch manager of the Brandon office, reviewed Respress' e-mail from his last month of employment. From these e-mails, RHI concludes that Respress took confidential information and that TMP, through its employees, is trying to raid RHI employees.

Boucher found that on the morning of January 2, Respress sent seven e-mails to his personal e-mail account. These seven e-mails contained information relating to four RHI clients. Boucher also found that, on the same morning, Respress canceled two job orders. Respress responds that the orders were old and that he was merely getting work in order for his successor. Boucher also found Respress' desk empty, and interprets that to mean that Respress took RHI manuals and client lists with him when he left.

Boucher also found e-mail correspondence between Respress

7

and Garrett-Hutto. In those e-mails, Garrett-Hutto asked Respress for help contacting another RHI employee, Tony Franco. Respress then sent e-mail to Franco with Garrett-Hutto's telephone number. In other correspondence, Respress discussed his performance at work and plans to move to Atlanta with his girlfriend. RHI has also heard of other contacts between TMP and RHI employees. Respress is reported to have asked one RHI employee, Holly Bond, to meet with him after she transfers to RHI's Atlanta office. Another TMP employee who used to work at RHI contacted a former RHI employee, Shawn Abbot, in January 2003. Recently, a TMP employee talked with an RHI regional manager in Florida, remarking on how "funny" it was that TMP had so many former RHI employees.

## Discussion

A preliminary injunction may be granted if the party seeking the relief can demonstrate a likelihood of success on the merits, the prospect of irreparable injury if the injunction is not issued, and a balance of equities tipping in the moving party's favor. *Doe v Axelrod*, 73 NY2d 748, 750 (1988). The party seeking the injunction must offer competent proof to establish these elements. *Faberge Intern. Inc. v Di Pino*, 109 AD2d 235, 240 (1st Dept 1985). If essential facts are disputed, the injunction will be denied. *Id.*

RHI's motions are denied because it has failed to establish any of these elements.

RHI has offered no evidence that would establish a

8

likelihood of success on the merits as to any claim asserted.

The affidavits RHI offers to support its claim are composed almost entirely of conclusory statements based on information and belief.

Movant must establish the existence of a trade secret. <u>U.S. Reins. Corp. v Humphreys</u>, 205 AD2d 187, 191-92 (1st Dept 1994). The Restatement of Torts § 757, comment b, which "defines a trade secret as a formula, pattern, device or compilation of information used in one's business which confers a competitive advantage over those in similar businesses who do not know of or use it." <u>U.S. Reins. Corp.</u>, supra. The court must consider "the amount of effort expended in developing the secret matter, the extent of measures taken to safeguard the secret, the extent to which the information is known outside the business, and the possible value of the information to competitors." <u>Id</u>. The information to be protected cannot be "readily ascertainable." <u>Atmospherics v Hansen</u>, 269 AD2d 343 (2d Dept 2000); <u>H&R Recruiters, Inc. v Kirkpatrick</u>, 243 AD2d 680, 681 (2d Dept 1997). There is no need for the trade secret to be substantial; but it must be meaningful in that the information offers defendant an unfair advantage from its possession. <u>Greenwich Mills Co. v Barrie House Coffee Co.</u>, 91 AD2d 398, 405 (2d Dept 1983).

Although while at RHI, Moran, Lonn and Respress were given access to information, there is evidence that some of this information was not safeguarded and publicly available and it is far from clear what information, if any, qualifies as trade

9

secrets.

RHI provides insufficient evidence that the defendants breached the non-solicitation part of the restrictive covenant not to compete. While Moran was still at RHI, he did interview a potential employee TMP hired. Although discovery may reveal a connection, these facts alone do not establish a likelihood of success.

RHI has not met its burden in establishing a likelihood of success in proving defendants breached the restrictive covenant not to disclose trade secrets and confidential information. Moran and Lonn do not dispute the fact that they had access to RHI's client and candidate databases, but more than this is required. The mere risk of unfair competition does not warrant the granting of a preliminary injunction. Such an application should await discovered facts.

