UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT HALF INTERNATIONAL INC.,

    Plaintiff,

-against-

DAVID WOJDYL; and THE EXECU/SEARCH GROUP, INC.,

    Defendants.

Civ. A. No. 07-CIV-3821(RWS)

## AFFIDAVIT OF DAVID G. WOJDYL

DAVID G. WOJDYL, being duly sworn, deposes and says under the penalty of perjury:

1. I am an individual defendant in the above-captioned action. Unless otherwise stated, this affidavit is based on my own personal knowledge and information.

2. RHI is an international corporation with approximately 400 offices, and last year it had four (4) billion dollars in revenue. Regardless of its success (its web page asserts that it is largest placement firm in the world), after September 11, 2001, its permanent placement business for financial service industry personnel in Manhattan precipitously declined. While RHI recruiters at times placed financial services job candidates on a permanent basis, it did not have a department solely dedicated to such placements in Manhattan.

3. In or about January 2006, RHI apparently decided to compete more aggressively for this business. To this end, it established its financial services group

("FSG") in Manhattan, which was to be dedicated to making permanent placements in the financial services sector.

4. Coincidentally, I was looking for a job at this time. I was 33 years old at the time and living in a friend's apartment in Manhattan (I now rent an apartment in Weehawken, New Jersey). After my graduation from college, I worked for a stone yard, a family relative's reality company, my parent's art and framing gallery and several other jobs. Thereafter, I worked as a securities trader for eight years after obtaining my National Association of Securities Dealers ("NASD") licenses. I had been laid off eight months previously, and I had been unsuccessful in obtaining a new position as a securities trader.

5. My decision to join RHI was my introduction to the permanent placement business. Although I had no recruiting experience, RHI presumably hired me because of my prior experience (and potential contacts) as a securities trader. RHI provided me with an impressive job title, Recruiting Manager. Although labeled a "manager," I did not manage any RHI employees and none reported to me.

6. RHI's Keith Feinberg ("Feinberg"), the Director of Permanent Placement, convinced me to join RHI by telling me that RHI would provide me with training and adequate support so that I could succeed in this new endeavor. Feinberg also told me that RHI would be hiring a manager to run the new department. In fact, two days after I joined RHI, John Pierson ("Pierson"), joined RHI as Division Director for the FSG in Manhattan. RHI also had hired recruiters Rocco Tufo (hired Fall 2005) and David Diller (hired approximately June 2006) so that by the Summer of 2006 RHI's new FSG department had four employees.

7. All recruiters at RHI including myself were, upon information and belief, required to execute the Employment Agreement (attached as Exhibit A to RHI's Complaint), which contained various restrictions on the recruiter's post-employment activities. I was presented with this seven and one-half page single spaced Employment Agreement on my first day of work for RHI. *See* Complaint, Exhibit A. I neither negotiated the Employment Agreement nor was I in a position to do so.

8. As my employment with RHI progressed, I discovered the training and support that was promised (and was one of the reasons why I joined RHI) never substantially materialized. While Feinberg had told me that he anticipated having twelve permanent placement recruiters in the FSG department, at its largest, RHI had five permanent placement recruiters. However, two recruiters quickly resigned after they were hired -- one resigned after one week of employment and the other after two weeks.

9. Also, Pierson's employment with RHI was short-lived. Pierson left RHI sometime on or about July 2006. Thereafter, he was not replaced so the FSG department was without a direct manager for the eight (8) months prior to my eventual resignation.

10. Of the three financial services permanent placement recruiters who remained with RHI, I was the worst performer. Pursuant to the Employment Agreement, I was paid a monthly draw of $4,000. RHI paid me this $4,000 per month or 30% of the all revenue I generated (and RHI actually collected), whichever amount was greater. However, during my entire employment with RHI, my commissions never exceeded my draw. Attached hereto as Exhibit A is a true and correct copy of my W-2 form for 2006.

11. During my employment with RHI, I made gross billings of approximately $150,000. Moreover, of the 10 to 12 placements I made last year with RHI, I actually had to split the credit for these placements with other recruiters about eight times.

12. In the months proceeding my resignation, I repeatedly failed to meet RHI's expectations. In December 2006, Feinberg advised me that I needed to make significant improvements, but I failed to make a single placement in January 2007. It was not for lack of trying. Throughout my RHI employment, I often stayed in the office late or came in on weekends, and I was conscientious in following up on job orders and attempting to make placements. Regardless of these efforts, my billings failed to improve and throughout the early months of 2007, Feinberg repeatedly warned me about my poor production. Not surprisingly, I was very concerned that RHI might terminate my employment.

## Wojdyl's Resignation and Hiring by Execu/Search

13. By March 2007, I was motivated to leave RHI. I was interested in working with a permanent placement firm that, unlike RHI, had a larger presence in the financial services sector and would provide me with the training and resources I needed to succeed as a recruiter.

