UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT HALF INTERNATIONAL INC.,                    07-CV-3821 (RWS)

        Plaintiff,

    -against-

DAVID WOJDYL and THE EXECU/SEARCH
GROUP, INC.,

        Defendants.

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**LITTLER MENDELSON, P.C.**
**Attorneys for Defendants**
**885 Third Avenue, 16th Floor**
**New York, New York 10022**
**(212) 583-9600**

*Of Counsel:*
    A. Michael Weber, Esq.
    Gregory B. Reilly, Esq.

This memorandum of law is submitted in support of the motion of Defendants, David Wojdyl ("Wojdyl") and The Execu/Search Group, Inc. ("Execu/Search") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the Complaint in its entirety for lack of subject matter jurisdiction.

## PRELIMINARY STATEMENT

This is an action for a temporary restraining order, preliminary injunction, permanent injunction, and *unspecified* monetary damages against Defendants for alleged breach of contract, misappropriation of trade secrets, breach of the duty of loyalty, conversion and unfair competition and tortuous interference with contractual relations. *See* Complaint, ¶ 1.

As shown below, Defendants are entitled to judgment dismissing the Complaint of Plaintiff Robert Half International, Inc. ("RHI") in its entirety because RHI cannot meet the $75,000 federal diversity jurisdictional threshold in order for this Court to have subject matter jurisdiction. The salient facts are set forth in the accompanying declarations of David Wojdyl ("Wojdyl Aff.") and Edward Fleischman ("Fleischman Decl."), sworn to on May 21, 2007.

# ARGUMENT

## POINT I

## THE CONTROLLING LEGAL STANDARDS

Defendants make this motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The district courts have jurisdiction only over civil diversity suits "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332 (2005). The test for determining whether a plaintiff meets the jurisdictional amount, established long ago by the Supreme Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), is as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.

*Id.*, at 288-89 (emphasis added).

As this Court stated in Correspondent Services Corp. v. JVW Investment, Ltd., et al., 99 Civ. 8934, at *17 (S.D.N.Y. Sept. 29, 2004),1 "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation" (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).

The seminal Second Circuit case on calculating the amount of damages in an action for unfair competition is *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82 (2d Cir. 1991). In *A.F.A. Tours*, the Court articulated four methods by which a plaintiff can make its necessary showing of threshold damages. The burden of proving damages with reasonable certainty rests *at all times*

---

[1]     Unpublished cases are attached to the appendix of this memorandum.

*with the plaintiff. See id.*, at 88; *Yentsch v. Texaco, Inc.,* 630 F.2d 46, 59 n. 19 (2d Cir. 1980).

The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by:

- The plaintiff's losses, *see e.g., Timely Prods. Corp. v. Arron,* 523 F.2d 288, 304 (2d Cir. 1975); or

- The profits unjustly received by the defendant, *see e.g., Electro-Miniatures Corp. v. Wendon Co.,* 771 F.2d 23, 27 (2d Cir. 1985); and

- If punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied. *A.F.A. Tours,* 937 F.2d, at 87; and

- Where a plaintiff seeks injunctive relief, the court may look not only at past losses but also at potential harm. *Id.*

In *Correspondence Serv. Corp.,* this Court was able to determine that the plaintiff failed to meet the jurisdictional threshold because the object of the "actual controversy" had no value. *Correspondence Serv. Corp.,* 99 Civ. 8934, at *19. The same result applies to the case at bar. As set forth fully below: (1) Plaintiff has made no showing of actual loss due to Defendants' alleged conduct; (2) Execu/Search has made no profit as a result of Wojdyl's alleged conduct; (3) Plaintiff cannot meet the high standard in order to be entitled to punitive damages; and (4) there is no potential for future harm to RHI. Accordingly, the Court should dismiss this lawsuit pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## POINT II

### PLAINTIFF CANNOT MEET THE $75,000 THRESHOLD TO EVOKE THE JURISDICTION OF THIS COURT AND ACCORDINGLY THE COMPLAINT MUST BE DISMISSED

**A.    PLAINTIFF HAS MADE NO SHOWING OF ACTUAL MONETARY LOSS DUE TO DEFENDANTS' ALLEGED CONDUCT.**

RHI alleges at paragraph 8 of the Complaint that this Court has diversity jurisdiction on the basis of diversity of citizenship and that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* Complaint, ¶ 8. However, the RHI's pleadings are completely bare of alleged facts showing that the monetary threshold has been met. Indeed, nowhere in the Complaint does RHI set forth the amount of actual monetary loss that RHI has suffered to date as a result of Defendants' conduct.

