UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CORRESPONDENT SERVICES CORPORATION,

        Interpleader Plaintiff,

   - against -

JVW INVESTMENT, LTD., FIRST EQUITIES
CORPORATION OF FLORIDA, J.V. WAGGONER,
and DONAL KELLEHER,

        Interpleader Defendants.

   - and -

SUISSE SECURITY BANK AND TRUST, LTD.,

        Additional Defendant on
        Cross-Claims.
----------------------------------------X

                  99 Civ. 8934 (RWS)

                  O P I N I O N

A P P E A R A N C E S :

<u>Attorneys for Interpleader-Defendants</u>:

    CHADBOURNE & PARKE
    30 Rockefeller Plaza
    New York, NY 10112
    By:  KENNETH A. CARUSO, ESQ.
        JEFFREY I. WASSERMAN, ESQ.
        DANIEL S. MEYERS, ESQ.
        <u>Of Counsel</u>

<u>Attorneys for Additional Defendant Suisse Security Bank</u>:

    MILBANK, TWEED, HADLEY & McCLOY
    One Chase Manhattan Plaza
    New York, NY 10005-1413
    By:  ANDREW E. TOMBACK, ESQ.
        CHARLES WESTLAND, ESQ.
        <u>Of Counsel</u>

    SKOLOFF & WOLFE
    293 Eisenhower Parkway
    Livingston, NJ 07039
    By:  JONATHAN W. WOLFE, ESQ.
        <u>Of Counsel</u>

**Sweet, D.J.,**

Cross-claim defendant Suisse Security Bank and Trust, Ltd. ("SSBT") has renewed its motion to dismiss Count Three of the amended complaint of interpleader plaintiff Correspondent Services Corporation ("CSC") pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, to vacate this Court's previous orders of attachment, and for an award of its costs and attorney's fees incurred in this action pursuant to CPLR 6212(e). J.V.W. Investments Ltd. ("JVW") and J. Virgil Waggoner ("Waggoner") (collectively, the "Waggoner Parties") have opposed SSBT's motion and moved for leave to file a surreply memorandum of law in further opposition to SSBT's motion. For the reasons set forth below, both motions are granted and this action is dismissed.

## Prior Proceedings and Background

This interpleader action, commenced on August 16, 1999, by CSC, has been the subject of six prior opinions issued by this Court, familiarity with which is assumed. _See_ _Correspondent Services Corp. v. J.V.W. Investments Ltd._, No. 99 Civ. 8934 (RWS), 2003 WL 221746 (S.D.N.Y. Jan. 31, 2003) ("_JVW VI_"); _Correspondent Services Corp. v. J.V.W. Investments Ltd._, 205 F. Supp. 2d 191 (S.D.N.Y. 2002) ("_JVW V_"), _vacated and remanded sub nom._ _Correspondent Services Corp. v. First Equities Corp. of Florida_, 338 F.3d 119 (2d Cir. 2003); _Correspondent Services Corp. v. J.V.W._

2

<u>Investments Ltd.</u>, 173 F. Supp. 2d 171 (S.D.N.Y. 2001) ("<u>JVW IV</u>");
<u>Correspondent Services Corp. v. J.V.W. Investments Ltd.</u>, 204 F.R.D.
47 (S.D.N.Y. 2001) ("<u>JVW III</u>"); <u>Correspondent Services Corp. v.</u>
<u>J.V.W. Investments Ltd.</u>, 120 F. Supp. 2d 401 (S.D.N.Y. 2000) ("<u>JVW</u>
<u>II</u>"); <u>Correspondent Services Corp. v. J.V.W. Investments Ltd.</u>, No.
99 Civ. 8934 (RWS), 2000 WL 1174980 (S.D.N.Y. Aug. 18, 2000) ("<u>JVW</u>
<u>I</u>"). Although the course of this litigation and the underlying
dispute have already been amply charted, certain events relevant to
the instant motions warrant repetition.

In 1998, Donal Kelleher ("Kelleher"), a citizen of Great
Britain, undertook to invest $10 million belonging to Waggoner.
Kelleher and Waggoner established JVW, a Commonwealth of Dominica
International Business Company, with Waggoner as the sole
shareholder and Kelleher as the director. Through JVW, Kelleher
entered into an agreement with British Trade and Commerce Bank
("BTCB"), organized under the laws of Dominica, to invest
Waggoner's $10 million in a Certificate of Deposit. On June 26,
1998, BTCB issued a Certificate of Time Deposit ("CTD") to JVW for
the face value of "TEN MILLION DOLLARS." <u>JVW V</u>, 205 F. Supp. 2d at
194 (internal quotation marks omitted).

At the time the CTD was issued to JVW, JVW had made no
deposits with BTCB, although Waggoner had wired $10 million to
JVW's account at SSBT on June 18, 1998, and Kelleher had
represented to BTCB that the $10 million was available for

3

immediate investment.  JVW instructed BTCB to deliver the CTD to SSBT in the Bahamas, where the CTD would be held in JVW's account with SSBT.  JVW thereafter requested that SSBT transfer the CTD to First Equity Corporation of Florida ("First Equity"), a Florida subsidiary of BTCB, which in turn placed the unfunded CD into the custody of CSC, which company provided custodial services for First Equity.  CSC is a citizen of New York and Delaware.

In September and October of 1998, after several unsuccessful attempts to transfer Waggoner's $10 million from JVW's SSBT account into BTCB's SSBT account and thus to fund the CD, approximately $7.7 million was transferred to BTCB/First Equity, leaving approximately $2.3 million of the original $10 million unaccounted for.  BTCB then issued a Certificate of Deposit ("CD") as a substitute for the CTD issued earlier.  The CD, like the CTD which it had replaced, was due to mature on June 25, 1999 and set forth as a term that "[d]eposits made in any form shall not be considered good until the same have been cleared."  JVW V, 205 F. Supp. 2d at 195 (internal quotation marks omitted).  The CD was identical to the original CTD except for its title and for the fact that it was issued to "Bearer" rather than to JVW.  From July 1998 through May 1999, the CTD and thereafter its replacement, the CD, were reflected on JVW's account statements from First Equity, which clears through CSC, as having a face value of $10 million.  Even after the CD was funded, CSC was only in possession of the physical CD document and never controlled any of the funds received by

4

BTCB/First Equity.

Waggoner and Kelleher subsequently had a disagreement, and Waggoner dissolved the Joint Participation Agreement underlying their venture, removed Kelleher as director of JVW, and appointed himself as JVW's sole director. In June of 1999, Kelleher commenced a letter-writing campaign to UBS PaineWebber, CSC's parent company, and other entities in which he purported to be the sole director of JVW and made demands with respect to JVW's brokerage account at First Equity and his entitlement to the CD.

On June 25, 1999, the CD matured and pursuant to its terms reverted to a savings account at BTCB. At the same time, JVW liquidated its bank account at BTCB and transferred the funds contained therein (approximately $7.7 million) to another account in the name of a different corporation, the Wagonwheel Trust. The monthly statements for JVW's brokerage account at First Equity thereafter reflected a "zero" value for the CD.

On August 16, 1999, CSC commenced the instant action seeking to resolve what it regarded as competing claims to the CD in its possession. The complaint named but did not otherwise assert causes of action against interpleader defendants JVW, First Equity, Waggoner and Kelleher, and alleged jurisdiction under 28 U.S.C. § 1335. The Waggoner Parties jointly answered and asserted a variety of claims against Kelleher, who, in turn, asserted claims

5

against Waggoner for breach of fiduciary duty and breach of contract.

