Gary H. Glaser, Esq. (GG-9696)
James S. Yu, Esq. (JY-9734)
SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Plaintiff
  Robert Half International Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ROBERT HALF INTERNATIONAL INC.,  :   07-CV-
                                 :
           Plaintiff,            :   **SUPPLEMENTAL**
                                 :   **DECLARATION OF**
  - against -                    :   **DAWN S. FAY**
                                 :
DAVID WOJDYL; and                :
THE EXECU/SEARCH GROUP, INC.     :
                                 :
           Defendants.           :
-----------------------------------------------------------x

DAWN S. FAY, hereby declares under penalty of perjury:

1.      I am employed by Robert Half International Inc. ("RHI") as Regional Vice President with responsibility over several branch offices in the United States, including RHI's New York City offices located at 245 Park Avenue, New York, New York, and 33 Whitehall Street, New York, New York (together, "RHI's NYC Offices"). I have been employed by RHI since September 30, 1996. I provided a previous Declaration dated May 14, 2007, and make this Declaration in further support of RHI's motion for a temporary restraining order and a preliminary injunction against Defendants David Wojdyl ("Wojdyl") and The Execu/Search Group, Inc. ("Execu/Search") (collectively, the "Defendants"), enjoining Defendants from unfairly competing with RHI, and breaches and/or tortiously inducing breaches, of Wojdyl's

1

written employment agreement with RHI, misappropriating and using RHI's confidential and proprietary information and trade secrets to compete directly with RHI, and improperly trading upon RHI's name and reputation, and in further support of RHI's motion for expedited discovery.

2. I make this Declaration upon my own personal knowledge and upon information provided to me by the records of RHI, or information available through other employees of RHI, except where it is expressly indicated otherwise.

## RHI'S BUSINESS

3. Defendants appear to be arguing that RHI isn't entitled to relief because the group that Wojdyl worked in, the Financial Services Group of the Robert Half Finance and Accounting Division, is supposedly a "fledgling" group, compared to Execu/Search's supposedly "well-established" financial services division. This is an interesting juxtaposition, since they are also making an apparently inconsistent argument, where they try to hide behind the claim that this case should be viewed as, in essence, a huge worldwide corporate giant trying to beat up on a poor, regional competitor in order to stamp out legitimate competition. But nothing could be further from the truth as to either of Defendants' arguments.

4. First of all, RHI has been actively engaged in the business of providing permanent recruiting services to the financial services industry since its founding in 1948 – *almost sixty years ago*. In fact, RHI's motto for as long as I've been with the Company, has been that it is "The World's Oldest and Largest Specialized Recruiting Firm Focused on the Accounting, Finance, Banking *and Brokerage Industries."*

5. Further, contrary to Mr. Wojdyl's claims, the Financial Services Group ("FSG") on the perm side of RHI's business, was established as a separate, identifiable and distinct part of

the Finance and Accounting Division in the New York Office long before January, 2006. In fact, it was established in 1998, but then, with the events and aftermath of 9/11 in the financial services industry and the adverse impact that had on hiring, in or around April, 2003, it was temporarily re-absorbed into the Finance and Accounting Division as a whole. Then, with the growing health of the industry once again, FSG was reactivated in New York as a separate and distinct group in the Division in or around September, 2005. FSG was established as a separate group as part of the temp side of the Finance and Accounting Division in the beginning of 1999, however, and continued, without interruption, to the present.

6. Defendants also attempt to argue that because Wojdyl worked on the "permanent placement" side of RHI's business in the Financial Services Industry and does so for Execu/Search as well, that the "temporary placement" side of the business that both RHI and Execu/Search are engaged in, is somehow irrelevant to this dispute. In fact, Defendants go so far as to accuse RHI's counsel of using a "canned brief" because they invoke the fact that RHI gains a competitive advantage over its competitors – *such as Execu/Search* – in part because of the confidential and proprietary information RHI develops about its candidates, -- referring to their test scores and evaluations by various employers. However, Execu/Search is completely misleading the Court by saying that such information only applies to the temporary placement business and not to the permanent placement business in which Wojdyl was involved for both RHI and Execu/Search.

7. Thus, the way our business works is that the temp and permanent placement sides of the business work very closely together, as do the temp staffing managers and the perm recruiting managers – and they do so because it makes perfect business sense. Why? Because a substantial number, if not most, temp placement candidates are also looking for permanent

3

positions, and, by the same token, most perm placement candidates, -- if they are unemployed -- are looking for temporary work while they look for permanent positions. As a result, a significant percentage of RHI's temp candidates register both with the temp division and the perm division, and a significant percentage of RHI's perm candidates register with both the perm division and the temp division. As a result, many perm candidates who are ultimately placed by RHI have previously worked on temp assignments through RHI, and have a proven track record of performance – *evidenced by their test scores or evaluations by various clients for whom they worked* -- which can then be used effectively in presenting them for permanent placement to RHI's clients who place perm job orders.

