UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
ROBERT HALF INTERNATIONAL INC.,                              :
                                                             :
                    Plaintiff,                               :
                                                             :
        - against -                                          :   07-CV-3821 (RWS)
                                                             :
DAVID WOJDYL; and                                            :
THE EXECU/SEARCH GROUP, INC.                                 :
                                                             :
                    Defendants.                              :
                                                             :
------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated:   New York, New York
         June 1, 2007


Of Counsel:

    Gary H. Glaser, Esq. (GG-9696)
    James S. Yu, Esq. (JY-9734)


                         SEYFARTH SHAW LLP
              1270 Avenue of the Americas, Suite 2500
                    New York, New York 10020-1801
                          (212) 218-5500

                        Attorneys for Plaintiff
                    Robert Half International Inc

Plaintiff Robert Half International Inc. ("RHI" or "Plaintiff"), by and through its attorneys, Seyfarth Shaw LLP, respectfully submits this memorandum of law in opposition to the motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), against Defendants David Wojdyl ("Wojdyl") and The Execu/Search Group, Inc. ("Execu/Search") (collectively, "Defendants").

## PRELIMINARY STATEMENT

Defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), for failure to meet the $75,000 federal diversity jurisdictional threshold, must be denied. The detailed allegations of the Complaint – as well as the record as a whole that has been submitted to the Court both in support and in opposition to RHI's Motion for a Preliminary Injunction -- more than amply demonstrate: (1) Plaintiff's monetary losses measured by the time and efforts expended by RHI to cultivate and develop the information misappropriated by the Defendants and the value of such information to a competitor; (2) the benefit unjustly received by the Defendants from the stolen information; (3) the amount of punitive damages to which RHI is entitled to based on the gross and wanton conduct of the Defendants; and (4) RHI's future harms, including damage to RHI's valuable good will. Such factors when considered either separately, or in their totality, provide a substantial good faith basis for RHI's claim that the amount in controversy exceeds $75,000 necessary for this Court to have subject matter jurisdiction.

Moreover, Plaintiff's newly amended additional claim for violation of the federal Computer Fraud and Abuse Act ("CFAA") provides an additional independent basis for the Court's subject matter jurisdiction and, in fact, moots Defendants' contentions based on the sole diversity basis of the original Complaint.

1

**STATEMENT OF FACTS**

Because Plaintiff's allegations must be accepted as true when considering a motion to dismiss, Plaintiff incorporates herein the Amended Complaint, dated June 1, 2007, as its Statement of Facts[1]. Plaintiff further refers to the prior Declaration of Dawn Fay, dated May 23, 2007, and the accompanying declaration of Dawn Fay, dated June 1, 2007 ("Fay Decl."), in support of RHI's Opposition to the Motion to Dismiss.

**ARGUMENT**

**I.    THE CONTROLLING LEGAL STANDARD.**

When deciding a motion to dismiss, "a court takes the facts as alleged in the complaint to be true, and must draw all reasonable inferences from those facts in favor of the plaintiff." Ortiz v. Cornetta, 867 F.2d 146, 149 (2d Cir. 1989). With respect to the amount in controversy, "[t]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Team Obsolete, Ltd. v. A.H.R.M.A. Ltd., 01-CV-1574 (ILG), 2005 U.S. Dist. LEXIS 19312, *11-12 (S.D.N.Y. Sept. 7, 2005) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938)).

The Second Circuit has further stated that although the party invoking federal jurisdiction must show by a reasonable probability that the amount in controversy requirement is satisfied,

---

[1] Because no Answer has been filed by either Defendant in this matter, RHI may amend the Complaint, *as a matter of right*. Fed. R. Civ. P. 15(a). Nor does the within Motion to Dismiss filed by Defendants cut off Plaintiff's right to Amend. Barbara v. New York Stock Exch., 99 F.3d 49 (2d Cir. 1996)(Rule 12(b)(6) motion to dismiss not "responsive pleading," so plaintiff had right to amend complaint to add federal claims and district court should not have dismissed). *See* 3 Moore's Federal Practice, § 15.11 (Matthew Bender 3d ed.). It should be noted, in any event, that the *only* manner in which the Complaint has been amended, was to add a new count under the Computer Fraud and Abuse Act; the factual allegations of the Complaint remain unchanged.

