Gary H. Glaser, Esq. (GG-9696)
James S. Yu, Esq. (JY-9734)
SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Plaintiff
  Robert Half International Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
ROBERT HALF INTERNATIONAL INC.,                             :   07-CV-3821 (RWS)
                                                            :
                Plaintiff,                                  :
                                                            :   **DECLARATION OF**
        - against -                                         :   **DAWN S. FAY**
                                                            :
DAVID WOJDYL; and                                           :
THE EXECU/SEARCH GROUP, INC.                                :
                                                            :
                Defendants.                                 :
------------------------------------------------------------x

DAWN S. FAY, hereby declares under penalty of perjury:

1.      I am employed by Robert Half International Inc. ("RHI") as Regional Vice President with responsibility over several branch offices in the United States, including RHI's New York City offices located at 245 Park Avenue, New York, New York, and 33 Whitehall Street, New York, New York (together, "RHI's NYC Offices"). I have been employed by RHI since September 30, 1996. I make this Declaration in support of RHI's Opposition to the Motion to Dismiss filed by Defendants David Wojdyl ("Wojdyl") and The Execu/Search Group, Inc. ("Execu/Search") (collectively, the "Defendants").

2. I make this Declaration upon my own personal knowledge and upon information provided to me by the records of RHI, or information available through other employees of RHI, except where it is expressly indicated otherwise.

3. The training materials that RHI continually creates and updates are the result of a compilation of years of experience and knowledge about the staffing industry, which, by itself, is of immeasurable value, particularly to a competitor of RHI. And as previously set out in my Declarations in support of RHI's Motion for a Preliminary Injunction, on the eve of his resignation from RHI, among other things, Wojdyl printed from his computer 28 pages of an RHI Financial Services Group Training Guide. The value of such a document to a competitor – or to Wojdyl being used for the benefit of a competitor such as Execu/Search – is immeasurable, but surely in excess of $75,000 in value.

4. Given the number of employee hours and years spent by RHI developing the confidential, proprietary and trade secret information contained in the documents that Wojdyl printed from his computer and misappropriated, or emailed to his personal email account, RHI cannot possibly calculate with a reasonable degree of precision, the value of the documents misappropriated by Defendants. Nevertheless, the types of documents and information contained therein – containing, as they do, confidential RHI information about, among other things, its clients, client contacts, candidates and its business strategies and training -- if possessed by a competitor, would give it a substantial competitive advantage over RHI. The bottom line is that in order to cause RHI to lose more than $75,000 in revenue, all it would take is for a competitor to use that information and make a mere four to five placements, based on the standard industry placement fees, as explained more fully below.

5.  In addition, RHI spends considerable resources identifying client needs, the positions these clients are hiring, and matching up their needs with suitable candidates. RHI incurs substantial advertising costs, including, but not limited to, online advertising, trade magazines, radio, monitors in elevators, to name a few, not to mention the compensation cost to recruiters who spend entire days screening and researching potential clients and candidates. The total value and cost of all of these resources, used to develop and maintain RHI's goodwill and support its efforts at providing its clients and candidates the best service, is clearly well over $75,000.

6.  After this action was commenced, RHI recently learned that on or about February 28, 2007, Wojdyl emailed to his personal email account a .zip file containing approximately 850 RHI candidate resumes. These resumes could not have been collected by RHI without considerable advertising costs, along with the time and effort on the part of RHI and its employees, who spent countless hours screening potential candidates and collecting these resumes.

7.  The resume .zip file that Wojdyl sent to his personal Hotmail account was in addition to the list of just under 300 RHI Financial Services Group clients that Wojdyl misappropriated. As stated in my previous Declarations in Support of RHI's Motion for a Preliminary Injunction, this list represted clients with whom RHI successfully made permanent placements in 2006. Significantly, the fact that Wojdyl sent this list to his personal email account on the eve of his resignation is not in dispute, as I understand that Defendants' counsel turned over a copy of such email to RHI's counsel after this action was brought.

8.  RHI also learned that an employee of Execu/Search has solicited at least one other RHI candidate whom Wojdyl knew about as a result of his employment with RHI. Upon

information and belief, that candidate was not engaging in a public search for employment and had not posted his resume on the internet. Thus, the only reasonable inference is that Execu/Search learned of the candidate through confidential RHI information disclosed by Wojdyl.

9. The standard fee in the staffing industry for a successful placement of a candidate is anywhere from 20% to 35% of the annual salary of the successfully placed candidate. If one were to assume an average annual salary of $50,000 per placement – which is a conservatively low figure for a financial services employee in the New York metro area – and further assume the industry minimum estimated fee of 20%, Defendants need only make a mere eight placements ($10,000 each) to cause more than $75,000 in damages to RHI – either as a measure of RHI's potential lost profits, or of the potential profits to be gained by Defendants at RHI's expense and as a result of the misappropriation of RHI's confidential, proprietary and/or trade secret information.

10. Armed with the admittedly stolen list reflecting 300 RHI clients which actually hired RHI candidates in 2006, and detailing the number of placements actually made at each client's listed locations, nationwide; and armed with the over 800 candidate resumes (many of such candidates who typically seek annual salaries into 6 figures), which we now know Wojdyl also misappropriated, Defendants' use of the information is far more likely to cause damages well beyond $75,000, and could indeed potentially cause RHI to lose or Defendants to gain more than $1 million as a result of the misappropriation of RHI's protected information, if the Court were to assume more realistic figures than used in the example above.

11. Indeed, just considering the number of placements reflected on the list stolen by Wojdyl of approximately 300 clients with whom RHI made placements in 2006, the value of

that information would far exceed $1,000,000, let alone $75,000, measured by an approximation of the revenues represented by those placements using the conservative industry figures noted above.

12. There are 356 RHI locations worldwide that each contribute to RHI's good will.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on June 1, 2007


Dawn S. Fay