Gary H. Glaser, Esq. (GG-9696)
James S. Yu, Esq. (JY-9734)
SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Plaintiff
  Robert Half International Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | | |
|---|---|---|
| ROBERT HALF INTERNATIONAL INC., | : | 07-CV-3821(RWS) |
| | : | |
| Plaintiff, | : | |
| | : | **AMENDED COMPLAINT** |
| - against - | : | |
| | : | |
| DAVID WOJDYL; and | : | |
| THE EXECU/SEARCH GROUP, INC. | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------x

Plaintiff Robert Half International Inc. ("Plaintiff" or "RHI"), by its attorneys Seyfarth

Shaw LLP, complaining of the defendants, David Wojdyl ("Wojdyl") and The Execu/Search

Group, Inc. ("Execu/Search") (collectively, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for a temporary restraining order, preliminary injunction,

permanent injunction, and damages arising from, among other things, Wojdyl's breach of his

employment agreement with RHI, which expressly prohibits him from competing within a

limited geographic area and time period; Wojdyl's unlawful misappropriation of RHI's

confidential, proprietary and trade secret information, including client and candidate information,

as well as RHI documents and business information; Wojdyl's breach of fiduciary duty and duty

of loyalty when he, while still employed with RHI, surreptitiously stole RHI's confidential, proprietary, and trade secret information with the intent to use such information for the benefit of himself and Defendant Execu/Search; Wojdyl's and Execu/Search's engagement in unfair competition with RHI by virtue of Wojdyl's becoming employed by Execu/Search, a directly competing business, and Wojdyl's/Execu/Search's misusing and misappropriating RHI's confidential and proprietary information for the benefit of Wojdyl and Execu/Search and the detriment of RHI; and Execu/Search's tortious inducement of Wojdyl to breach his written agreement with, and common law duties to, RHI.

2.     Wojdyl's employment agreement with RHI expressly forbids him from, among other things, using or disclosing RHI's trade secrets and confidential business information, the unauthorized use of RHI's name, and from joining Execu/Search, a direct competitor of RHI in the finance and accounting staffing industry, within the reasonably prescribed geographic territory described therein, for a period of twelve months.  Nevertheless, as set out in more detail below, during the days prior to announcing his resignation from RHI on March 26, 2007, Wojdyl transmitted to his private email account and systematically printed RHI's confidential, proprietary and trade secret information with the intent to use such information for his own benefit and the benefit of Execu/Search.  Wojdyl immediately commenced employment with Execu/Search upon his departure from RHI and, upon information and belief, since then has been actively contacting and/or soliciting both clients and candidates of RHI, with whom he was working while employed by RHI and whose names and other confidential information appear on the very documents which Wojdyl stole from RHI.

## THE PARTIES

3.     Plaintiff RHI is a Delaware corporation with its principal place of business located in the State of California.  RHI is authorized to do business in the State of New York and

2

maintains offices for the transaction of business at 33 Whitehall Street, 11th Floor, New York,

New York 10004, and at 245 Park Avenue, 25th Floor, New York, New York 10167 (together,

RHI's NYC Offices").

4.      RHI conducts business as a personnel services and executive recruiting and

placement firm, employment agency and temporary personnel service business.  RHI, through

various divisions such as financial services, information technology, legal services, creative, and

office and administrative professionals, specializes in placing personnel candidates with clients

of RHI in both permanent, project and consulting/temporary job positions in all industries.  RHI

offers such temporary, project and permanent personnel services under its RH Finance and

Accounting (including its Financial Services Group), Accountemps, OfficeTeam, RHI

Consulting, and other divisional trade names.

5.      Upon information and belief, Defendant David Wojdyl is a citizen of the State of

New Jersey, residing at 47 Hudson Place, Apt. 1, Weehawken, New Jersey 07086.

6.      Wojdyl was previously employed with RHI's Finance and Accounting permanent

placement division, having worked in said division out of RHI'S NYC Offices prior to his

voluntary resignation from RHI on March 26, 2007.