The equities also do not favor granting an injunction. There is no proof of misappropriation and disclosure of trade secrets and confidential information sufficient to shift the burden to the individual defendants.

RHI also fails to establish the likelihood of success in proving Moran and Lonn breached the third covenant prohibiting misuse of RHI's name. The third covenant, as stated above, prohibits Moran and Lonn from indicating on any "advertising, solicitation or other business materials that he or she is or was formerly an employee of Employer, any division or subsidiary of Employer, or any of the RHI Companies except in the bona fide

10

submission of resumes and the filling out of applications in the court of seeking employment." Clark Affidavit, ¶ 27 & Exs. A, B. RHI fails to demonstrate how Moran and Loran knew that RHI's name would be used before the issuance of the TMP press release or the posting on the website.

To succeed on a claim for misappropriation of trade secrets under New York Law, plaintiff must demonstrate (1) possession of a trade secret and (2) defendants use of trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery through improper means. Tactica Int'l, Inc. v Atlantic Horizon Int'l Inc., 154 F Supp 2d 586, 606 (SD NY 2001). As stated above, this Court is unable to conclude on this record that trade secrets existed or that the individual defendants wrongfully used such information. RHI fails to prove likelihood of success in establishing misappropriation. There is also no evidence to demonstrate that the relevant information in TMP's September 16, 2002 press release came from defendants.

A claim of unfair competition will lie where a former employee misappropriates and exploits confidential information belonging to her former employer in abuse of her relationship of trust. See Comprehensive Community Dev. Corp. v Lehach, 223 AD2d 399 (1st Dept 1996). As previously stated, RHI has not shown a likelihood of success in establishing a misappropriation of confidential information.

RHI alleges TMP continues to tortiously interfere with Moran and Lonn's employment contracts by (a) hiring Moran and Lonn

11

while knowing their employment agreements prohibited competition and (b) soliciting or attempting to solicit additional RHI employees. To prove tortious interference with contracts under New York law, RHI must show: (1) the existence of a contract between itself and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional procurement of the third party to breach contract without justification; (4) actual breach; and (5) damages. Lama Holding Co. v Smith Barney Inc., 88 NY2d 413, 425 (1996). The evidence in the record does not yet support such findings.

RHI's motion 001 was fully briefed and submitted on December 24, 2002. On January 16, 2003, defendants attempted to provide an informal submission in opposition to the court. It is undisputed that the court refused to accept defendants' submission and returned it unopened. Michael S. Gugig Affirmation in Support (Gugig Affirmation), ¶ 8 n 1; Gary H. Glaser Affidavit in Opposition, ¶ 9.

TMP argues that the court should grant the present motion 002 for leave to submit or in the alternative grant its motion to strike certain factual allegations raised in RHI's reply papers. TMP asserts RHI's original papers made no allegations as to Lonn soliciting former RHI employees to join TMP and accuses RHI of "procedural gamesmanship" by unfairly identifying "for the first time four former RHI employees who it erroneously claims Moran and/or Lonn solicited to join TMP." Gugig Affirmation, ¶ 6. After reading the defendants' papers submitted on its motion for

12

leave to file sur-reply papers in opposition, the court finds nothing to justify going outside the usual practice of following Rule 19 of the Commercial Division. In light of this decision, it is sufficient that Moran and Lonn submitted affidavits stating they had not solicited other RHI employees to join TMP. RHI's reply papers may not have been appropriate, but the plaintiff has not yet carried the day. Thus, defendants' cross-motion is also denied.

With regard to Respress, the most concrete documentation offered, the Respress e-mail, fails to establish the wrongdoing RHI asserts. Some of the e-mail is simply an exchange between Respress and his girlfriend relating to Respress' success at work and the couple's planned move. Another exchange, between Respress and another RHI employee, simply provides the phone number of a former colleague. The e-mail billed as the most significant, that relating to RHI customers, includes information that could arguably be considered a trade secret but does not clearly rise to that level, as RHI asserts. But the greatest obstacle to RHI's success on any of these claims is the complete lack of evidence that TMP has obtained any information from Respress or is using any confidential information to RHI's detriment. Even if the e-mails relating to RHI's clients constitute a misappropriation of confidential information, the only person RHI can show had access to that information is Respress, a nonparty who, as a Florida resident with no New York contacts, is outside the jurisdiction of this court.