14. On or about March 19, 2007, I meet with representatives of Execu/Search.

15. I was interviewed by Edward Fleischman, Gray Grossman and Mitchell Peskin all of whom are Execu/Search partners. Each of these Execu/Search partners advised me that should I be hired, I was not to take any information, documents or other

property whatsoever from RHI. I was essentially told I should arrive at Execu/Search with "an empty briefcase."

16. I received and accepted a job offer from Execu/Search on Friday, March 23, 2007. Rather than immediately starting work as recruiter, Execu/Search put me in its two week training course to educate me on how to succeed.

17. In addition to the warnings Execu/Search provided me during the interview process, Execu/Search required me, as a condition of Execu/Search employment, to execute a March 23, 2007 offer letter which expressly provided that I was prohibited from misappropriating or exploiting RHI"s confidential and proprietary information.

RHI Asserts Wojdyl Misappropriated Its Property But Takes No Action

18. Regardless of Execu/Search's warnings and the terms of its offer letter, I erred by taking some of RHI's property in advance of my resignation. I no longer have any of RHI's alleged confidential and proprietary information.

19. As noted, I resigned from RHI nearly two months ago on March 26, 2007. Four weeks ago, on April 23, 2007, I received a telephone call from Feinberg. Feinberg stated that he knew I was working as a recruiter, that he knew I had taken documents from RHI prior to my resignation, and that RHI's lawyers were "licking their chops" to aggressively pursue a lawsuit.

20. I note that for seven weeks after my accepting employment with Execu/Search, I did not make a single job placement nor did I assist any Execu/Search employee in doing so.

**Imposition of the Proposed Preliminary Injunction**
**<u>Will Cause Me Tremendous Financial Hardship</u>**

21. If the Court should issue the proposed preliminary injunction, I shall be financially devastated. As a result of the TRO, I am now prevented from working in my chosen profession anywhere in the vicinity of where I live. The timing could not have been worse. While I might have been previously been able to fall-back to my prior career as a securities trader, my securities trader licenses (Series 7, 24 and 63) expire at the end of this month and cannot be renewed unless I am employed with a registered broker/dealer.

22. It is highly unlikely that I can find another job in the next eight (8) days as a securities trader, which means that should the Court issue the preliminary injunction requested by RHI, I will be in the unenviable position of retaking all my licensing exams again (which will take approximately six months, assuming I pass) to restart my former career.

23. For the reasons set forth above and the accompanying memorandum of law, I respectfully request that the Court deny RHI's request for a preliminary injunction, vacate the existing TRO and deny RHI's request for expedited discovery.

_____
DAVID G. WOJDYL

Sworn to before me on this 21st
day of May, 2007

_____
Notary Public

GREGORY B. REILLY III
Notary Public, State of New York
No. 02RE5030138
Qualified in New York County
Commission Expires 08/16/2010

```
                2006                                    44519.31         5960.71
                                                        44519.31         2760.20
ROBERT HALF INTERNATIONAL, INC.                         44519.31          645.53
5720 STONERIDGE DRIVE
SUITE 3
PLEASANTON CA 94588                                            C           14.08

                                    94-1648752      NYSDI      28.60
DAVID G WOJDYL
321 E 84TH ST APT 4R
NEW YORK NY 10028


   NY 941648752 6        44519.31        2252.57     44519.31         1339.50    NYC
```

```
                2006                                    44519.31         5960.71
                                                        44519.31         2760.20
ROBERT HALF INTERNATIONAL, INC.                         44519.31          645.53
5720 STONERIDGE DRIVE
SUITE 3
PLEASANTON CA 94588                                            C           14.08

                                    94-1648752      NYSDI      28.60
DAVID G WOJDYL
321 E 84TH ST APT 4R
NEW YORK NY 10028


   NY 941648752 6        44519.31        2252.57     44519.31         1339.50    NYC
```

```
                2006                                    44519.31         5960.71
                                                        44519.31         2760.20
ROBERT HALF INTERNATIONAL, INC.                         44519.31          645.53
5720 STONERIDGE DRIVE
SUITE 3
PLEASANTON CA 94588                                            C           14.08

                                    94-1648752      NYSDI      28.60
DAVID G WOJDYL
321 E 84TH ST APT 4R
NEW YORK NY 10028


   NY 941648752 6        44519.31        2252.57     44519.31         1339.50    NYC
```

```
                2006                                    44519.31         5960.71
                                                        44519.31         2760.20
ROBERT HALF INTERNATIONAL, INC.                         44519.31          645.53
5720 STONERIDGE DRIVE
SUITE 3
PLEASANTON CA 94588                                            C           14.08

                                    94-1648752      NYSDI      28.60
DAVID G WOJDYL
321 E 84TH ST APT 4R
NEW YORK NY 10028


   NY 941648752 6        44519.31        2252.57     44519.31         1339.50    NYC
```