RHI merely alleges that it is personally aware that Wojdyl contacted two RHI clients and one candidate in the seven weeks since his resignation from RHI. *See* Complaint, at ¶ 48. RHI does not state what discussions occurred between Wojdyl and these parties or how its alleged confidential and proprietary information was somehow exploited by Wojdyl making these contacts. Moreover, RHI does not state the amount of monetary loss, if any, that occurred as a result. Without more, RHI has failed to demonstrate that it has suffered any actual monetary loss as a result of Wojdyl's conduct. Accordingly, RHI cannot rely on actual loss to RHI to meet the $75,000 jurisdictional threshold.

**B.    EXECU/SEARCH HAS MADE NO PROFIT AS A RESULT OF WOJDYL'S CONDUCT.**

RHI has also failed to show that Execu/Search has profited from Defendants' alleged conduct. Wojdyl resigned from RHI nearly two months ago on March 26, 2007. *See* Complaint, ¶ 41. Even though RHI now alleges that it is suffering harm, in the seven weeks after his resignation Wojdyl neither made a single job placement nor did he assist any Execu/Search employee in doing so. Fleischman Decl., ¶20; Wojdyl Aff., ¶20.

In sum, even though RHI is seeking monetary damages in this matter, it has made no showing of profit on the part of Execu/Search as a result of Defendants' alleged misconduct. Indeed, there is none. Accordingly, Plaintiff should not be permitted to rely on theoretical lost

profits in attempting to meet the $75,000 jurisdictional threshold.

## C.    PLAINTIFF CANNOT MEET THE HIGH STANDARD IN ORDER TO BE ENTITLED TO PUNITIVE DAMAGES.

While Plaintiff requests punitive damages in its prayer for relief, such request is not linked to any of the five causes of action listed in the Complaint. New York law only allows the recovery of punitive damages in a trade secrets case if the defendant's conduct has been sufficiently "gross and wanton." *See e.g.*, *Huschle v. Battelle*, 33 A.D.2d 1017, 308 N.Y.S.2d 235 (1st Dep't 1970), *aff'd*, 31 N.Y.2d 767, 338 N.Y.S.2d 622, 290 N.E.2d 823 (1972). This is high standard cannot be met in this case.

First, RHI cannot show that Execu/Search actions were "gross or wanton." In addition to the warnings Execu/Search provided during the interview process, (Fleischman Decl., ¶¶ 14, 17) Execu/Search required Wojdyl, as a condition of Execu/Search employment, to execute a March 23, 2007 offer letter which expressly provided that he was prohibited from misappropriating or exploiting his former employer's confidential and proprietary information. Fleischman Decl., ¶¶ 14, 17.

Second, Wojdyl's conduct does not rise to the level of "gross or wanton." While Wojdyl erred by taking some of RHI's property in advance of his resignation, Execu/Search did not receive and does not possess any confidential or proprietary information belonging to RHI. *See* Fleischman Decl., ¶ 19. Moreover, there is no claim (nor could there be one) that Wojdyl benefited. Wojdyl has since returned to RHI or destroyed any confidential or proprietary information of RHI.

Lastly, to the extent that RHI claims that Execu/Search intentionally induced Wojdyl to violate his agreement with RHI, it should be noted that such allegation is not made by actual knowledge, but only "upon information and belief." *See* Complaint, ¶¶ 85-86. Similarly, many,

if not most, of RHI's allegations of bad faith on the part of Defendants are also not made by personal knowledge but merely "upon information and belief." *See* Complaint, ¶¶ 2, 38, 39, 40, 43, 46, 51, 85 and 86.

In sum, RHI's mere allegation of punitive damages is insufficient to assist it in meeting its burden of establishing the jurisdictional amount.