On September 28, 2000, the Waggoner Parties moved by order to show cause to assert claims against SSBT for conversion, aiding and abetting a conversion, breach of contract, and unjust enrichment, and sought to attach $3 million of funds belonging to SSBT. This Court confirmed the attachment by order of November 13, 2000, and a second amended order of attachment was entered on April 18, 2001, after which SSBT's funds were turned over to the United States Marshal. Thereafter, Kelleher asserted claims against SSBT for interference with economic advantage and indemnification. SSBT answered the claims asserted against it, and counterclaimed against Kelleher and the Waggoner Parties for contribution and indemnity.

On July 3, 2001, SSBT, by letter to the Court, raised the question whether the Court had subject matter jurisdiction. CSC was granted leave to file an amended complaint, which CSC did on August 20, 2001. In addition to reiterating the interpleader claim under 28 U.S.C. § 1335 first posed in its initial complaint, CSC added two additional counts: an interpleader claim under CPLR 1006(f) (Count Two) and a declaratory judgment claim under 28 U.S.C. § 2201 (Count Three). In Count Three, CSC repeats and reiterates its preceding allegations with respect to the first two counts, and further alleges:

6

37. There is an actual controversy pending as to the ownership of the CD which CSC has deposited into Court. Among other things, CSC has been threatened with claims by Kelleher in excess of ten million dollars ($10,000,000) in the event it transferred the CD to anyone but Kelleher or his designees.

38. CSC seeks a declaration pursuant to 28 U.S.C. § 2201 that CSC has no liability to Kelleher and that CSC, having acted in accordance with the terms of the CD and/or having deposited the CD with the Clerk of the Court, has no further liability to any party in connection with the CD or its role as custodian of the CD, that it is discharged from liability, and awarding CSC its costs and attorney's fees.

(Am. Compl. at 10-11.)  In light of the allegations, CSC sought the following relief with regard to Count Three:

[A]n Order and Judgment of this Court pursuant to 28 U.S.C. § 2201 permitting and directing to [sic] CSC to deposit the subject CD with the Clerk of the Court; enjoining defendants from taking any action as against CSC; discharging CSC with prejudice; and reimbursing CSC for its costs and attorney's fees.

(Id. at 11.)

Two days later, on August 22, 2001, SSBT moved to dismiss CSC's original complaint on the grounds that subject matter jurisdiction was lacking because the CD had no value after its expiration on June 25, 1999 and, thus, had no value at the time CSC commenced this action on August 16, 1999.  Thereafter, on or about October 21, 2001, CSC submitted a "Notice of Voluntary Dismissal of Amended Complaint," asserting that because CSC had received a complete release of all claims from Kelleher, it no longer faced

7

competing claims to the CD and had no desire to continue with litigation.

On November 8, 2001, the Waggoner Parties commenced an action against SSBT in the Supreme Court of the State of New York, New York County (the "State Court Action"), and moved for an attachment over the same monies already attached in this action. On May 9, 2002, the Honorable Ira Gammerman granted the Waggoner Parties' motion for an order of attachment, setting forth that the attachment in the State Court Action constituted a continuation of the attachment in the action in this Court.

In May of 2002, this Court issued JVW V, dismissing CSC's interpleader action upon a grant of CSC's Rule 41(a)(2), Fed. R. Civ. P., motion for voluntary dismissal, determining that subject matter jurisdiction over CSC's interpleader claim was otherwise lacking as a result of the CD's "zero" value, declining to exercise supplemental jurisdiction over the remaining cross-claims among the Waggoner Parties, Kelleher and SSBT, vacating the attachment of SSBT's assets, and awarding attorney's fees to SSBT. See JVW V, 205 F. Supp. 2d at 205. The Waggoner Parties appealed, and on July 16, 2003, the Court of Appeals for the Second Circuit vacated JVW V, reasoning that in order to reach its ruling this Court appeared to have "implicitly determined that it had subject matter jurisdiction over the amended complaint at least as of the time of SSBT's motions" but concluding that the failure to articulate the

basis for such jurisdiction or to determine whether the amended complaint related back to the original filing date required vacatur and remand.  <u>See</u> <u>Correspondent Services</u>, 338 F.3d at 123.

Although the Court of Appeals determined that the failure to address subject matter jurisdiction under the amended complaint required vacatur of <u>JVW V</u>, it nonetheless expressed approval for various of the rulings reached therein.  Specifically, the Court of Appeals noted its agreement with the conclusion reached in <u>JVW V</u> that statutory interpleader premised on 28 U.S.C. § 1335 provides no basis for jurisdiction.  <u>See</u> <u>Correspondent Services</u>, 338 F.3d at 124.  Explaining that "it is undisputed that CSC possessed only the physical CD, which had no value when CSC brought suit," the Court of Appeals observed that "statutory interpleader did not provide a basis for jurisdiction over this action."  <u>Id.</u>  The Court of Appeals also stated that interpleader under Rule 22, Fed. R. Civ. P., provides no basis for jurisdiction, as "CSC owned nothing of value to be interpleaded" and, accordingly, the action failed to meet the $75,000 amount-in-controversy requirement for diversity jurisdiction pursuant to 28 U.S.C. § 1332.  <u>Id.</u>  Further, the Court of Appeals rejected the Waggoner Parties' contentions that diversity jurisdiction existed on the basis of the state-law cross-claims asserted by and between the Waggoner Parties and Kelleher.  <u>See</u> <u>id.</u> at 124-25.

Vacatur of the decision below was required, according to

the Court of Appeals, because in dismissing CSC's action in <u>JVW V</u> this Court did not address the Waggoner Parties' argument that jurisdiction is proper in this case under 28 U.S.C. § 1332 on the basis of the allegations in the declaratory judgment claim, Count Three of the amended complaint. <u>See</u> <u>id.</u> at 125. Noting that this Court "did not explicitly determine" whether CSC's declaratory judgment claim pursuant to 28 U.S.C. § 2201 "supports diversity jurisdiction," the Second Circuit explained that "if both the assertion of jurisdiction under § 1332 and the declaratory judgment claim relate back to the commencement of the action, the amended complaint cures the jurisdictional defect, assuming for the moment that the amended complaint satisfies the requirements of § 1332." <u>Id.</u> Accordingly, the Second Circuit vacated CSC's dismissal and remanded for a determination of these issues.

The Court of Appeals also vacated the determination reached in <u>JVW V</u> that supplemental jurisdiction would not be exercised, and remanded for possible reconsideration in light of the fact that "the district court did not weigh the prejudice that JVW and Waggoner would suffer if they lost their attachment of SSBT's assets . . . . [as] the loss of [the Waggoner Parties'] pre-bankruptcy attachment of SSBT's assets would destroy [their] preferential claim to a portion of SSBT's bankruptcy estate." <u>Id.</u> at 126-27. The Court of Appeals directed that,

> If the district court determines that subject matter
> jurisdiction is proper over CSC's amended complaint and

> relates back to the commencement of the action, the
> district court should evaluate the extent to which losing
> the attachment prejudices JVW and Waggoner, and weigh
> this prejudice in its determination whether CSC's
> voluntary dismissal and the exercise of supplement
> jurisdiction are appropriate.

Id. at 127.  Thus, in sum, as the Court of Appeals explained,

> We vacate the dismissal and remand to the district court
> for the following proceedings: first, to clarify whether
> jurisdiction existed under CSC's amended complaint and,
> if it did, whether the allegations establishing
> jurisdiction related back to the original complaint; and
> second, if the allegations sufficient to establish
> jurisdiction relate back to the original complaint, to
> consider whether the prejudice to appellants flowing from
> the vacating of the attachment precludes dismissal of
> either CSC's action under Rule 41(a)(2) or the
> appellants' cross-claim for lack of supplemental
> jurisdiction.

Id. at 121.