8. And, as a result of the cross-selling and leveraging between RHI's temp and perm divisions – which is part of RHI's proven business model – it is not unusual for perm recruiting managers to share billing credit for a temp placement, or for a temp recruiting manager to share billing credit for a perm placement. In fact, in Defendants' papers, they make a point of noting that Wojdyl had to "share credit" on many of his placements. To the extent this was true, it was, in fact, a result of his cross-selling and "partnering" with other divisions, and reflects the extent to which the confidential client and candidate information he had access to, was not limited solely to the perm Financial Services Group.

9. And, because of Wojdyl's access to RHI's confidential and proprietary information relating to RHI's temp candidates as well as perm candidates, -- and relating to those RHI clients with whom RHI has placed temp candidates as well as perm candidates – his being allowed to compete in violation of his Employment Agreement, given his demonstrated penchant for taking RHI's confidential and proprietary information and violating his legal obligations to

both RHI *and, according to Defendants, to Execu/Search as well*, would subject RHI to extremely unfair competition on the part of both Wojdyl and Execu/Search.

### RHI'S TRADE SECRETS AND CONFIDENTIAL INFORMATION, AND WOJDYL'S UNLAWFUL CONDUCT REGARDING SAME

10. In addition to the above, Wojdyl had access to, and was familiar with, not only confidential and proprietary information about the RHI clients and candidates with whom he had the primary relationship on behalf of RHI, but with those with whom his two "partners" in the Financial Services Group worked, as well. In addition, Wojdyl had access to RHI's proprietary client and candidate database for all of RHI's divisions for the entire District, which encompasses NYC, Long Island and New Jersey. This, too, would give him an unfair competitive advantage were he allowed to use or disclose that information in connection with his employment by Execu/Search.

11. With regard to Wojdyl's and Execu/Search's claims that Wojdyl can't possibly cause RHI any irreparable harm because he hasn't made a single placement while employed by Execu/Search and because he denies that he still possesses any of the information or documents that he admits stealing from RHI, such claims are completely incredible. In fact, in my original Declaration I noted that RHI had been advised by at least one client with whom Wojdyl worked while with RHI, that it had been receiving telephone calls from Wojdyl regarding job orders that he had knowledge of, and had worked on, while he was employed by RHI. I understand that Wojdyl even told that client *that he was calling to work the job orders that he got when he was with RHI.*

12. Significantly, I also now understand that the client referenced above whom Wojdyl solicited on behalf of Execu/Search about those job orders he was working on while with RHI, *was one of the clients listed as a "hot" client having job opportunities available on one of*

5

*the very documents that it appears Wojdyl printed out on the Sunday night before his resignation, when he came into RHI's offices between the hours of approximately 8:20 p.m. and 10:58 p.m., and printed out a host of documents containing RHI's confidential and proprietary information.* A copy of the Building Facility Log showing the dates and times that Wojdyl entered the building between March 7 and March 26, 2007 – his last day in the office – is attached as Exhibit A. Moreover, this client is one of the clients and client contacts listed on one of the other documents that Wojdyl admittedly printed out on the morning of his resignation, *but which he claims he turned over to his supervisor, Keith Feinberg, and his two partners.* It appears clear that although he may well have provided copies of some of those documents to those individuals, that he also took copies for himself, as well, as evidenced by his having contacted at least this RHI client and client contact in question.

13. I note that in his Affidavit, Wojdyl points out that the Offer Letter he signed "as a condition of Execu/Search employment" "expressly provided that [he] was prohibited from misappropriating or exploiting RHI's confidential and proprietary information." (Wojdyl Affidavit, Para. 17.) He then admits, in the very next paragraph of his Affidavit, that he "erred by taking some of RHI's property in advance of my resignation." What he omits to say, however, is that he did so *within 48 hours* of having signed that very letter agreeing to abide by its terms. It makes one wonder whether Execu/Search truly warned him not to do what he then immediately turned around and did, or did so with a "wink and a nod".

14. The question of whether – or at least how sincerely -- Execu/Search actually warned Wojdyl not to take any of RHI's confidential and proprietary information becomes even stronger when one sees from the Offer Letter, attached as an Exhibit to Execu/Search's CEO's Declaration, that Execu/Search paid Wojdyl a handsome premium for coming to work for them:

6

a draw of $8,333.33 per month, or just pennies under $100,000 a year. This, while Execu/Search and Wojdyl both depict Wojdyl throughout their papers in this case as a terrible performer at RHI with no recruiting experience or training of any value, who couldn't even make his $48,000 draw while with RHI. It truly makes one wonder why, then, Execu/Search was willing to pay Wojdyl more than two times what he was earning at RHI: could it have been the invaluable RHI client and candidate information that perhaps he promised to bring with him?