2

there is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Colavito v. New York Organ Donor Network, 438 F.3d 214, 221 (2d Cir. 2006). In order to rebut the presumption, "the defendant must show that the complaint 'was so patently deficient as to reflect to a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." Id.

In any event, "[b]efore making a determination that the plaintiff's claim does not meet the jurisdictional minimum, the court must afford the plaintiff an appropriate and reasonable opportunity to show good faith in believing that a recovery in excess of the jurisdictional amount is reasonably possible." A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 88 (2d. Cir. 1991). Evidentiary matters outside of the pleadings, such as affidavits and exhibits, may be considered by the court on a motion to dismiss for lack of subject matter jurisdiction. Evans Med. Ltd. v. Am. Cyanamid Co., 980 F. Supp. 132, 135 (S.D.N.Y. 1997).

Under this standard, the allegations of the Complaint plainly establish a reasonable probability that the amount in controversy exceeds $75,000. This is particularly true considering that this case involves the misappropriation of trade secrets, where the damages caused by the theft of those trade secrets can be calculated in several different ways: for example, the monetary value of the documents themselves, the loss or potential loss of profits, the unjust enrichment to plaintiff, and/or punitive damages. Defendants clearly have failed to satisfy *their burden* of showing that the complaint is patently deficient or a "legal certainty" that Plaintiff cannot recover the jurisdictional minimum.

II.     **RHI HAS ALLEGED THE AMOUNT IN CONTROVERSY IN GOOD FAITH.**

The Second Circuit has articulated four methods by which the amount of a plaintiff's damages may be calculated in an action for misappropriation of trade secrets, in order to make the necessary showing of threshold damages: (1) the loss to the plaintiff; (2) the profits unjustly received by the defendant; (3) the demand for punitive damages, where, as here, such damages are permitted; or (4) past losses and potential harm, where, as here, injunctive relief is sought. A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87-88 (2d. Cir. 1991). Applying these measures to the facts alleged in the Complaint and in the various affidavits filed in this case, RHI has clearly satisfied the jurisdictional threshold.

    A.     **Plaintiff Has Suffered Losses as a Result of Defendants' Unlawful Activities**

One appropriate measure of damages in a misappropriation of trade secrets case is the loss to the plaintiff. Such loss includes not only lost profit, but may also include the cost of developing the stolen trade secret. Cross Media Marketing Corp. v. Nixon, 06 Civ. 4228 (MBM), 2006 U.S. Dist. LEXIS 56112, *14 (S.D.N.Y. Aug. 11, 2006). The facts alleged in the Complaint describe in great detail the substantial time and effort expended by RHI over the many years of its existence by an incalculable number of recruiting and staffing managers, among others, in cultivating and developing the information contained in the documents that Wojdyl undisputedly stole. (Am. Compl. ¶¶ 10-20, 42). Such information was developed through years of repeat business with various clients and candidates. (Am. Compl. ¶¶ 10-20). RHI's success is due, in large part, to its research and understanding of the executive recruitment and staffing market, including the area of financial services, where Wojdyl worked. Id.

Thus, while RHI has not alleged any lost profits as a result of the Defendants' misappropriation, RHI may nevertheless recover the resources it committed to developing the

misappropriated trade secrets in the first place. See Cross Media Marketing Corp., at *15. The training materials that RHI continually creates and updates are the result of a compilation of years of experience and knowledge about the staffing industry, which by itself, is of immeasurable value, particularly to a competitor of RHI. See Softel, Inc. v. Dragon Medical and Scientific Communications Ltd., 891 F. Supp. 2d 936, 939 (S.D.N.Y. 1995) (considering direct labor costs, indirect labor costs, overhead expenses, and out of pocket expenses when determining the cost to develop proprietary information). On the eve of his resignation from RHI, among other things, Wojdyl printed from his computer 28 pages of an RHI Financial Services Group Training Guide. The value of such a document to a competitor – or to Wojdyl being used for the benefit of a competitor such as Execu/Search – is immeasurable, but surely in excess of $75,000 in value. (Fay Decl. ¶ 3.)