7.      Defendant Execu/Search is a New York corporation with its principal place of

business located at 675 Third Avenue, 5th Floor, New York, New York 10017.  Upon

information and belief, Execu/Search also conducts business as a personnel services and

executive recruiting and placement firm, employment agency and temporary personnel service

business.

## JURISDICTION AND VENUE

8.      The Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, since there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendants reside or do business within this District and a substantial part of the events giving rise to the claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### I.      RHI's Business.

10.     Since 1948, RHI has developed a reputation for high quality, professional and state-of-the-art recruitment and placement services.  As a result of its reputation, training and marketing efforts, RHI has become broadly recognized as a source from which clients and qualified candidates may seek placement services in New York and throughout the United States, as well as Europe and Australia.  RHI's relationships with its clients are based on confidence in the quality of the services offered and an increased recognition of, and familiarity with, RHI as a provider of such quality services.

11.     Because RHI's business is a service business, the relationship that RHI has with its clients is wholly dependent on the attention and service which RHI gives, on an ongoing basis, to each of its clients and candidates, as well as its knowledge and strategic position in this competitive field.

12.     As such, some of RHI's most important assets include the goodwill and business reputation which RHI enjoys, its clients (who purchase employment-related services supplied by RHI personnel), its pool of qualified candidates for employment, as well as the information

4

compiled about such candidates, and its confidential information relating to its clients (including their preferences, needs, and requirements).

13.    RHI's goodwill is critical to its success and includes repeat business with its established clients and candidates.  Its repeat business with clients results from its successful performance of placement services, its extensive advertising and well-deserved reputation for guarding the confidentiality of the information which it has gathered, analyzed and developed over the period of its many years of existence, as well as its clients' relationships with RHI and its recruiting staff, including Wojdyl.

14.    Moreover, RHI's success is due, in large part, to its research and understanding of the executive recruitment and staffing market.

15.    RHI's Branch Managers, Division Directors, Recruiting Managers and Staffing Managers are responsible for developing and effectively accessing a base of qualified candidates for placement with RHI's clients, for locating such placement opportunities with new and existing clients of RHI, and for developing, cultivating and maintaining both new and existing client relationships with the goal of growing RHI's business opportunities to make such placements.

16.    All of RHI's Recruiting Managers are given training on and access to RHI's confidential information contained in its confidential files and computer databases.  Because RHI's business is a service business, the relationship which RHI has with its clients is wholly dependent on the personal attention and service which RHI personnel give, on an ongoing basis, to each of RHI's clients and candidates.

17.    As a result, each of RHI's Recruiting Managers – as well as each Staffing Manager -- is required by the company, as a condition of employment, to enter into an

employment agreement containing certain restrictive covenants, including non-competition, non-solicitation and non-disclosure provisions.

18.     Upon information and belief, agreements containing such provisions are common in the placement industry.

19.     RHI's goodwill is critical to its success and includes repeat business with its established clients and candidates.  Its repeat business with clients results from the performance of its recruiting managers, division directors, and staffing managers, and their relationships with those clients, many of which have been developed over many years.

20.     RHI's goodwill is also the result of extensive advertising and well-deserved reputation for guarding the confidentiality of the information which it has gathered, analyzed and developed over the period of its many years of existence.

## II.     RHI's Trade Secrets and Confidential Information.

21.     In addition to the identity of its many clients, RHI has extensive files on its clients' preferences, client contacts and their respective needs and particular requirements with respect to permanent, project and temporary placement services.

22.     The client lists and information concerning client contacts and their respective preferences, etc., are integral to RHI's efforts at developing and maintaining its goodwill.  RHI protects the confidentiality of such information and, therefore, such lists and information constitute trade secrets and/or proprietary, confidential information.