13

The facts of this case are sharply disputed, making a showing of likelihood of success virtually impossible. Nearly every assertion RHI makes in its papers, TMP disagrees with in its own papers. The parties disagree over whether former RHI employees were involved in TMP's recruiting of Respress. They also disagree over recruiting of other employees, what information Respress might have taken with him when he left, the content of Respress' conversation with his supervisor when he resigned, the inferences to be drawn from e-mail messages, TMP's involvement in directing recruiting and solicitation efforts and essentially every other fact related to RHI's claims. An injunction should not be granted unless the moving party can establish a clear right to the remedy based on the law and the undisputed facts of the case. *First Nat. Bank of Downsville v Highland Hardwoods*, 98 AD2d 924, 926 (3d Dept 1983). Further, "the burden of showing such an undisputed right rests upon the movant." *Id.* See also, *Brand v Bartlett*, 52 AD2d 272 (3d Dep't 1976). RHI has failed to meet this burden on both of its motions.

In seeking a preliminary injunction, the burden of proof is on the plaintiff to show factually and convincingly imminent irreparable harm if the injunction is not granted. *Armbruster v Gipp*, 103 AD2d 1014 (4th Dept 1984). RHI has failed to show that it has suffered any damages or that it is likely to be harmed in any way if an injunction is not issued. Mere conclusory statements that harm is imminent are not enough to satisfy the

14

standard. *Niagara Falls Power Co. v White*, 292 NY 472, 481 (1944).

In *Arnold K. Davis & Co., Inc. v Ludemann*, 160 AD2d 614 (1st Dep't 1990), the court said an insurance broker had failed to establish irreparable harm where a former employee had contacted 44 of more than 500 accounts the employee had dealt with. Here, RHI offers no evidence that any of its clients have been contacted by Respress, the individual defendants or any other TMP employee. TMP, by contrast, has offered affidavits showing that clients have not been solicited. RHI's claims of TMP's raiding of RHI employees are similarly unsubstantiated. For every assertion that an RHI employee was lured away in violation of a restrictive covenant in an employment agreement, TMP offers a response countering those assertions. These kinds of disputed facts make a factual and convincing showing of imminent irreparable harm impossible.

Further, an injunction would be an improper remedy where no more than money damages is at issue. Irreparable injury has been defined as damages that cannot be adequately compensated by money or damages that cannot be sufficiently measured. *McLaughlin, Piven, Vogel, Inc. v W.J. Nolan & Co.*, 114 AD2d 165 (2nd Dep't 1986). Even if RHI had established that it had lost clients to TMP due to misappropriation of its confidential information, the value of that loss could be determined and money damages awarded. In that case, an injunction would be the wrong remedy.

A two-part test is applied in balancing equities: (1) "is

15

the injunction proposed necessary and reasonable for the protection of the plaintiffs' property and good will" and (2) "is it unreasonable, unjust, or oppressive to defendant?" *Foster v White*, 248 AD 451, 453 (4th Dep't 1936).

Here, RHI has offered no evidence to show it has suffered harm or is likely to, making an injunction to protect RHI property unreasonable. Nor has RHI established any wrongdoing on the part of TMP. To enjoin TMP when it has not been shown to cause harm would be an unjust result. The only possible probability of harm to RHI is speculative, arising only if Respress or the individual defendants seek to solicit RHI clients. An injunction would be redundant and, in the case of Respress, impossible, as he is outside this court's jurisdiction.

As RHI has not established by even the slightest evidence that TMP has obtained or is using confidential RHI information, an injunction against TMP is unwarranted.

Accordingly, it is

ORDERED, that Robert Half International's motions for preliminary injunctions, and the defendants' cross-motion, are denied.

Dated: June 12, 2003

_____
J.S.C.
HON. CHARLES E. RAMOS

FILED
JUN 18 2003
COUNTY NEW YORK