## D.     THERE IS INSUFFICIENT POTENTIAL FOR FUTURE HARM TO PLAINTIFF.

The only remaining way that RHI could meet the $75,000 threshold is to demonstrate the potential for future monetary harm. Again, however, this method is of no avail to RHI.

Although the Complaint vaguely suggests that RHI will suffer irreparable harm in the absence of an injunction, it does not explain the monetary impact of such alleged harm. *See* Complaint, ¶¶ 52-55.

Courts attempting to quantify potential future loss have derived the monetary amount by examining how much revenue the former employee generated for his former employer. *See e.g., Mailwaukee Mailing Shipment and Equip., Inc. v. Neopost, Inc.*, 259 F.Supp.2d 769, 773-74 (E.D. Wisc. 2003) (holding that it is reasonable to infer that plaintiff will suffer future loss at a rate comparable to past years); *Zep Mfg. Corp. v. Haber*, 202 F.Supp. 847, 848-49 (S.D. Tex. 1962) (holding that future loss can be reasonably measured from plaintiff's profit from defendant's sales in the year prior to the breach of contract).

Applying the above analysis, Wojdyl was, at best, a marginal $48,000 a year performer when he was with RHI. *See* Wojdyl Aff., ¶ 10. During the course of his entire fourteen-month employment at RHI, from January 2006 to March 2007, Wojdyl placed approximately ten to twelve job candidates (approximately eight placements jointly with co-workers) which generated less than $48,000 in salary to him. Wojdyl Aff., ¶¶ 10-11. These ten to twelve placements generated approximately $150,000 in *gross* revenue for RHI. However, this amount must be

offset by not only Wojdyl's draw but also RHI's overhead.  On the basis of the standards in the permanent placement industry, after compensating Wojdyl and paying overhead, RHI would have net revenue of approximately twenty five (25) percent of gross billings.  Fleishman Decl. ¶ 22.  In other words, on the basis of the $150,000 in gross billings that Wojdyl generated RHI would have had net revenue of only $37,500, a sum far below the $75,000 jurisdictional requirement.  Accordingly, RHI cannot establish that Wojdyl was responsible for an amount in excess of the jurisdictional limit during the fourteen months of his employment, much less in the last year of his employment.[2]

To the extent that RHI may argue that Wojdyl will exceed his previous years sales figures by unlawful use of RHI's trade secrets and confidential information, as fully set forth in Defendants' Brief in Opposition to Plaintiff's Motion for a Preliminary Injunction, RHI has not shown it has any trade secrets that are at issue.  Execu/Search hardly needs RHI's financial services information and, indeed, expressly advised Wojdyl on several occasions that he should not take, use or rely on such information.  At most, regardless of Execu/Search's warnings and the terms of its offer letter, Wojdyl erred by taking some of RHI's property in advance of his resignation which he has since either returned or destroyed.  Neither Defendant possesses confidential or proprietary information belonging to RHI, which they arguably might exploit in the future to RHI's detriment.  *See* Fleischman Decl., ¶11.

In sum, even though Plaintiff is seeking monetary damages in this matter, the potential for future harm as a result of Defendants' conduct is speculative and remote at best and is counter-intuitive based on the amount of profit that Wojdyl generated for RHI during his

---

[2]        Another way to quantify potential future losses would be to examine the amount of net revenue RHI has lost since Wojdyl's resignation, two months ago, which can be attributable to Wojdyl and then extrapolating that figure over the course of one year (the period of the non-competition covenant).  This methodology, however, cannot be applied because RHI has not alleged *any* express monetary loss (nor can it).  *See* Wojdly Aff., ¶ 20, Fleischman Decl., ¶ 20.

employment.    Accordingly, Plaintiff cannot meet the $75,000 jurisdictional threshold based on the possibility of future harm.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that its motion to dismiss be granted in its entirety and that the Complaint be dismissed with prejudice.

Date:    May 21, 2007
      New York, New York

                     Respectfully submitted,

                     By:   /s/ A. Michael Weber
                         A. Michael Weber (AMW-8760)
                         Gregory B. Reilly (GBR-6189)
                         LITTLER MENDELSON PC
                         Attorneys for Defendants
                         885 Third Avenue, 16th Floor
                         New York, New York 11747
                         (212) 583-9600

Firmwide:82495389.1 051465.1005