In the body of its opinion the Court of Appeals appears
to treat the relation-back concept first and addresses the
determination of whether the amended complaint supports diversity
jurisdiction as "the remaining question."  See id. at 125-26.
However, in view of the introduction and conclusion of the opinion
of the Court of Appeals expressing what constitutes the threshold
issue, see id. at 121, 127, the parties have agreed to limit the
instant motion practice to the issue of whether jurisdiction exists
over CSC's declaratory judgment claim, an agreement set forth in a
stipulation and order signed by this Court on January 27, 2004.

Accordingly, on February 3, 2004, SSBT moved to dismiss Count Three of the amended complaint for lack of subject matter jurisdiction, to vacate the Court's prior attachment orders, and for an award to SSBT of its costs and attorney's fees incurred in this action. The Waggoner Parties opposed SSBT's motion and SSBT replied to the Waggoner Parties' opposition papers. On April 21, 2004, the Waggoner Parties moved for leave to file a surreply memorandum of law, such surreply accompanying their motion, and SSBT thereafter opposed the Waggoner Parties' motion. Oral arguments were heard on May 5, 2004, at which time the motions were deemed fully submitted.

## Standard of Review

"It is a fundamental principle that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1), Fed. R. Civ. P. See Brotman v. United States, 111 F. Supp. 2d 418, 420 n.1

(S.D.N.Y. 2000); <u>Peterson v. Continental Airlines, Inc.</u>, 970 F. Supp. 246, 248-49 (S.D.N.Y. 1997); <u>Int'l Paving Sys., Inc. v. Van-Tulco, Inc.</u>, 866 F. Supp. 682, 688 n.2 (E.D.N.Y. 1994). Accordingly, SSBT's motion will be construed as a motion to dismiss pursuant to Rule 12(b)(1).

Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. <u>See</u> <u>Thomson v. Gaskill</u>, 315 U.S. 442, 446 (1942); <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction must prove that the court has such jurisdiction by a preponderance of the evidence. <u>See</u> <u>APWU v. Potter</u>, 343 F.3d 619, 623 (2d Cir. 2003); <u>Lunney v. United States</u>, 319 F.3d 550, 554 (2d Cir. 2003); <u>Makarova</u>, 201 F.3d at 113.

On a motion to dismiss for lack of subject matter jurisdiction, the court must accept the material factual allegations contained in the complaint. <u>See</u> <u>Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992). Nonetheless, the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings. <u>See</u> <u>Flores v. S. Peru Copper Corp.</u>, 343 F.3d 140, 161 n.30 (2d Cir. 2003); <u>Luckett v. Bure</u>, 290 F.3d 493, 496-97 (2d Cir. 2002). The court may decide the matter on the basis of affidavits or other evidence, <u>see</u> <u>Filetech S.A. v. France Telecom S.A.</u>, 157 F.3d 922, 932 (2d

Cir. 1998), but "argumentative inferences favorable to the party
asserting jurisdiction should not be drawn." <u>Atl. Mut. Ins.</u>, 968
F.2d at 198.    In other words, "jurisdiction must be shown
affirmatively, and that showing is not made by drawing from the
pleadings inferences favorable to the party asserting it."
<u>Shipping Fin. Servs. Corp v. Drakos</u>, 140 F.3d 129, 131 (2d Cir.
1998).

        District courts "shall have original jurisdiction of all
civil actions where the matter in controversy exceeds the sum or
value of $75,000" and is between diverse citizens.    28 U.S.C. §
1332(a).    The threshold amount of $75,000 is a necessary condition
for diversity jurisdiction.    See <u>E.R. Squibb & Sons, Inc. v.
Accident & Cas. Ins. Co.</u>, 160 F.3d 925, 933 (2d Cir. 1998)
(observing that the amount in controversy is an unwaivable
jurisdictional requirement under 28 U.S.C. § 1332).    The party
seeking "to invoke jurisdiction under 28 U.S.C. § 1332 bears the
burden of demonstrating that the grounds for diversity exist and
that diversity is complete." <u>Advani Enters., Inc. v. Underwriters
at Lloyds</u>, 140 F.3d 157, 160 (2d Cir. 1998).    Thus, where diversity
jurisdiction is at stake, the party invoking the jurisdiction of
the federal court "has the burden of proving that it appears to a
'reasonable probability' that the claim is in excess of the
statutory jurisdictional amount" of $75,000. <u>Tongkook Am., Inc. v.
Shipton Sportswear Co.</u>, 14 F.3d 781, 784 (2d Cir. 1994) (quoting
<u>Moore v. Betit</u>, 511 F.2d 1004, 1006 (2d Cir. 1975) (noting that

                                    14

"absolute certainty in valuation of the right involved is not required to meet the amount in controversy requirement")). "Conversely, courts should dismiss only when it is clear to a legal certainty that jurisdictional amounts cannot be met." <u>Moore</u>, 511 F.2d at 1006; <u>see also</u> <u>Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938); <u>Zacharia v. Harbor Island Spa, Inc.</u>, 684 F.2d 199, 202 (2d Cir. 1982). "Where jurisdiction is lacking, . . . dismissal is mandatory." <u>See</u> <u>United Food & Commercial Workers Union Local 919 v. CenterMark Props. Meriden Square, Inc.</u>, 30 F.3d 298, 301 (2d Cir. 1994).

## Discussion

### I.  The Waggoner Parties' Motion For Leave To File A Surreply Is Granted

Following the filing of SSBT's reply papers on the motion to dismiss, the Waggoner Parties moved for leave to file a surreply memorandum of law, asserting that new matter was raised in SSBT's reply brief and arguing that the Court should grant CSC leave to file a second amended complaint to remedy any failings identified by SSBT's "narrow construction" of the amended complaint. (Declaration of Kenneth A. Caruso, dated Apr. 20, 2004, at 2.) The Waggoner Parties' motion is procedurally flawed, insofar as the proposed surreply memorandum was filed in conjunction with and attached to their motion for leave to file such papers. <u>See</u> <u>Travelers Inc. Co. v. Buffalo Reinsurance Co.</u>, 735 F. Supp. 492,

495 (S.D.N.Y.), <u>vacated in part on other grounds</u>, 739 F. Supp. 209
(S.D.N.Y. 1990); <u>cf.</u> <u>United States v. Int'l Bus. Machs. Corp.</u>, 66
F.R.D. 383, 385 (S.D.N.Y. 1975). Notwithstanding this flaw, in an
exercise of this Court's discretion the Waggoner Parties' motion is
granted so as to permit comprehensive adjudication of the issues
raised.

## II.  **SSBT's Motion to Dismiss Count Three Is Granted**

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not
confer subject matter jurisdiction on the federal courts.  <u>See</u>
<u>Concerned Citizens of Cohocton Valley, Inc. v. New York State Dep't</u>
<u>of Envtl. Conservation</u>, 127 F.3d 201, 206 (2d Cir. 1997)
(describing as "settled law" the rule that the Declaratory Judgment
Act does not provide for subject matter jurisdiction in the federal
courts).  Thus, for Count Three to survive SSBT's motion to dismiss
for want of subject matter jurisdiction, it must be demonstrated
that the grounds for jurisdiction under 28 U.S.C. § 1332 exist,
namely that the parties are diverse and the amount in controversy
exceeds the sum or value of $75,000.  As the Court of Appeals
recognized in its opinion of July 2003, "the citizenship of each
party is not at issue"; "the only question is whether the amount in
controversy may be measured by Kelleher's demand ($10.6 million) or
must be measured by the value of the CD (zero)."  <u>Correspondent</u>

16

<u>Services</u>, 338 F.3d at 126.[1]    SSBT argues that diversity
jurisdiction is lacking here because the amount-in-controversy
requirement has not been met.  The object of Count Three, according
to SSBT, is the CD, and the CD, as the Court of Appeals has stated,
"had no value when CSC brought suit."  <u>Id.</u> at 124.  The Waggoner
Parties do not dispute the value of the CD at the time CSC
commenced this action but argue that the amount in controversy
should be measured not by the value of the CD but by the magnitude
of Kelleher's demand.