15.  Execu/Search makes a major point in their papers -- for example, in the Declaration of their CEO, Edward Fleischman -- of claiming that virtually none of the information that RHI describes as confidential and proprietary actually is – particularly with reference to client and candidate information. It is very interesting, then, to note how Execu/Search found it so necessary to stress, in Wojdyl's Offer Letter, how, if he accepts their offer, he would be exposed to confidential information about Execu/Search's "clients, candidates, other employees, and/or the Firm". See Offer Letter, Exh. A to Declaration of Edw. Fleischman.

16.  Even more telling is how Wojdyl's Offer letter goes on to state that "Execu/Search is commited to providing a secure environment *for confidential client information in order to prevent its loss or misuse.*" (emphasis added) And, the final icing on the cake is the fact that Execu/Search then advised Wojdyl that his employment "is, therefore, conditioned on [his] execution of the Confidentiality And Non-Solicitation Agreement, attached hereto as Exhibit B," and then instructs that he is "required to abide by the terms of the Confidentiality And Non-Solicitation Agreement throughout your employment with Execu/Search and thereafter." Somewhat disinguously, however, Mr. Fleischman rather conspicuously neglected to attach *that document* to his Declaration. The same is true of Wojdyl's Affidavit dated May

16, 2007, to which he also attached a copy of his Execu/Search Offer Letter – as Exhibit B – but rather obviously neglects to provide a copy of the Agreement. It is also interesting that both he and Mr. Fleischman failed to attach a copy of his compensation package, which was apparently attached as Exhibit A to his original Offer Letter. It certainly makes one wonder what they are hiding.

17. Wojdyl also makes a point of the fact that he was required to sign his RHI Employment Agreement as a condition of his employment with RHI, and that he wasn't provided an opportunity to negotiate its terms. It is curious to note that he doesn't mention in his Affidavits that he was required to sign the Execu/Search Confidentiality And Non-Solicitation Agreement as a condition of his employment there, or that he apparently wasn't provided the opportunity to negotiate the terms of that agreement, either.

18. It is also curious that while Wojdyl claims that he no longer has any of RHI's confidential and proprietary information (Wojdyl Affidavit, para. 18), he doesn't say when, or how he came to no longer possess such information; nor does he say what he did with it.

19. Defendants also claim, as I understand it, that who RHI clients are is not information that is legally protectable because, in essence among other things, companies who are potential clients of recruiting firms like RHI and Execu/Search supposedly post their job openings on the internet for all to see. That may be true of the majority of perm job openings that Execu/Search tries to fill, but that is not true of RHI. Rather, some of the perm positions that RHI fills are confidential openings which the client *cannot* post on the internet sites such as Monster.com or Careerbuilders.com, because they are replacing the person presently holding the position and, for obvious reasons, they cannot reveal that that person's job is in jeopardy; others

are not posted by the client at all because they choose not to expend their own time and resources to fill a needed position.

20. In my original Declaration, I also noted that Wojdyl periodically forwarded to his personal email account items that contained RHI's confidential, proprietary and trade secret information. Defendants apparently dispute that any of the information that Wojdyl stole was confidential or proprietary – although Execu/Search insists it never received any of the documents or information that Wojdyl stole, so it is unclear what the basis is for their contention. However, to clarify the email that I referred to in my original Declaration, in paragraph 40: among other things, it contained an attachment which was *a complete list of all of the FSG Group's clients with whom RHI actually placed one or more perm candidates in all of calendar year 2006, in the entire country, by client location.* This list contained *the names of almost 300 RHI Financial Services Group clients*, counting some of the clients' divisions, with whom RHI had a successful relationship, with its resulting good will, in 2006.

21. The list described above is certainly confidential and proprietary information of RHI, and is not available to *anybody* outside of RHI. Moreover, it is by no means "stale" information, and provides a perfect roadmap which an unscrupulous former recruiting manager or a competitor could use to strategically attempt to trade on RHI's hard-earned goodwill with such clients, to unfairly compete. Significantly, this was an attachment to an email which Wojdyl forwarded from his RHI email account to his personal home email account around 10:18 p.m. on Sunday night, March 25, 2007 – *the night before his resignation while Wojdyl was at RHI's facilities printing out confidential documents and engaging in his other unlawful conduct.* It is also curious that, as I understand it, this was an email which Defendants' counsel provided to RHI's counsel, representing that they understand that Wojdyl deleted these documents from

9

email from his Hotmail account and that he has not retained copies; and yet, I understand that the "Printed" date and time which shows on the email is "Tuesday, May 15, 2007 7:22 p.m." – the evening of the day that I understand our counsel notified Execu/Search and Wojdyl that they were going to federal court to seek a temporary restraining order.