Further, the approximately 850 resumes of RHI candidates that Wojdyl emailed to himself could not have been collected by RHI without considerable advertising costs, along with the time and effort on the part of RHI and its employees, who spent countless hours screening potential candidates and collecting these resumes. (Fay Decl. ¶ 6). Similarly, the email that Wojdyl forwarded to his personal email account, which attached a list of nearly 300 FSG clients, were not just "any" clients: the clients on that purloined list *represented clients with whom RHI successfully made permanent placements in 2006, and detailed the number of permanent placements hired by each client at each of its locations, nationwide.* (Id.) That document provides a perfect roadmap which an unscrupulous former recruiting manager or a competitor could use to strategically attempt to trade on RHI's hard-earned goodwill with such clients, to unfairly compete.

Given the number of employee hours and years spent developing the aforementioned information, RHI cannot possibly calculate with a reasonable degree of precision, the value of the documents misappropriated by Defendants. (Fay Decl. ¶ 4.) Nevertheless, the types of documents and information contained therein – containing, as they do, confidential RHI information about, among other things, its client contacts, candidates and its business strategies and training – if possessed by a competitor, would give it a substantial competitive advantage over RHI. (Id.) The bottom line is that in order to cause RHI to lose more than $75,000 in revenue, all it would take is for a competitor to use that information and make a mere four to five placements, based on the standard industry placement fees and even a conservatively low salary estimate, to meet the $75,000 threshold. (Id.) Suffice it to say that RHI has pleaded the jurisdictional threshold of $75,000 in good faith, as it does not "appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Team Obsolete, 2005 U.S. Dist. LEXIS, at *11-12.

Also, without the benefit of full discovery, RHI does not yet know the full extent of Defendants' misconduct, i.e. the identify of all the documents misappropriated, and whether Defendants have in fact used the information contained in those documents. Defendants readily admit to their destruction of some unidentified RHI confidential or proprietary information. (Wojdyl Aff., dated May 16, 2007, ¶ 26). It is this very destruction that also makes it impossible for RHI to establish exactly what documents Defendants stole and the value of those documents. Defendants cannot be heard to rely on their admitted spoliation to argue that damages cannot be measured. Pursuant to Fed. R. Civ. P. 37(b), RHI intends to seek sanctions against Defendants for their destruction of documents, and it is respectfully submitted that the sanction sought will provide an adverse inference that the documents destroyed had a value in excess of $75,000.

### B. Defendants' Unjust Profits

Another appropriate measure of RHI's damages is any improper profit unjustly derived by the Defendants as a result of their misappropriation of Plaintiff's trade secrets. Cross Media Marketing Corp. v. Nixon, 06 Civ. 4228 (MBM), 2006 U.S. Dist. LEXIS 56112, at *14 (S.D.N.Y. Aug. 11, 2006). Defendants simply state that they have not used any of the stolen information (Wojdyl Aff., dated May 16, 2007, ¶ 26), notwithstanding the evidence to the contrary, and that Wojdyl has not made any successful placements (Wojdyl Aff., dated May 16, 2007, ¶ 8). Because RHI's allegations must be presumed true on a motion to dismiss, Defendants' self-serving denials and pleas of innocence are not appropriate for consideration. In any event, RHI has learned from at least one client with whom Wojdyl worked while with RHI, that it had been receiving telephone calls from Wojdyl regarding job orders that he had knowledge of, and had worked on, while he was employed by RHI. (Am. Compl. ¶ 48.) Wojdyl even told that client that he was calling to work the job orders that he got when he was with RHI. RHI has also recently learned that an Execu/Search employee has solicited at least one other RHI candidate whom Wojdyl knew about as a result of his employment with RHI. Upon information and belief, that candidate was not engaging in a public search for employment and had not posted his resume on the internet. Thus, the only reasonable inference is that Execu/Search learned of the candidate through confidential RHI information disclosed by Wojdyl. (Fay Decl. ¶ 8.)

Furthermore, where, as here, even if the Defendants have been unsuccessful at making a profit from their ill gotten gains, "the lack of actual profit does not insulate the defendants from being obliged to pay for what they have wrongfully obtained." Cross Media, 2006 U.S. Dist. LEXIS 56112, at * 14. Thus, although Defendants assert that they were not successful in

7

profiting from their misappropriation, they still bear the burden of paying for the cost of developing the lists they have wrongfully obtained. Id.

### C. **Punitive Damages.**

New York law allows for the recovery of punitive damages in trade secrets cases where the defendant's conduct has been "gross and wanton," and such damages should be considered in determining whether the jurisdictional threshold has been met. A.F.A. Tours, Inc., 937 F.2d at 89 ("AFA's request for punitive damages in the amount of $250,000 might provide a basis for satisfaction of the jurisdictional amount.").