23.     RHI also maintains extensive files pertaining to all of the applicants and candidates who have registered with RHI as well as those candidates for permanent placement and project or temporary employees/consultants that it has placed with its clients.  (All such applicants, candidates and project or temporary employees/consultants will be referred to

collectively herein as "candidates"). These files, and the information they contain, such as test results and client performance appraisals of how a candidate performed on temporary/consulting assignments, allow RHI to develop first-hand experience with the skill level of each candidate.

24.    RHI solicits the submission of resumes and applications in confidence through extensive print, media and web-based advertising, referrals, word of mouth, as well as direct recruiting using its solid reputation. The information contained in RHI's client and candidate files is not available to the public and is considered a closely-guarded trade secret by RHI. Only RHI internal staffing professionals and administrative staff are given access to existing client account files and database including their respective contact persons, as well as to RHI's candidate files and database.

25.    Through the use of its candidate records, and years of business effort, RHI has been able to develop the trade and the patronage of its clients. The goodwill developed with RHI clients depends, in part, on RHI's timely provision of qualified candidates for all types of job openings.

26.    The candidate lists and information concerning job openings are integral to RHI's efforts at developing and maintaining its goodwill. RHI protects the confidentiality of such lists and information and, therefore, such lists and information constitute trade secrets and/or proprietary, confidential information.

27.    The extensive files containing RHI's client and candidate lists and information are created, maintained and updated by RHI in a proprietary database which was created/customized expressly for, and to, RHI's particular specifications and requirements at great cost and expense to RHI.

7

28.     RHI's Recruiting Managers give ongoing personal attention to RHI's clients and candidates. RHI expends substantial time and financial resources in identifying, recruiting, training and supervising these managers to maintain its high level of service to its clients and candidates. In addition, each such manager is supported in developing close, ongoing relationships with Robert Half clients and candidates. Consequently, RHI's clients and candidates identify RHI's overall service with its individual managers.

**III.     Wojdyl's Employment Agreement With RHI.**

29.     Wojdyl was hired by RHI on January 30, 2006 as a Recruiting Manager in the Finance and Accounting division of RHI's NYC Offices (at various times, he worked out of both the Midtown branch and the Wall Street branch). The Finance and Accounting division engages in the placement of personnel in the finance and accounting industry; Wojdyl was part of the division's Financial Services Group ("FSG"), which specializes in the placement of individuals in the financial services industry.

30.     In order to protect RHI's trade secrets and confidential information, its reputation and good name, and its market position, Wojdyl was required by RHI as a condition of his employment to enter into an employment agreement at the outset of his employment containing certain restrictive covenants, including non-competition, non-solicitation and non-disclosure provisions, as well as a provision prohibiting the use of RHI's name by Wojdyl except in the bona fide submission of resumes or filling out applications in the course of seeking employment. (A true and correct copy of Wojdyl's Employment Agreement is annexed hereto as Exhibits A.)

31.     Specifically, the restrictive covenants in Wojdyl's Employment Agreement prohibit him from disclosing or misusing RHI's confidential information. Section 8 of the Employment Agreement provides:

Disclosure or Misuse of Confidential Information. Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies, including, without limitation, information with respect to the name, address, contact persons or requirements of any customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract or permanent employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

32.     Moreover, also to protect RHI's trade secrets and confidential and proprietary information, as well as its good will, the Employment Agreement restricts the Wojdyl for a period of twelve months from becoming employed by any competing executive recruiting firm within a fifty-mile radius of any RHI office in which he worked or over which he exercised supervisory authority during the one-year period prior to the termination of his employment (defined within the Employment Agreement as "Applicable Office"). Section 9 of the Employment Agreement provides:

Restrictive Covenant. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by,

9

participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

33.    In order to prevent the unfair competition or access to confidential information which could be obtained by immediately recruiting other RHI employees to work for RHI competitors, Wojdyl further agreed in Section 11 of his Employment Agreement that

> for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, Solicit any Other Employee to either leave the employ of the RHI Companies or to become connected in any way with any Competitor.

"Other Employee" is defined in Section 7 of the Employment Agreement to mean "any individual (other than Employee [i.e., Wojdyl]) who is employed or engaged by an Applicable Office or who was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor."