        "In actions seeking declaratory or injunctive relief, it
is well established that the amount in controversy is measured by
the value of the object of the litigation."  <u>Hunt v. Washington
State Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977) (citations
omitted).    Notwithstanding  the  seeming  simplicity  of  this
principle,

> Valuation of the matter in controversy in suits for
> declaratory or injunctive relief is a complex task.  The
> court must not only undertake to evaluate intangible
> rights as opposed to objects commonly found in the
> marketplace, but it must decide what rights are involved
> in the controversy and from whose viewpoint their value
> is to be measured.

<u>Law Audit Services, Inc. v. Studebaker Tech., Inc.</u>, No. 96 Civ. 926
(LMM), 1996 WL 137492, at *3 (S.D.N.Y. Mar. 27, 1996) (quoting

---

[1]  Kelleher's demand for $10.6 million reflects the face value
of the CD, $10 million, as well as interest calculated at 6% per
annum, as provided for by the terms of the CD.

McCarty v. Amoco Pipeline Co., 595 F.2d 389, 391-92 (7th Cir. 1979)) (quotation marks omitted). The complexity of this task may be magnified, as it has been here, by the terms employed by courts to describe the measures by which the amount in controversy may be ascertained. See, e.g., Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.") (emphasis supplied); Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir. 1972) ("[T]he amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.") (internal quotation marks and citations omitted and emphasis supplied). "Not surprisingly, the particular methodology of measurement that will be used by the district court [in determining the amount in controversy] depends on the substantive nature of the proceeding itself." 14B Charles Alan Wright et al., Federal Practice & Procedure § 3702 (3d ed. 1998 & Supp. 2004).

Under the most straight-forward reading of both Count Three of the amended complaint and the relevant statutory language, the object of the litigation is the CD. The Declaratory Judgment Act provides, in relevant part, that

18

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). In Count Three of its amended complaint, CSC specifies that "[t]here is an actual controversy pending as to the ownership of the CD which CSC has deposited into Court." (Am. Compl. at ¶ 37 (emphasis supplied).) Because the CD has been identified by the plaintiff in this action as the object of the "actual controversy," its value provides the appropriate basis for the measure of the amount in controversy for Count Three. It follows that, since the CD "had no value when CSC brought suit," Correspondent Services, 338 F.3d at 124, the amount in controversy with regard to Count Three falls short of the requisite $75,000.

This conclusion is consonant with the conclusions reached in cases dealing with contested ownership of real or personal property. Thus, where a plaintiff has commenced an action to quiet title to real property, the amount in controversy is determined by the value of the realty directly affected by the contest for ownership. See, e.g., ACLI Gov't Sec., Inc. v. Rhoades, 907 F. Supp. 66, 70 (S.D.N.Y. 1995) (quoting from an unpublished opinion of the Court of Appeals for the Second Circuit in that same case explaining that the amount in controversy in a declaratory judgment action concerning the ownership of real property is measured by the purchase price of the property itself); cf. South Park Assocs. v.

Renzulli, 94 F. Supp. 2d 460, 462 (S.D.N.Y.) (holding that
diversity jurisdiction existed where the plaintiff landlord who was
seeking a declaratory judgment that certain apartments were rent
destabilized alleged that the value of property free from rent
control was in excess of $75,000), aff'd, 242 F.3d 368 (2d Cir.
2000) (unpublished table decision).

Likewise, where a plaintiff seeks a declaration as to the
ownership of personal property, the object of the litigation is the
property at stake, and the value of that property dictates the
amount in controversy. See, e.g., John Deere Co. v. Pritchard, No.
93 Civ. 482, 1994 WL 447416, at *1 (N.D.N.Y. Aug. 18, 1994)
(holding that the amount in controversy is set by the value of the
chattel to which the plaintiff claimed an ownership interest); ITT
Commercial Fin. Corp. v. Unlimited Auto., Inc., 814 F. Supp. 664,
667-68 (N.D. Ill. 1992) (holding that the amount in controversy
with respect to claims brought by a creditor seeking declaratory
judgment that it is the owner of two motor homes is determined by
the value of those motor homes).

The conclusion reached here is also in accord with
caselaw involving suits brought to declare ownership rights with
respect to commercial paper or securities. See, e.g., Walker v.
Waller, 267 F. Supp. 2d 31, 33 (D.D.C. 2003) (holding that, to the
extent the plaintiff was seeking declaratory relief regarding the
ownership of certain stock, the amount in controversy was, at most,

the value of the stock at issue); <u>Giffin v. Bank One Dayton, N.A.</u>,
No. 4:90-CV-150, 1991 WL 303602, at *2 (W.D. Mich. Dec. 3, 1991)
(observing that in a commercial paper case where plaintiffs seek a
declaratory judgment that the defendant was not a holder in due
course of certain promissory notes, "the amount in controversy can
readily be determined by the amount due on the promissory notes").

In light of the allegations in the amended complaint and
the parallels with the cases just described, the CD constitutes the
object of the litigation with respect to Count Three.  The Waggoner
Parties urge a contrary result, however, raising several distinct
arguments which will be addressed in turn.

First, the Waggoner Parties argue that the allegations of
Count Three set forth a specific request for a declaration "that
CSC has no liability to Kelleher and that CSC . . . has no further
liability to any party in connection with the CD or its role as
custodian of the CD" (Am. Compl. at ¶ 38).  According to the
Waggoner Parties, the articulated request identifies CSC's
potential liability to Kelleher (rather than the CD) as the subject
of Count Three and hence the appropriate yardstick for determining
the amount in controversy.[2]  While the Waggoner Parties are correct

---

[2]   If, as the Waggoner Parties posit, CSC's potential
liability to Kelleher on Kelleher's threatened $10.6 million claim
represents the object of the litigation, it appears that an actual
controversy no longer exists as to that claim in light of
Kelleher's execution of a release of all claims against CSC.  <u>See,
e.g.</u>, <u>Allen v. Stephan Co.</u>, No. 96 Civ. 536 (JFK), 1996 WL 551708,
at *2-3 (S.D.N.Y. Sept. 26, 1996) (noting that "an actual

that the amended complaint reflects a concern with potential liability, the allegations contained in Count Three amply demonstrate that this attention to liability is derived from the "controversy pending as to the ownership of the CD," the possibility of a claim from Kelleher arising "in the event [CSC] transferred the CD," and the potential for any other claims "in connection with the CD or [CSC's] role as custodian of the CD." (Am. Compl. at ¶¶ 37-38.)  Under these circumstances, to conclude that the object of the litigation with regard to Count Three is something other than the CD would run contrary to the most reasonable reading of the amended complaint, particularly in light of the marked similarities between the allegations of Count Three and those contained in Count One, as to which the CD is the undisputed object of litigation.[3]

---

controversy must exist throughout the pendency of [a] declaratory judgment action, not merely at the time the complaint is filed" and holding that a stipulation by defendants' counsel waiving any claims the defendants might have asserted under the federal securities laws "effectively neutralize[d] Defendants' previous threat to file federal securities law claims against Plaintiffs," thereby rendering "the controversy with respect to that threat . . . moot") (citations omitted).  As Kelleher's release was executed after CSC filed its amended complaint, however, whether a controversy currently exists has no bearing on whether subject matter jurisdiction existed as of the filing of the amended complaint and whether such jurisdiction existed, by virtue of the relation-back doctrine, at the time the original complaint was filed.