22. Injunctive relief is necessary and appropriate because RHI's goodwill with its clients and candidates, and its confidential, proprietary and trade secret information has been forever compromised and lost as a result of Wojdyl's unlawful activities, engaged in with the tolerance of, if not complicity and encouragement of, Execu/Search. If the Defendants continue to compete unfairly, RHI will suffer further damage that cannot be compensated by money alone.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on May 23, 2007

/S/<br>Dawn S. Fay

EXHIBIT A

| | | 08:55:28 EST | | | N - IN | | Inc. | | |
|---|---|---|---|---|---|---|---|---|---|
| 34 | 2007-03-07 13:33:21 EST | CR | | Log In | Lex Lane 2 - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 35 | 2007-03-08 07:51:23 EST | CR | | Log In | Main Vis Lane N - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 36 | 2007-03-08 11:11:02 EST | CR | | Log In | JPM Vis Lane S - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 37 | 2007-03-08 14:29:18 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 38 | 2007-03-08 19:42:28 EST | CR | | Log Out | Main Vis Lane N-OUT | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 39 | 2007-03-09 07:57:02 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 40 | 2007-03-09 11:00:43 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 41 | 2007-03-09 14:09:15 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 42 | 2007-03-09 19:55:51 EST | CR | | Log Out | Main Mid Lane - OUT | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 43 | 2007-03-11 16:21:31 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 44 | 2007-03-11 21:25:40 EST | CR | | Log Out | Main Vis Lane N-OUT | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 45 | 2007-03-12 06:59:03 EST | CR | | Log In | JPM Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 46 | 2007-03-12 13:30:43 EST | CR | | Log In | Lex Lane 3 - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 47 | 2007-03-12 15:40:26 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 48 | 2007-03-12 19:22:02 EST | CR | | Log Out | Main Mid Lane - OUT | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 49 | 2007-03-13 08:06:10 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 50 | 2007-03-13 13:12:54 EST | CR | | Log In | JPM Lane N - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 51 | 2007-03-13 19:58:39 EST | CR | | Log Out | Main Lane S. - OUT | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 52 | 2007-03-14 08:28:30 EST | CR | | Log In | Main Vis Lane N - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 53 | 2007-03-14 13:21:07 EST | CR | | Log In | Lex Lane N. - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 54 | 2007-03-14 14:56:20 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 55 | 2007-03-15 07:58:02 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 56 | 2007-03-15 16:01:31 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 57 | 2007-03-16 08:57:16 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 58 | 2007-03-16 13:48:20 EST | CR | | Log In | Main Vis Lane N - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 59 | 2007-03-16 13:54:05 EST | CR | | Log In | Lex Lane N. - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 60 | 2007-03-19 07:50:34 EST | CR | | Log In | Main Mid Lane - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 61 | 2007-03-19 13:55:26 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 62 | 2007-03-20 07:59:19 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 63 | 2007-03-20 12:34:31 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 64 | 2007-03-20 14:04:15 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 65 | 2007-03-20 19:50:17 EST | CR | | Log Out | Main Lane S. - OUT | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 66 | 2007-03-21 08:10:18 EST | CR | | Log In | Main Lane S. - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 67 | 2007-03-21 14:09:17 EST | CR | | Log In | Lex Lane 2 - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| | 2007-03-22 | | | | | | Robert Half International | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 68 | 09:31:03 EST | CR | | Log In | Lex Lane 2 - IN | Concourse | Inc. | Wojdyl, David | 25th Flo |
| 69 | 2007-03-22 12:32:08 EST | CR | | Log In | Lex Lane 2 - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 70 | 2007-03-23 08:14:55 EST | CR | | Log In | Lex Lane 2 - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 71 | 2007-03-25 20:20:14 EST | CR | | Log In | Main Vis Lane N - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 72 | 2007-03-25 22:58:36 EST | CR | | Log Out | Main Mid Lane - OUT | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 73 | 2007-03-26 08:48:11 EST | CR | | Log In | Main Vis Lane N - IN | Lobby | Robert Half International Inc. | Wojdyl, David | 25th Flo |
| 74 | 2007-03-26 10:35:26 EST | CR | | Log In | Lex Lane 2 - IN | Concourse | Robert Half International Inc. | Wojdyl, David | 25th Flo |

↳ Last Day in office

©Touchcom 2002(R)

http://64.95.77.203/onefacility/reports/CombinedEventsLowerFrame.asp