First, RHI has pleaded facts sufficient to find that Defendants have engaged in gross and wanton conduct. Namely, Wojdyl entered RHI's offices under cover of night on Sunday, March 25, 2007, the day before his resignation, and systematically printed out and removed from the office approximately 45 documents, including information relating to RHI's clients, their contact names, e-mail addresses, and telephone numbers; information relating to open and pending job orders with RHI's customers; candidate information, including resumes; a training guide on recruiting candidates; a 28-page FSG training guide; and a complete list of all FSG clients in the entire United States with whom RHI actually placed at least one permanent candidate in calendar year 2006. (Am. Compl. ¶¶ 42-44.) Second, in the days leading up to his resignation, Wojdyl emailed an unknown number of RHI documents to his personal Hotmail account, including the list of nearly 300 RHI FSG clients and a zip file containing approximately 850 RHI candidate resumes. (Am. Compl. ¶ 45; Fay Decl. ¶ 6.) The extent of Wojdyl's e-mail abuse will likely remain unknown, as Wojdyl claims to have destroyed some of those documents and all records pertaining to them. (Wojdyl Aff., dated May 16, 2007, ¶ 26.) There can be no conclusion other than that Wojdyl's act of emailing to himself RHI's confidential and proprietary documents, and

8

systematically printing out other documents in the waning hours of a Sunday night before his resignation, was an intentional and wanton act of bad faith for the sole purpose of engaging in unfair competition against RHI. Third, the foregoing conduct is not only a flagrant violation of his employment agreement with RHI, and his common law duty of loyalty to RHI, but Wojdyl also violated a purported agreement with Execu/Search not to misappropriate any information from RHI within 48 hours of executing it. (Wojdyl Aff., dated May 16, 2007, ¶ 17).

Defendants urge the Court to find the Complaint allegations insufficient to support a claim for punitive damages because some are alleged based on information and belief. This argument misses the mark, as the determination regarding the availability of punitive damages "is a determination that can best be made after each party has a full opportunity to present their evidence." The Topps Co., Inc. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 267-68 (S.D.N.Y. 2005). This is so because punitive damages are intended to punish the wrongdoer and deter others so inclined, and thus their availability is measured by the severity of the Defendants' conduct, which can only fully be known after Plaintiff has had the opportunity to conduct discovery. Id. The need for full factual development through discovery is especially acute where Defendants have already admitted to engaging in the destruction of evidence in an attempt to thwart factual development. Among other things, Defendants have thus far refused to agree to permit forensic discovery of their electronic data systems, and Plaintiff's motion that Defendants be compelled to submit to such discovery has not been ruled on by the Court. It is only by such forensic electronic discovery that the full extent of Defendants' wrongdoing, and the extent to which the confidential information that Wojdyl misappropriated from RHI has been transferred into Defendants' electronic data systems, can be determined.

At best, Defendants' argument shows that there may be an open question as to whether RHI will be able to prove that Defendants' conduct was gross and wonton and warrants the recovery of punitive damages. However, where "the present record does not foreclose that possibility," plaintiff's potential recovery of punitive damages must be considered when calculating whether the jurisdictional threshold has been satisfied. A.F.A. Tours, 937 F.2d at 89.

A punitive damages award is appropriate in a misappropriation of trade secrets case even where compensatory damages are comparatively small. See Softel, Inc., 891 F. Supp. 2d at 946 (granting $250,000 in punitive damages on misappropriation of trade secrets claim where compensatory damages on same claim were limited to $27,880). Significantly, Defendants, in their moving papers, estimate that at most RHI would be able to prove compensatory damages of $37,500. See Defendants' Memorandum of Law In Support of Motion To Dismiss at 7. Applying the Softel apparent multiplier of 8.967 to calculate punitive damages in that case ($27,880 x 8.967 = $250,000) to the number proffered by Defendants' counsel herein, punitive damages of $337,500 ($37,500 x 8.967 = $337,500) would appear to be plainly reasonable even based on Defendants' own compensatory damages number – *well in excess of the $75,000 jurisdictional threshold.*

Thus, Punitive damage awards may be far in excess of compensatory damages, as the amount fixed need bear no particular relationship to the amount awarded as compensatory damages, but rather must bear a reasonable relationship to the wrong committed. Id. Thus, punitive damages in excess of $75,000 must be considered when determining whether the jurisdictional threshold has been satisfied herein.