34.    Moreover, to protect RHI's strong reputation and good will, the Employment Agreement prohibits the Wojdyl from trading on RHI's name for the benefit of himself or anyone else, while permitting him to use RHI's name for the limited purpose of seeking employment. Section 13 of the Employment Agreements provides in part:

> Wrongful Use of Employer's Name. After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment.

10

35.     Wojdyl expressly agreed that these restrictions were "reasonable and necessary in order to protect and maintain [RHI's] proprietary and other legitimate business interests" and that such restrictions do not prevent Wojdyl from earning a livelihood.  Wojdyl further agreed that temporary and permanent injunctive relief would be appropriate remedies against an actual or threatened breach of these restrictive covenants.

36.     Upon information and belief, Wojdyl read and understood the terms of his Employment Agreement at the time that he signed the Agreement.

37.     In a separate document entitled, "Acknowledgement of Trade Secrets Laws," which Wojdyl certified that he read and understood at the commencement of his employment, Wojdyl, once again, acknowledged that he was going to be privy to RHI's confidential information and trade secrets, namely, client and candidate lists and related information, and agreed to safeguard such trade secrets and not disclose, copy or remove them upon termination. The "Acknowledgments of Trade Secret Laws" provides in part:

> As a result of my employment, certain business records and information pertaining to the Company, the Company's affiliated companies, their employees, and clients may be made available to me, which I acknowledge constitute proprietary, confidential information and trade secrets ("Trade Secret" or "Trade Secrets"). . . .
>
> I acknowledge and agree that I have a duty to safeguard such Trade Secrets, not to disclose them to others and not to remove or copy materials which include any Trade Secrets, or to use any Trade Secrets outside of my present employment. . . .
>
> I understand that after termination of my employment, my solicitation of any temporary or permanent employment applicant, recruited candidate, temporary employee, or client of the Company may constitute the illegal taking of a Trade Secret for which I could be enjoined and be liable for money damages.

A true and correct copy of Wojdyl's certification that he read and understood the Acknowledgement, together with the Acknowledgment, is attached hereto as Exhibit B.

NY1 26469569.1

**IV.    Wojdyl's Resignation.**

38.    As early as March 19, 2007, Wojdyl appears to have been communicating with Gary Grossman, partner in charge of accounting and finance recruiting at Execu/Search, about possible employment with Execu/Search.  Shortly before that time, one of Wojdyl's co-workers who planned to leave RHI to work at Execu/Search – and who has since done so -- appears to have spoken to Grossman and Execu/Search about the possibility of Wojdyl coming to work for them, as well.

39.    Upon information and belief, on or about March 22, 2007, Wojdyl met with Mr. Grossman and Mitchell Peskin, partner in charge of Execu/Search's permanent placement divisions for financial services and human resources recruiting.

40.    Wojdyl tendered his resignation from RHI on Monday, March 26, 2007, upon information and belief, after he accepted an offer of employment with Execu/Search.  At the time of his resignation, Wojdyl was working primarily out of RHI's Midtown office.

41.    On that same day, March 26, 2007, Keith Feinberg, Director of Permanent Services of RHI with immediate supervisory responsibility for Wojdyl, and to whom Wojdyl tendered his resignation, met with Wojdyl and, among other things, reminded him of his continuing obligations to RHI, including his obligations concerning its confidential information and trade secrets that were made available to him throughout his employment at RHI and with respect to the restrictive covenants in his Employment Agreement and provided him with a written "Reminder of Post-Termination Obligations."  (A true and correct copy of Wojdyl's "Reminder of Post-Termination Obligations" is annexed hereto as Exhibit C.)

**V.    Wojdyl's Misappropriation of RHI Trade Secrets and Unlawful Conduct.**

42.    Prior to tendering his resignation from RHI, Wojdyl embarked on a stealth campaign to surreptitiously steal RHI's confidential, proprietary, and trade secret information

12

during non-business hours for his own use and benefit and for the use and benefit of
Execu/Search.