[3] In Count One CSC alleges:
> 29. If CSC delivers the CD to Kelleher or [First Equity], it could be subject to multiple claims and potential liability.
> 30. CSC is a mere stakeholder and has no beneficial interest in the proceeds of the aforementioned CD.
> 31. CSC is unable to conclusively determine which of the defendants is entitled to the CD.

Leaving aside textual exegesis, the Waggoner Parties next argue that where, as here, a plaintiff is not seeking money damages, the amount in controversy should be measured by the injury that the plaintiff seeks to avert, in this case liability to Kelleher in the amount of $10.6 million. In support of this general principle, the Waggoner Parties rely on Kheel v. Port of New York Auth., 457 F.2d 46 (2d Cir. 1972), in which plaintiffs sought a declaratory judgment that certain legislation was unconstitutional and that the defendant was violating its mandate to plan and construct various transportation facilities.

Although in declaratory judgment actions such as Kheel where money damages are not sought the amount in controversy may be measured by the injury the plaintiff seeks to avoid, the Waggoner Parties have pointed to no authority suggesting that the injury to be averted represents the unique and mandatory gauge to be employed

---

(Am. Compl. at 9.) The prayer for relief set forth in Count One requests:

> [A]n Order and Judgment of this Court pursuant to 28 U.S.C. § 1335 permitting and directing to [sic] CSC to deposit the subject CD with the Clerk of the Court; enjoining defendants from taking any action as against CSC; discharging CSC with prejudice; and reimbursing CSC for its costs and attorneys' fees.

(Id.) Count Three sets forth markedly similar allegations as to a dispute concerning ownership and the possibility of multiple claims and potential liability, and concludes with a virtually verbatim reiteration of Count One's request for relief seeking:

> [A]n Order and Judgment of this Court pursuant to 28 U.S.C. § 2201 permitting and directing to [sic] CSC to deposit the subject CD with the Clerk of the Court; enjoining defendants from taking any action as against CSC; discharging CSC with prejudice; and reimbursing CSC for its costs and attorneys' fees.

(Id. at 11.)

23

in measuring the amount in controversy under such circumstances. Indeed, as the _Kheel_ court explained, "the value of the suit's intended benefit _or_ the value of the right being protected _or_ the injury being averted constitutes the amount in controversy when damages are not requested." _Kheel_, 457 F.2d at 49 (internal quotation marks and citations omitted and emphasis supplied). Moreover, to the extent that the Waggoner Parties are seeking to invoke the particular method by which the _Kheel_ court resolved the dispute before it, _Kheel_ is distinguishable on the facts. _Kheel_ involved a request for a declaration as to rights and obligations; no identified _res_ was at stake in _Kheel_ as in the present controversy. As set forth above, in declaratory judgment actions involving controversy over the ownership of an identified _res_ courts have repeatedly followed the _Hunt_ court's articulated standard in its most literal sense and measured the amount in controversy by reference to that _res_.

Building on the general principle that the amount in controversy should be measured by the injury that the plaintiff seeks to avert, the Waggoner Parties further contend that the amount in controversy in a declaratory judgment action brought following a threat of litigation should be measured by the magnitude of the liability asserted in connection with that threat. Although several courts have evaluated the amount in controversy based in part on the magnitude of a threat of litigation, neither _Kheel_ nor the other authorities cited by the Waggoner Parties

24

demonstrates that such an approach should be followed under the circumstances presented here.

In <u>Allstate Insurance Co. v. Hilbun</u>, 692 F. Supp. 698 (S.D. Miss. 1988), for instance, the court held that subject matter jurisdiction existed over the plaintiff insurance company's action seeking a declaratory judgment as to its liability to the defendant under an insurance policy. In reaching this determination, the court took into account the amount of a threatened claim for punitive damages announced by the defendant in correspondence prior to the commencement of the action and in her answer but never formally brought through counterclaims. <u>See</u> <u>Hilbun</u>, 692 F. Supp. at 701. While the court considered the threat of a counterclaim, however, it also noted that even in the absence of the threatened claim for punitive damages, the jurisdictional requirement had been satisfied, since the plaintiff was seeking a declaration as to its liability up to the full extent of the insurance policy, which was governed by a $100,000 limit. <u>See</u> <u>id.</u> The <u>Hilbun</u> court was not, accordingly, faced with the question presented here as to whether the amount of a claim associated with a mere threat of litigation may provide a sufficient basis for calculating the amount in controversy where no additional basis exists.

The Waggoner Parties' reliance on <u>Dow Agrosciences LLC v. Bates</u>, 332 F.3d 323 (5th Cir. 2003), <u>cert.</u> <u>granted</u>, 124 S. Ct. 2903 (2004), is likewise misplaced. The plaintiff in <u>Bates</u> sought a

25

judgment declaring, _inter alia_, that federal law preempted certain state law claims threatened by the defendant peanut farmers in demand letters sent to the plaintiff, an herbicide manufacturer. Although the Court of Appeals for the Fifth Circuit relied in part on the damages asserted in the defendants' demand letters and "[t]he mere availability of treble damages" in affirming the district court's determination that the amount-in-controversy requirement had been met, _Bates_, 332 F.3d at 326 & n.3, the _Bates_ court also made much of the fact that the defendants had sought the damages available to them by interposing counterclaims subsequent to the issuance of their demand letters.  _See_ _id._ at 326.  As the _Bates_ court relied on the assertion of counterclaims as well as the earlier threats of litigation in concluding that the threshold requirement for diversity jurisdiction had been met, _Bates_ does not establish that the amount of damages associated with a threat of litigation may provide a solely sufficient basis for calculating the amount in controversy in a declaratory judgment action where, as here, no counterclaims have been filed making real the earlier threat.

The Waggoner Parties have also cited _Markel Insurance Co. v. United States Judo Association_, No. 99 Civ. 591, 1999 WL 371633 (E.D. Pa. May 24, 1999), in support of their argument.  In _Markel_, the plaintiff insurance company sought a declaratory judgment to the effect that the insurance policy which it had issued to the defendants did not require the plaintiff to defend or indemnify the

defendants in connection with a lawsuit then pending in a Pennsylvania state court. Although the Markel court noted that the defendants had threatened the plaintiff with a possible lawsuit for bad-faith handling of the insurance coverage before the plaintiff filed its complaint, see Markel, 1999 WL 371633, at *1, this threat of a separate lawsuit seeking an unspecified sum played no part in the court's calculation of the amount in controversy. Rather, the court concluded that the amount-in-controversy requirement was satisfied because the damages at issue in the pending state court litigation could well exceed $75,000, damages as to which the plaintiff might have to indemnify the defendants and as to which obligation the plaintiff sought a declaratory judgment. See id.

Finally, even if the Waggoner Parties' reliance on the unpublished opinion in Nutter v. Rents, 945 F.2d 398, 1991 WL 193490 (4th Cir. Oct. 1, 1991) (unpublished table decision), were proper, which is doubtful,[4] Nutter is inapposite. Although the Nutter court concluded that it was "appropriate to gauge the amount in controversy by reference to the amount involved in [the defendant's] threatened action which [the plaintiff's] first-strike action was designed to forestall," Nutter, 1991 WL 193490, at *4,

---

[4]    The Court of Appeals for the Fourth Circuit has deemed citation to its unpublished dispositions "disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case."    4th Cir. R. 36(c).    Citation to unpublished dispositions of the Fourth Circuit is only otherwise permitted where counsel believes that the disposition "has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well . . . ."  Id. (emphasis supplied).