D.  **Potential damages**

Because injunctive relief is sought by RHI, measuring potential harm is another appropriate method of computing damages. A.F.A. Tours, 937 F.2d at 87-88. Potential harm or loss of future profits consists of revenue the former employee could generate in the future using the misappropriated information of his former employer. Id. at 88-89. Additionally, potential harm can be measured by the extent to which RHI can show that the Defendants' conduct compromised the company's good will. See Toltec Fabrics, Inc. v. August, Inc., 29 F.3d 778, 780(2d Cir. 1994).

Given that the standard fee in the staffing industry for a successful placement of a candidate is anywhere from 20% to 35% of the annual salary of the successfully placed candidate, the $75,000 statutory threshold is easily met. (Fay Decl. ¶ 9.) By way of example, if one were to assume an average annual salary of $50,000 per placement – which is a conservatively low figure for a financial services employee in the New York metro area – and further assume the industry minimum estimated fee of 20%, Defendants need only make a mere eight placements ($10,000 each) to cause more than $75,000 in damages to RHI – either as a measure of RHI's potential lost profits, or the potential profits to be gained by Defendants at RHI's expense and as a result of the misappropriation of RHI's confidential, proprietary and/or trade secret information. (Id.)

Armed with the admittedly stolen list reflecting 300 RHI clients which actually hired RHI candidates, and detailing the number of placements actually made at each client's listed locations, nationwide; and armed with the over 800 candidate resumes (many of such candidates who typically seek annual salaries into 6 figures), which we now know Wojdyl also misappropriated, Defendants' use of the information is far more likely to cause damages well

11

beyond $75,000, and could indeed potentially cause RHI to lose or Defendants to gain more than $1 million as a result of the misappropriation of RHI's protected information, if the Court were to assume more realistic figures than used in the example above. (Fay Decl. ¶ 10.)

Indeed, just considering the number of placements reflected on the list stolen by Wojdyl of approximately 300 clients with whom RHI made placements in 2006, the value of that information would far exceed $1,000,000, let alone $75,000, measured by an approximation of the revenues represented by those placements using the conservative industry figures noted above. (Fay Decl. ¶ 10.)

In addition, RHI can also show with reasonable certainty a loss of value of good will. A Plaintiff claiming loss of good will must show with reasonable certainty: (1) the fact of a loss of good will; (2) the amount of the loss; and (3) the direct causation of that loss by the defendants' breach. Toltec Fabrics, Inc., at 782.

First, for nearly 60 years, RHI has developed a reputation for high quality, professional and state-of-the-art recruitment and placement services and has become broadly recognized as a source from which clients and qualified candidates may seek placement services in New York and throughout the United States, as well as Europe and Australia. (Am. Compl. ¶¶ 10-20.) Because RHI's business is a service business, the relationship that RHI has with its clients is wholly dependent on the attention and service which RHI gives, on an ongoing basis, to each of its clients and candidates, as well as its knowledge and strategic position in this competitive field. (Id.) RHI's good will is critical to its success and includes repeat business with its established clients, which results from its well-deserved reputation for guarding the confidentiality of the often sensitive information which it has gathered, analyzed and developed over the period of its many years of existence. (Id.)

Second, the amount of the loss in good will can be objectively quantified. The Financial Accounting Standards Board requires public companies such as RHI to identify good will as a separate line item on their financial reports. (Financial Accounting Standards Board, Summary of Statement No. 142: Goodwill and Other Tangible Assets, issued June 2001.) The Consolidated Financial Reports of RHI for calendar year 2006 shows RHI's net good will and other intangible assets to be valued at $178,665,000. (Wojdyl Aff. dated May 16, 2007, Ex. A, at pp. 32, 36.) There are 356 RHI locations worldwide that each contribute to the RHI's goodwill. (Fay Decl. ¶ 12.) Assuming, without conceding – solely for the purpose of a simple illustration -- that each location contributes equally to RHI's good will, then each location is responsible for generating or maintaining approximately $501,868 in good will. The damaging acts of Wojdyl in misappropriating a substantial amount of RHI's New York City Financial Service Group's candidate and placement information, could, therefore, significantly and negatively impact the good will of the New York City offices from which the information was stolen in an amount up to $501,868.