43.    Indeed, RHI's computer records indicate that Wojdyl was present in RHI's
Midtown Office both during after-hours in the final days of his employment with RHI and during
the weekend prior to his resignation, at times when the office was likely to be either empty of
other personnel, or sparsely populated by co-workers.  RHI's computer records further indicate
that during such time periods Wojdyl systematically printed various documents containing RHI's
confidential, proprietary, and trade secret information.  Upon information and belief, Wojdyl
stole such documents and information for the express purpose of converting and
misappropriating such documents and information to his own benefit and for that of
Execu/Search, and to unfairly compete with RHI

44.    The foregoing documents printed and retained by Wojdyl for his personal use and
benefit and for that of Execu/Search included, *inter alia*, information relating to RHI's clients,
such as their contact names, email addresses, and telephone numbers; information relating to
open and pending job orders with RHI's customers; candidate information, including resumes
that they had submitted to RHI to assist in their placement; a document entitled "WALL
STREET FSG PERM H-O-T" which was a list of FSG's "hot" client prospects, candidates and
job orders; an RHI document which is basically a "How-To" training guide on recruiting
candidates, and a 28-page FSG "Training Guide".   These documents are described by way of
example only, as Wojdyl appears to have printed out approximately 45 documents just on the
Sunday before his resignation, and on the Monday of his resignation.

45.    Furthermore, in the days leading up to his resignation, Wojdyl also periodically
forwarded to his personal email account other items containing RHI's confidential, proprietary,

13

and trade secret information. One of these emails contained information regarding recruiting and placement strategies and attached a list of clients whom RHI had received job orders from in 2006.

46.     Immediately after his departure from RHI, Wojdyl joined Defendant Execu/Search, where, upon information and belief, his responsibilities continue to involve the recruiting of personnel for the finance and accounting industries, within a short distance from RHI's NYC Offices, in direct competition with RHI. Upon information and belief, Wojdyl is working at Defendant Execu/Search's Headquarters' Offices, located at 675 Third Avenue, NYC. These offices are located approximately 2 ½ blocks east, and a little over 2 blocks south of the Midtown RHI office where Wojdyl last worked – approximately .62 miles "driving" distance, let alone "as the crow flies", and plainly well within the 50-mile radius that constitutes the restricted area set out in Wojdyl's Employment Agreement.

47.     Since Wojdyl joined Execu/Search, RHI learned that Wojdyl immediately began soliciting RHI's clients and candidates in direct violation of his Employment Agreement.

48.     Specifically, RHI was advised by at least one client with whom Wojdyl worked while with RHI, that it had been receiving telephone calls from Wojdyl regarding job orders that Wojdyl had knowledge of, and had worked on, while he was employed by RHI.

49.     RHI also recently learned that Wojdyl had contacted at least one other client and a candidate with whom he had been working while at RHI.

50.     In sum, since Wojdyl's departure from RHI, he has breached his Employment Agreement and his common law obligations to RHI, by directly competing with RHI in violation of his non-compete agreements, soliciting RHI's clients and candidates, and by misappropriating

NY1 26469569.1

and using RHI's trade secrets and confidential information, for the benefit of himself and his current employer, Execu/Search, to the detriment of RHI.

51.    Upon information and belief, Execu/Search knew of the restrictive covenants contained in Wojdyl's Employment Agreement, and nevertheless knowingly induced and caused him to breach that contract.

## VI.    Irreparable Harm to RHI.

52.    Defendants' actions have harmed RHI's business, especially its relationships with its clients and candidates, reputation and goodwill.

53.    RHI's trade secrets and confidential client information that Wojdyl has thus far disclosed to Execu/Search and has used to unfairly compete with RHI can never be secret again.

54.    The unique relationships with RHI's clients and candidates which Wojdyl was given the opportunity to forge by and on behalf of RHI, have been irreparably harmed.