27

the court proceeded to explain that the defendant had brought counterclaims seeking the damages alluded to in the earlier correspondence, damages in excess of the then-threshold statutory amount of $50,000. It was on this collective basis and in light of the Fourth Circuit's "either party" rule, which calls for the calculation of the amount in controversy by reference to the pecuniary result to either party, that the Court of Appeals deemed federal jurisdiction established. See id.; compare Gibson v. H.M.H. of Salina, LLC, No. 99-1492-JTM, 2000 WL 554123, at *3 (D. Kan. Apr. 6, 2000) (applying the "either party" rule but rejecting the plaintiff's argument that the amount-in-controversy requirement had been met by the defendant's mere threat of litigation where no counterclaim had been filed). As the "either party" rule is not followed in this circuit, see, e.g., Kheel, 457 F.2d at 49, nor have counterclaims been filed by Kelleher in this action as they were in Nutter, the relevance of Nutter to these proceedings is limited at best.

The authorities cited by the Waggoner Parties, none of which involves factual circumstances akin to those at issue here, thus fail to demonstrate that the mere threat of litigation by Kelleher constitutes the proper touchstone for determining the amount in controversy with regard to Count Three.[5] As Kelleher's

---

[5]    The Waggoner Parties assert that whether Kelleher eventually brought a counterclaim making good on his threat is irrelevant to the amount-in-controversy calculus. Since the cases cited by the Waggoner Parties have found subject matter jurisdiction to exist based on pre-litigation threats only where

threat of litigation does not appear to be a proper basis for measuring the amount in controversy, the Waggoner Parties' suggestion that Kelleher's threat should be construed as, <u>inter alia</u>, a claim of conversion, and their further suggestion that CSC's request for a declaration that CSC "has no liability to Kelleher" (Am. Compl. at ¶ 38) is sufficiently broad to encompass a reference to the threat thus construed are inventive but ultimately immaterial. The parties' dispute over the law applicable to these various hypothetical claims is likewise irrelevant.

In their surreply papers, the Waggoner Parties argue that if their proposed construction of the amended complaint is found wanting, CSC should be given leave to file a second amended complaint. According to the Waggoner Parties,

> CSC could thereby clarify the kinds of "liability" as to which it wanted a declaration "that CSC has no liability to Kelleher." Pursuant to Rule 15(a), [Fed. R. Civ. P.,] such "leave shall be freely given when justice so requires."

(Waggoner Parties Surreply Mem. at 3.) The Waggoner Parties acknowledge that the plaintiff is normally the party who seeks

---

the threat of a legal claim is coupled with the presence of either subsequent counterclaims, as in <u>Dow Agrosciences</u> and <u>Nutter</u>, or a separate and sufficient ground for establishing the amount in controversy, as in <u>Hilbun</u>, the absence of both of those factors here is decidedly relevant to the success of the Waggoner Parties' arguments.

leave to amend its own complaint, but they argue that Rule 15, Fed. R. Civ. P., places no restriction on which parties may seek leave to amend and that, in any case, since a court may grant leave to amend _sua_ _sponte_, a court likewise may, in the exercise of its discretion, grant leave where leave is requested by the party "most affected by the content of the pleading." (_Id._) It would be an abuse of discretion, in the Waggoner Parties' estimation, if leave to amend were not granted.

The Waggoner Parties may not amend CSC's amended complaint themselves, _see_ Fed. R. Civ. P. 15(a) (providing, in relevant part, that "a party may amend _the_ party's pleading only by leave of court") (emphasis supplied), nor have they pointed to any authority expressly permitting them to do so. CSC, which has previously filed a motion for voluntary dismissal of this action and has not opposed SSBT's instant motion to dismiss, has not requested leave to amend nor has it, or the Waggoner Parties, provided any indication that such an amendment would be forthcoming were leave granted by this Court _sua_ _sponte_. Under these circumstances, granting CSC leave to amend the amended complaint would be both unwarranted and, in light of Kelleher's release and CSC's representation that the dispute which initially led it to seek interpleader relief no longer exists, futile. Accordingly, no such leave to amend is given.

In light of the foregoing, the object of the litigation

30

with regard to Count Three of CSC's amended complaint is the CD,
which, as set forth above, was valueless at the time CSC filed its
initial complaint and at all times thereafter.    It necessarily
follows that the amount-in-controversy requirement of 28 U.S.C. §
1332 has not been satisfied and this Court lacks subject matter
jurisdiction over Count Three.

### III. The Remaining Claims And Crossclaims Are Dismissed
### For Lack Of Subject Matter Jurisdiction

        Subject matter jurisdiction is lacking over Count One,
the federal interpleader claim, for the reasons set forth in JVW V,
see JVW V, 205 F. Supp. 2d at 198, reasoning approved of by the
Court of Appeals on appeal, see Correspondent Services, 338 F.3d at
124, and hereby adopted.    Because no grounds for jurisdiction may
be found in the only remaining cause of action, an interpleader
claim premised on state law, supplemental jurisdiction shall not be
exercised over the remaining claim in the amended complaint or over
the cross-claims asserted by various defendants.    See, e.g., Nowak
v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir.
1996) (stating that a district court "cannot exercise supplemental
jurisdiction unless there is first a proper basis for original
federal jurisdiction") (citations omitted); accord Parker v. Della
Rocco, 252 F.3d 663, 666 (2d Cir. 2001); see also Correspondent
Services, 338 F.3d at 125 (noting that "the district court
correctly found that it could not assert diversity jurisdiction
based upon Kelleher's cross-claims alone").    The amended complaint

31

of CSC therefore must be dismissed in its entirety.

### IV.    **SSBT's Motion To Vacate This Court's Orders Of Attachment Is Granted**

As the amended complaint failed to cure the jurisdictional defects of the original complaint for the reasons set forth above, the prior attachment orders of this Court are vacated due to the dismissal of this action and the Court's lack of subject matter jurisdiction at the time of the orders of attachment. See, e.g., Kenyon & Kenyon v. Advanced Eng'g Research & Dev. Corp., No. 97 Civ. 5909 (DC), 1998 WL 318712, at *3 (S.D.N.Y. June 16, 1998) (dismissing the complaint for want of an independent basis for subject matter jurisdiction and vacating an order of attachment, explaining that "[a] judgment or order is void and subject to vacatur where the court lacks subject matter jurisdiction") (citing United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 907 F. Supp. 663, 668 (S.D.N.Y. 1995); Koa Hwa Shipping Co. v. China Steel Corp., 816 F. Supp. 910, 913 (S.D.N.Y. 1993)).  In ordering vacatur, this Court expresses no view as to the inherent propriety or proper continuation of the attachment ordered in the State Court Action.

### V.    **SSBT's Motion For An Award of Costs And Attorney's Fees Is Granted**

In its motion papers, SSBT seeks an award of costs and

32

attorney's fees incurred in defending against this action. Specifically, SSBT premises its request on CPLR 6212(e), which permits a defendant whose property has been wrongfully attached to recover "all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment . . . if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property." CPLR 6212(e). The purpose of this section is "to make the attaching plaintiff strictly liable for all damages occasioned by a wrongful attachment" including "reasonable attorney's fees, which may be sustained by reason of the attachment." Roth v. Pritikin, 787 F.2d 54, 59 (2d Cir. 1986) (citation and internal quotations omitted). The Waggoner Parties have opposed SSBT's request.

This Court previously ruled in JVW V that SSBT was entitled to its costs and fees pursuant to CPLR 6212(e). See JVW V, 205 F. Supp. 2d at 204-05 (explaining that a dismissal of the case or of the attachment on any basis, procedural or substantive, would be sufficient to support an award under CPLR 6212(e), regardless of whether culpable conduct had been shown, and concluding that "SSBT is entitled to an award of attorney's fees that it has incurred since the entry of the order of attachment on November 17, 2000"); see also JVW VI, 2003 WL 221746, at *2 (reiterating that CPLR 6212(e) "entitles SSBT to recover the costs and fees expended in connection with this litigation" and rejecting the argument that liability for any award of costs and fees is

attributable solely to JVW, in view of the fact that both JVW and Waggoner had moved for the attachment of SSBT's assets).  In its decision vacating <u>JVW V</u>, the Court of Appeals expressed no view with regard to those portions of <u>JVW V</u> that discussed an award under CPLR 6212(e).