Third, the Complaint has alleged causation: the Complaint specifically identifies Wojdyl as the source of the breach of confidence. (Am. Compl. ¶ 48.)

In sum, RHI's future losses are calculated by looking at the loss of potential revenue attributable to Wojdyl, as well as the potential loss of good will towards the New York City offices of RHI.

Thus, using any of the four calculation methods set forth by the Second Circuit in A.F.A. Tours, (1) the loss to the plaintiff; (2) the profits unjustly received by the Defendants; (3) the demand for punitive damages; and (4) past losses and potential harm where injunctive relief is

sought, RHI has plainly satisfied the jurisdictional threshold, and Defendants have clearly failed to carry their burden of demonstrating to the contrary.

### III. VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT PROVIDES AN INDEPENDENT BASIS FOR SUBJECT MATTER JURISDICTION.

RHI has amended the Complaint – as is its right pursuant to Fed. R. Civ. P. 15(a) – to include a new and separate cause of action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. ("CFAA"). Violation of the CFAA provides RHI with an independent basis for subject matter jurisdiction. See Civil Center Motors, Ltd. v. Mason Street Import Cars, Ltd., 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005). As set forth in the Amended Complaint, RHI's computer network is a protected computer network which is used across state lines in interstate commerce, has Internet across state lines, and was used to transfer RHI information for sales in interstate commerce. RHI's computers are "protected computers" used in interstate commerce and communication within the meaning of 18 U.S.C. § 1030(e)(2). (Am. Compl. ¶ 89.)

Wojdyl was not authorized by RHI, and/or exceeded his authority, to copy computerized files, download computerized files, print computerized files, access computer databases, transfer computerized files to his personal Hotmail account, misappropriate computerized files, and disclose computerized files to third parties, for his own use and gain. Through his actions, Wojdyl has (a) intentionally accessed a computer network without authorization and/or exceeded authority to obtain information from a protected computer in violation of 18 U.S.C. § 1030(a)(2)(C); (b) knowingly and with intent to defraud, accessed a protected computer network without authorization and/or exceeded authority, and by means of such conduct furthered the intended fraud and obtained valuable information resulting in damage exceeding $5,000, in violation of 18 U.S.C. Section 1030(a)(4); and/or (c) intentionally accessed a protected computer

14

network without authorization and/or exceeded authority, and, as a result of such conduct, caused damage exceeding $5,000, in violation of 18 U.S.C. Section 1030(a)(5)(A)(iii).

RHI has suffered damages, well exceeding $5,000, as a result of Wojdyl's actions in an amount to be determined at trial. The term "loss" under the CFAA means "any reasonable cost to any victim, including the cost of responding to an offense, conduct a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any venue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). See also Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 473 (S.D.N.Y. 2004).

Here, Wojdyl admitted in his affidavit that he destroyed some of the very documents that he stole from RHI. Wojdyl's act of spoliating such information of immeasurable value is sufficient, in and of itself, to meet the $5,000 threshold. Furthermore, as set forth in the allegations of the Amended Complaint, which must be presumed true for purposes of a motion to dismiss, Wojdyl's act of emailing documents to his home computer, his weekend theft of documents printed from his RHI computer, among other acts in violation of the CFAA, has caused – and will continue to cause -- RHI to devote substantial resources to investigating the extent of damage caused by Wojdyl's misconduct. Coupled with the inevitable costs that will be incurred by RHI in retaining investigators to image his computers and other electronic devices which he had access to, in order to assess the extent of Wojdyl's misappropriation, the extent of Wojdyl's spoliation, and to protect RHI from further harm to its business, RHI's claim that the resulting damages exceeds $5,000 is an allegation made in good faith.

## **CONCLUSION**

For the foregoing reasons, RHI respectfully requests that this Court deny Defendants' motion to dismiss in its entirety.

Dated: New York, New York
       June 1, 2007

SEYFARTH SHAW LLP
1270 Avenue of the Americas
Suite 2500
New York, New York 10020-1801


By: _____/s/_____
    Gary H. Glaser, Esq.
    James S. Yu, Esq.
Phone: (212) 218-5500
Fax: (212) 218-5500
E-mail: gglaser@seyfarth.com
        jyu@seyfarth.com


Attorneys for Plaintiff
  Robert Half International, Inc.