55.    Injunctive relief is necessary and appropriate because if the Defendants continue to compete unfairly, RHI will suffer further damage that cannot be compensated by money alone.

### COUNT I
### (Breach of Contract)
### (Against Defendant Wojdyl)

56.    RHI repeats and realleges each and every allegation contained in Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

57.    On January 30, 2006, Defendant Wojdyl entered into an agreement with RHI that explicitly prohibited him from, *inter alia*, competing with, becoming employed by, or providing services to any competitor of RHI for a period of 12 months after the termination of her employment with RHI within a radius of fifty miles from either New York City Office, from soliciting or providing any services to RHI's clients for a period of 12 months after the

15

termination of his employment, and from disclosing or using any of RHI's confidential information.

58.    The restrictive covenants contained in Wojdyl's employment agreement remain in full force and effect, and Wojdyl, for good consideration, remain obligated to comply with the restrictive covenants.

59.    RHI has satisfied all of its obligations under the terms and conditions of restrictive covenants contained in Wojdyl's employment agreement.

60.    Wojdyl has breached the restrictive covenants by:

(a)    competing with, becoming employed by, and providing services in competition with RHI, and in particular, RHI's NYC Offices;

(b)    soliciting the business and patronage of RHI's clients, and unlawfully diverting business from RHI to his new employer, Execu/Search within twelve months after the termination of his employment with RHI;

(c)    using and/or disclosing to others RHI's confidential client information in his efforts to solicit RHI clients' business; and

(d)    using and/or disclosing RHI's information from candidate files in an attempt to build up a candidate data base for his own use, or for Execu/Search's use, and divert candidates from seeking placement through RHI.

61.    Wojdyl's actions have damaged RHI's goodwill, reputation and legitimate business interests, and have denied RHI the benefit of its bargain in respect to Wojdyl's restrictive covenants.

NY1 26469569.1

62.     By reason of the foregoing, RHI requests that this Court grant preliminary and permanent injunctive relief.  RHI has no adequate remedy at law.  Unless injunctive relief is granted, RHI will be irreparably harmed in a manner not fully compensable by money damages.

63.     In the alternative, by reason of the foregoing, RHI has been damaged in an amount to be determined at trial.

**COUNT II**
**(Misappropriation of Trade Secrets)**
**(Against Defendant Wojdyl)**

64.     RHI repeats and realleges each and every allegation contained in Paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     By virtue of his employment at RHI and performance of responsibilities for RHI, Wojdyl was given access to and possessed trade secrets and confidential and proprietary information of RHI, to wit, extensive information about RHI's clients (including, without limitation, their identities, contact information, history, needs and placement/staffing preferences and requirements), RHI forms and documents that were prepared by RHI at great time, cost and expense.

66.     Wojdyl has misappropriated, exploited and misused RHI's confidential information for his own self-interest and for the benefit of Execu/Search to compete unfairly with RHI.

67.     As a result of Wojdyl's wrongdoing, RHI has suffered and continues to suffer the substantial and irreparable loss of its trade secrets and its goodwill resulting in harm not fully compensable by money damages.

68.     By reason of the foregoing, RHI requests that this Court grant preliminary and permanent injunctive relief.  RHI has no adequate remedy at law.  Unless injunctive relief is

17

granted, RHI will continue to be irreparably harmed in a manner not fully compensable by money damages.

69.    In the alternative, by reason of the foregoing, RHI has been damaged in an amount to be determined at trial.

### COUNT III

**(Breach of Fiduciary Duty of Loyalty)**
**(Against Defendant Wojdyl)**

70.    RHI repeats and realleges each and every allegation contained in Paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.    By virtue of his position at RHI, Wojdyl owed RHI a fiduciary duty of the utmost good faith and loyalty, including a duty of candor and a duty not to misappropriate, exploit or misuse RHI's confidential client information, to wit, extensive information about RHI's clients (their identities, contact information, assets, and investment preferences, history, needs and requirements) whom RHI had previously entrusted for servicing to Wojdyl.