Neither party has addressed the power of the Court to award costs and fees in the absence of a jurisdictional finding. In view of the Court's obligation to inquire into its own jurisdiction and given "the cavalier nature in which the parties have dealt with jurisdictional issues thus far" noted by the Court of Appeals, <u>Correspondent Services</u>, 338 F.3d at 123 n.4, it must first be determined whether this Court has the power to award the costs and fees sought by SSBT under the circumstances presented here.

The prevailing rule in the federal courts is that dismissal of a case for want of jurisdiction deprives a court of the power to assess costs.  <u>See, e.g.</u>, <u>Smyth v. Asphalt Belt Ry. Co.</u>, 267 U.S. 326, 330 (1925) ("If the District Court had lacked jurisdiction as a federal court, it would have been without power to order the plaintiffs to pay costs."); <u>Citizens' Bank of Louisiana v. Cannon</u>, 164 U.S. 319, 324 (1896) ("Having dismissed the bill for want of jurisdiction, the court was without power to decree the payment of costs and penalties."); <u>Pentlarge v. Kirby</u>, 20 F. 898, 898 (2d Cir. 1884) ("The rule is uniform in the federal

34

courts that where the case is one of which the court has no jurisdiction, the duty of the court is to dismiss it upon that ground, and without costs.") (collecting cases); <u>Budris v. Consolidation Coal Co.</u>, 251 F. 673, 677 (E.D.N.Y. 1918) ("The prayer for costs cannot be granted, as the court has no jurisdiction over the case . . . ."); <u>United States Envelope Co. v. Transo Paper Co.</u>, 229 F. 576, 579 (D. Conn. 1916) ("As the case is dismissed for want of jurisdiction, no costs can be taxed.").

Various statutory exceptions have been carved out from this general rule, including the exception set forth in 28 U.S.C. § 1919, which provides that:

> Whenever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs.

28 U.S.C. § 1919; <u>see also</u> <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 395 (1990) (citing 28 U.S.C. § 1919 for the proposition that "district courts may award costs after an action is dismissed for want of jurisdiction"); <u>Bridgewater Operating Corp. v. Feldstein</u>, 346 F.3d 27, 30 n.4 (2d Cir. 2003) (stating that 28 U.S.C. § 1919 "permit[s] the imposition of appropriate sanctions following dismissal for lack of subject matter jurisdiction"), <u>petition for cert. filed</u>, 72 U.S.L.W. 3726 (U.S. May 10, 2004) (No. 03-1546); <u>W.G. v. Senatore</u>, 18 F.3d 60, 64 & n.1 (2d Cir. 1994) (observing that, as a general rule, a district court lacks the

power to do anything but strike a case from its docket once it determines that jurisdiction is lacking, but noting that this general rule is "tempered with several exceptions, including 28 U.S.C. § 1919"); see generally In re N. Indiana Oil Co., 192 F.2d 139, 141-42 (7th Cir. 1951) (describing the statutory progression that led to the current formulation of the exception set forth in 28 U.S.C. § 1919). Determining whether "just costs" should be awarded under Section 1919 is a matter within the sound discretion of the district court. See, e.g., Miles v. California, 320 F.3d 986, 988 n.2 (9th Cir. 2003) (noting that Section 1919 "is permissive"); Callicrate v. Farmland Indus., Inc., 139 F.3d 1336, 1339 (10th Cir. 1998) (applying Section 1919 and observing that "[t]he taxing of costs rests in the sound judicial discretion of the district court").

Section 1919 thus provides a jurisdictional basis upon which SSBT's application may be considered, see, e.g., Barron's Educ. Series, Inc. v. Hiltzik, 987 F. Supp. 224 (E.D.N.Y. 1997) (considering an application for attorney's fees under 28 U.S.C. § 1919 following dismissal of a declaratory judgment action for lack of jurisdiction), but the section is not without its complications. While the fact that costs may be awarded under Section 1919 is self-evident, the inclusion of attorney's fees in any award granted by virtue of this same provision is somewhat less straight-forward.

Those courts to have considered the question have held

36

that attorney's fees may not be included in the "just costs" awarded under Section 1919 absent a showing of extraordinary circumstances. See, e.g., Wilkinson v. D. M. Weatherly Co., 655 F.2d 47, 49 (5th Cir. 1981) (explaining that the "just costs" in Section 1919 do not include attorney's fees, but also noting that "the general rule that attorney's fees are not allowable unless expressly authorized" admits of certain limited exceptions "founded on equitable considerations, so that in 'extraordinary circumstances' attorney's fees may be awarded") (internal citation omitted); Signorile v. Quaker Oats Co., 499 F.2d 142, 146 (7th Cir. 1974) (concluding that the "just costs" in Section 1919 do not encompass attorney's fees absent a showing of extraordinary circumstances such as financial burden or hardship); Barron's Educ. Series, 987 F. Supp. at 225-26 (noting that "there is not a single reported case in the history of American jurisprudence in which attorney's fees have been awarded under § 1919" and denying a request for attorney's fees under Section 1919 because there was no "indication of fraud or trickery practiced upon this Court or the defendants . . . [and] no showing that defendants suffered financial burden or hardship"); Hylte Bruks Aktiebolag v. Babcock & Wilcox Co., 305 F. Supp. 803, 810 (S.D.N.Y. 1969) (concluding that, "[a]lthough 28 U.S.C. 1919 permits the taxing of just costs, which may be seen as somewhat enhancing this Court's discretion to tax extraordinary items of costs such as attorney's fees, the circumstances of this case do not warrant the exercise of such discretion" where there had been no indication of fraud or trickery

practiced on the court or on any party) (internal citation and footnote omitted). In determining whether extraordinary circumstances might permit an award of attorney's fees, the courts thus have found it appropriate to consider the financial burden or hardship suffered by a party. See Signorile, 499 F.2d at 146; Barron's Educ. Series, 987 F. Supp. at 226. The parties' conduct may also be taken into consideration. See Hylte Bruks Aktiebolag, 305 F. Supp. at 810.

Section 1919 does not provide the unique basis upon which this Court may consider SSBT's application. Both the U.S. Supreme Court and the Court of Appeals for the Second Circuit have held that, under appropriate circumstances, a district court lacking jurisdiction over the merits of an action may nonetheless determine collateral issues flowing from the underlying action and the manner in which the parties litigated that action. See Willy v. Coastal Corp., 503 U.S. 131, 137-39 (1992) (concluding that an award of sanctions under Rule 11, Fed. R. Civ. P., was properly considered following dismissal for lack of subject matter jurisdiction, as such a consideration "does not signify a district court's assessment of the legal merits of the complaint") (quotation marks and citation omitted); Bridgewater Operating, 346 F.3d at 30 n.4 (rejecting the argument that the district court lacked the power to enjoin the plaintiffs from filing further lawsuits once the court had determined that it lacked subject matter jurisdiction and concluding that the courts have the power to impose "appropriate

sanctions following dismissal for lack of subject matter jurisdiction"); <u>Perpetual Sec., Inc. v. Tang</u>, 290 F.3d 132, 141 (2d Cir. 2002) (explaining that, "[a]lthough the district court lacked jurisdiction to decide the merits of the underlying action, it retained the power to determine collateral issues, such as the appropriateness of [Fed. R. Civ. P. 11] sanctions").