72.    Through his wrongdoing as alleged herein, Wojdyl breached his fiduciary duty owed to his employer RHI.

73.    As a result of Wojdyl's wrongdoing, RHI has suffered and continues to suffer the substantial and irreparable loss of its trade secrets and its goodwill, resulting in harm not fully compensable by money damages.

74.    By reason of the foregoing, RHI requests that this Court grant preliminary and permanent injunctive relief.  RHI has no adequate remedy at law.  Unless injunctive relief is granted, RHI will continue to be irreparably harmed in a manner not fully compensable by money damages, including, but not limited to the loss of its trade secret confidential client information and its clients' business and attendant goodwill.

18

75.    In the alternative, by reason of the foregoing, RHI has been damaged in an amount to be determined at trial.

**COUNT IV**

**(Conversion and Unfair Competition)**
**(Against Both Defendants)**

76.    RHI repeats and realleges each and every allegation contained in Paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77.    By virtue of his employment at RHI and performance of responsibilities for RHI, Wojdyl was given access to and possessed trade secrets and confidential and proprietary information of RHI, including client and candidate information as well RHI documents and forms.

78.    Wojdyl has misappropriated, and both he and Execu/Search have converted, exploited and misused, RHI's trade secrets and confidential and proprietary information for their respective own self-interests and have gained an unfair competitive advantage in competing with RHI.

79.    Wojdyl and Execu/Search have further unfairly competed with RHI by using this information to cause injury to RHI's goodwill and reputation amongst its clients and candidates.

80.    As a result of Wojdyl's and Execu/Search's wrongdoing, RHI has suffered and continues to suffer the substantial and irreparable loss of its trade secrets and its goodwill and reputation resulting in harm not fully compensable by money damages.

81.    By reason of the foregoing, RHI requests this Court to grant permanent injunctive relief.  RHI has no adequate remedy at law.  Unless injunctive relief is granted, RHI will continue to be irreparably harmed in a manner not fully compensable by money damages.

NY1 26469569.1

82.    In the alternative, by reason of the foregoing, RHI has been damaged in an amount to be determined at trial.

## COUNT V

### (Tortious Interference With Contractual Relations)
### (Against Defendant Execu/Search)

83.    RHI repeats and realleges each and every allegation contained in Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.    Defendant Wojdyl entered into an employment agreement with RHI on January 30, 2006. The agreement contained covenants that provided for continuing contractual obligations after the termination of the employment relationship.

85.    Upon information and belief, Defendant Execu/Search knew of the existence of Wojdyl's employment agreement with RHI.

86.    Upon information and belief, Defendant Execu/Search intentionally induced Wojdyl to violate his agreement with RHI by providing services to and becoming employed by Execu/Search, knowing that he was subject to an employment agreement with RHI prohibiting his employment with a competing recruitment company such as Execu/Search for a period of twelve months of his employment with RHI and within fifty miles of RHI's NYC Offices, and further knowing – *and with the intent that* -- he would use and/or disclose his knowledge of RHI's confidential information to unfairly compete with RHI by misappropriating RHI's trade secrets for the benefit of Execu/Search, as well as by cooperating in, aiding, and consenting to the wrongful use of RHI's name, all in violation of Wojdyl's employment agreements with RHI.

87.    By reason of the foregoing, RHI has been damaged in an amount to be determined at trial.

NY1 26469569.1

## COUNT VI

**(Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*)**
**(Against Wojdyl)**

88.     RHI repeats and realleges each and every allegation contained in Paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.     RHI's computer network is a protected computer network which is used across state lines in interstate commerce, has Internet access across state lines, and was used to transfer RHI information for sales in interstate commerce.  RHI's computers are "protected computers" used in interstate commerce and communication within the meaning of 18 U.S.C. § 1030(e)(2).

90.     Wojdyl was not authorized by RHI, and/or exceeded his authority to copy computerized files, download computerized files, print computerized files, access computer databases, transfer computerized files to his personal Hotmail account, misappropriate computerized files, and disclose computerized files to third parties, for his own use and gain as described herein.