Under either line of reasoning, this Court has the power to award SSBT both costs and attorney's fees under the circumstances of this action. If considered under the rubric of Section 1919, the attachment of SSBT's assets -- obtained under circumstances that suggest that Waggoner had reason to know that subject matter jurisdiction was lacking when it was, in fact, lacking -- was wrongful, and as a result of the attachment SSBT has sustained a substantial financial burden by virtue of its lack of access to the funds at issue. These circumstances are sufficiently extraordinary to warrant the award of both costs and attorney's fees.

In addition, the assessment of costs and fees under CPLR 6212(e)[6] following a dismissal for want of subject matter

---

[6] Pursuant to Rule 64, Fed. R. Civ. P., the remedy of attachment is governed by state law. <u>See</u> <u>Chemical Bank v. Haseotes</u>, 13 F.3d 569, 572 (2d Cir. 1994) ("Fed. R. Civ. P. 64 makes available to the federal courts 'all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action . . . under the circumstances and in the manner provided by the law of the state in which the district court is held.'") (quoting Fed. R. Civ. P. 64). It follows that the manner provided by CPLR

jurisdiction is proper under the circumstances presented here, because the conclusion that the attachment was wrongful is incidental to, closely related to, and necessarily flows from the determination that subject matter jurisdiction is lacking, for the reasons set forth in <u>JVW V</u>, 205 F. Supp. 2d at 204-05, hereby adopted. <u>See also</u> <u>Merck & Co. v. Technoquimicas S.A.</u>, No. 01 Civ. 5345 (NRB), 2001 WL 963977, at *3 (S.D.N.Y. Aug. 22, 2001) ("[I]t is significant that § 6212(e) is not worded in the conditional. . . . Thus, New York law requires an award of fees by virtue of the fact that the attachment was vacated as unwarranted."). Moreover, the conclusion that the attachment was wrongful "implicates no constitutional concern because it does not signify a district court's assessment of the legal merits of the complaint." <u>Willy</u>, 503 U.S. at 138 (internal quotation marks and citation omitted). "It therefore does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." <u>Id.</u>

---

6212(e) for addressing the damages occasioned by wrongful attachments of property is the appropriate mechanism to assess SSBT's application for an award here. <u>See</u> <u>Merck & Co. v. Technoquimicas S.A.</u>, No. 01 Civ. 5345 (NRB), 2001 WL 963977, at *3 (S.D.N.Y. Aug. 22, 2001) ("Having availed themselves [sic] of one subsection of § 6212, plaintiff is bound by the provisions of subsection § 6212(e) -- and, likewise, so is this Court.") (citing <u>Vitrix Steamship Co. v. Salen Dry Cargo A.B</u>, 825 F.2d 709, 713 (2d Cir. 1987) (The plaintiff, "having elected to avail itself of a state court remedy under the 'saving to suitors' clause, must accept the state court procedural rules applicable to the remedy it has sought," and thus may be liable for attorney's fees for a wrongful attachment.)).

40

The Waggoner Parties' arguments advanced in opposition to SSBT's CPLR 6212(e) request warrant mention.  First, the Waggoner Parties contend that the <u>Erie</u> doctrine requires this Court to apply CPLR 326(b) ("Procedure on removal: Order and subsequent proceedings"), which, in turn, calls for denial of an award. Second, the Waggoner Parties suggest that even if the <u>Erie</u> doctrine does not compel application of Rule 326(b), Rule 6212(e) should be construed so as not to authorize an award here in light of <u>Erie</u> considerations and on the particular facts of this case.

Rule 326(b) provides, in part:

> Where an order of removal is made by a court other than the court in which the action is pending, a certified copy of the order shall be filed with the clerk of the court in which the action is pending... .  Subsequent proceedings shall be had in the court to which it has been ordered removed as if the action had been originally commenced there and no process, provisional remedy or other proceeding taken in the court from which the action was removed shall be invalid as the result of the removal.

CPLR 326(b).  As the instant action is being dismissed and is not being removed to any other court, CPLR 326(b) has no bearing here. While some or all of the parties involved in the present action may also be involved in the State Court Action, the existence of a simultaneous proceeding in state court does not support the Waggoner Parties' claim that dismissal in the present action will "move" this action from a federal court to a state court in any way that might trigger the provisions of Rule 326(b).  (Waggoner

41

Parties Opp. Mem. at 31.)  Moreover, no formal order of removal has been either sought or granted, nor has it even been demonstrated that CPLR 326(b) and its related Rules concerning removal among the various state courts of New York State have any application in federal court, much less in a federal district court that has found there to be no basis for diversity jurisdiction under 28 U.S.C. § 1332.

The Waggoner Parties' second argument asserts that, because "the litigation will merely shift from a New York federal court sitting as a state court to a New York state court" as a result of dismissal (Waggoner Parties Opp. Mem. at 31), and because the attachment in the State Court Action was described therein as a continuation of the attachment ordered in this action, it has not been "finally decided that the plaintiff was not entitled to an attachment of the defendant's property." CPLR 6212(e).  This argument was already addressed in JVW VI, where the notion that no final decision had been reached with respect to the attachment was rejected:

> It has been finally determined that the plaintiff ... had
> no right to bring the action in this forum.  Having no
> such right, he had no right to obtain an attachment here
> and this is a final determination on the merits of the
> attachment.  Whether or not [plaintiff] can maintain an
> action in some other forum has nothing to do with the
> question presented.

JVW VI, 2003 WL 2221746, at *2 (quoting Minskoff v. Fidelity & Cas.

Co., 28 A.D.2d 85, 87, 281 N.Y.S.2d 410, 412 (N.Y. App. Div. 1st Dep't 1967), aff'd, 23 N.Y.2d 706, 296 N.Y.S.2d 151, 243 N.E.2d 755 (1968)) (quotation marks omitted). The Waggoner Parties' efforts to distinguish Minskoff are unconvincing and their reliance on In re Koreag, Controle et Revision S.A., 130 B.R. 705 (Bankr. S.D.N.Y. 1991), vacated, 961 F.2d 341 (2d Cir. 1992), is misplaced for the reasons previously set forth in JVW VI, see JVW VI, 2003 WL 2221746, at *2, and for the additional reason that the plaintiff in Koreag was found to be "entitled" to pursue its remedies in the chosen forum, an entitlement absent here by virtue of the lack of subject matter jurisdiction.

The cursory recitation of the Waggoner Parties' further argument that JVW, and not Waggoner, is the party who obtained the attachment and that references to Waggoner in the relevant pleadings and motion papers were mere surplusage provides insufficient grounds for revisiting this Court's earlier determination, hereby readopted, that both JVW and Waggoner are liable for SSBT's costs and fees with regard to the wrongful attachment. See JVW VI, 2003 WL 221746, at *2; see also Correspondent Services, 338 F.3d at 126 (discussing the possible "prejudice that JVW and Waggoner would suffer if they lost their attachment of SSBT's assets") (emphasis supplied).

In view of the foregoing, SSBT's request for an award of costs and attorney's fees with regard to the wrongful attachment of

43

its assets is granted.  SSBT shall submit to this Court within thirty (30) days of entry of this opinion and order such materials as it may deem necessary to ascertain the amount of such costs and fees to be awarded, whereupon a briefing schedule and, if appropriate, a date for a hearing as to the amount of any such damages shall be set by the Court.

## Conclusion

For the reasons set forth above, the Waggoner Parties' motion for leave to file a surreply memorandum of law is granted, as is SSBT's motion to dismiss Count Three of the amended complaint, to vacate this Court's previous orders of attachment, and for an award of costs and attorney's fees.  This action is dismissed in its entirety for lack of subject matter jurisdiction, and SSBT shall submit to this Court within thirty (30) days of entry of this opinion and order such materials as it may deem necessary to ascertain the amount of costs and attorney's fees to be awarded to SSBT.

It is so ordered.

New York, NY
September 29, 2004

**ROBERT W. SWEET**
**U.S.D.J.**

44