91.     Through his actions, Wojdyl has:

    (a)     intentionally accessed a computer network without authorization and/or exceeded authority to obtain information from a protected computer in violation of 18 U.S.C. Section 1030(a)(2)(C);

    (b)     knowingly and with intent to defraud, accessed a protected computer network without authorization and/or exceeded authority, and by means of such conduct furthered the intended fraud and obtained valuable information, resulting in damage exceeding $5,000.00 in violation of 18 U.S.C. Section 1030(a)(4); and/or

21

 (c) intentionally accessed a protected computer network without authorization and/or exceeded authority, and, as a result of such conduct, caused damage exceeding $5,000.00 in violation of 18 U.S.C. Section 1030(a)(5)(A)(iii).

92. Wojdyl admitted to the act of destroying and spoliating at least some of the documents and information that he misappropriated from RHI, which has caused not less than $5,000 in damages to RHI.

93. In addition, Wojdyl's theft of RHI's confidential, proprietary and trade secret information has caused RHI to devote resources to investigating the extent of damage caused by Wojdyl's misconduct. RHI must also retain a third-party investigator to inspect and image Wojdyl's computer and all other electronic devices which he had access to, in order to assess the full extent of Wojdyl's misappropriation, the extent of Wojdyl's spoliation, and to protect RHI from further harm to its business.

94. RHI has suffered damages, well exceeding $5,000, as a result of Wojdyl's actions in an amount to be determined at trial, and because its remedy at law is inadequate, RHI seeks injunctive relief to recover and protect its information and other legitimate business interests.

**WHEREFORE**, RHI respectfully requests that the Court enter Judgment:

 (a) finding that Wojdyl breached the restrictive covenants in his Employment Agreement;

 (b) finding that Wojdyl misappropriated RHI's trade secrets and confidential information;

 (c) finding that Wojdyl breached his duty of loyalty to RHI;

 (d) finding that Wojdyl the Computer Fraud and Abuse Act;

 (e) enjoining Wojdyl from being employed by, working for, providing services to any recruitment and/or placement firm in competition with RHI within fifty miles of

22

the New York City Offices, including, but not limited to, Execu/Search, for a period of twelve (12) months from entry of the Order of this Court and enjoining Execu/Search's employment of Wojdyl for the same restricted time period, thereby enjoining Wojdyl's continuing breaches of his obligations to RHI and Execu/Search's tortious inducement of said breaches;

(f)     enjoining Wojdyl and Execu/Search from directly or indirectly contacting or soliciting the trade and patronage of RHI's clients and/or candidates for a period of twelve (12) months from entry of the Order of this Court, thereby enjoining Wojdyl's continuing breaches of his obligations to RHI and Execu/Search's tortious inducement of Wojdyl's said breach;

(g)     enjoining Defendants from, directly or indirectly, disclosing or using any confidential and/or proprietary and/or trade secret protected information of any kind, nature or description belonging to RHI;

(h)     directing the Defendants to return to RHI all documents, records and property of any kind or nature whatsoever and in any form whatsoever (including copies thereof and computer and other electronic records), which are within the Defendants' possession, custody or control and belong to RHI;

(i)     adjudging the Defendants liable for compensatory damages in an exact amount to be determined at trial;

(j)     adjudging the Defendants liable for punitive damages in an exact amount to be determined at trial;

(k)     granting RHI costs and expenses, including reasonable attorney's fees; and

(l)     granting RHI such other and further relief as the Court deems just and proper.

NY1 26469569.1

Dated:    New York, New York
          June 1, 2007

SEYFARTH SHAW LLP

By: _____
          Gary H. Glaser, Esq.
          James S. Yu, Esq.
1270 Avenue of the Americas, Suite 2500
New York, New York  10020-1801
(212) 218-5500

Attorneys for Plaintiff
 Robert Half International Inc.

24